# EXHIBIT 1

2021 WL 1286612
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Mark D. CHAPMAN, et al., Plaintiffs,

v.

GENERAL MOTORS LLC, Defendant.

2:19-CV-12333-TGB-DRG
|
Signed March 31, 2021

**Attorneys and Law Firms**

Bonnie J. Rickert, Lauren A. Akers, Robert Hilliard, Hilliard Martinez Gonzales, LLP, Corpus Christi, TX, Dennis A. Lienhardt, Sharon S. Almonrode, William Kalas, E. Powell Miller, Emily E. Hughes, The Miller Law Firm, P.C., Rochester, MI, Jerrod C. Patterson, Hagens Berman Sobol Shapiro, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiffs Mark D. Chapman, Leroy Gwinn, Jr., William McDuffie, Clay Kincheloe, Bryan Joyce, Tim Taylor.

Bonnie J. Rickert, Robert Hilliard, Hilliard Martinez Gonzales, LLP, Corpus Christi, TX, E. Powell Miller, The Miller Law Firm, Rochester, MI, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiffs John Cappiello, Nathan Howton, Michael Jon McCormick, Richard Egleberry, Trisha Alliss, Arnold Recchia, Holly Reasor.

Paul J. Schwiep, Pro Hac Vice, Coffey Burlington, P.L., Miami, FL, Adam Michael Wenner, Jeffrey K. Lamb, Honigman LLP, Detroit, MI, April N. Ross, Kathleen T. Sooy, Rachel Paige Raphael, Corwell & Moring LLP, Washington, DC, Honor Rose Costello, Crowell and Moring LLP, New York, NY, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (ECF NO. 48);**

**AND RESOLVING OTHER MOTIONS (ECF NOS. 52, 62, 68, 69, 72, 74, 75, and 78)**

TERRENCE G. BERG, United States District Judge

**\*1** This is a large putative class action: twenty-one Named Plaintiffs seek to sue General Motors ("GM") over its use of the Bosch CP4 fuel pump in GMC and Chevrolet diesel trucks from model yearyeah thas 2011-2016. They allege fraud on GM's part that has subsequently caused them to suffer injury. There are 114 counts in the 574-page Second Amended Complaint ("SAC") covering federal law as well as state fraudulent concealment, breach of contract, consumer protection, warranty, and unjust enrichment claims under the laws of 49 states. ECF No. 40. For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 48) is **GRANTED IN PART** and **DENIED IN PART**. A summary of the counts that survive and those that do not is included in the Table of Claims that follows the Order. Additionally, Defendant's motion to strike Plaintiffs' class allegations is **DENIED.**

**Contents**

Contents...——

I. BACKGROUND...——
A. Alleged defects of the CP4 pump when combined with U.S. diesel fuel...——

B. Structure of claims in the SAC and Motion to Dismiss...——

C. Outstanding motions...——

II. STANDARD OF REVIEW...——

III. ANALYSIS...——
A. Standing...——

   1. Standing for nationwide claims or state claims where there is no named plaintiff from that state...——

   2. Standing for injunctive relief...——

   3. Lack of a cognizable injury...——

B. Deficiencies in IWM claims...——

   1. Sufficiency of allegations regarding merchantability...——

2. Certain claims where state law requires a showing of privity...——

3. Certain claims not within the terms of the IWM as limited by state law...——

4. Certain claims barred because Plaintiffs did not provide pre-suit notice...——

5. Certain claims time-barred...——

C. Magnuson-Moss Warranty Act...——

D. Breach of Contract...——

E. Deficiencies in fraudulent concealment claims...——

1. Failure to meet Rule 9(b)'s particularity requirements for fraud allegations...——

2. Failure to allege knowledge at the time of sale...——

3. Failure to allege a duty to disclose...——

4. Economic loss doctrine...——

5. Certain state product liability statutes preclude fraudulent concealment claims...——

6. Failure to plead injury...——

F. Consumer protection...——

1. Alaska claim is a placeholder...——

2. Insufficient pleading of deceptive conduct, reliance, and causation...——

3. GM's knowledge of the defect at the time of sale...——

4. Certain state statutes do not allow class actions to be brought with state consumer protection claims...——

5. Colorado's bar on class claims for money damages...——

6. Michigan's consumer protection statute exempts automobile sales...——

7. Class action notice requirement in Ohio's consumer protection statute...——

8. North Carolina and Pennsylvania bar consumer protection claims solely for economic losses...——

9. Louisiana Products Liability Act precludes consumer protection claim...——

10. Claims under the California Unfair Competition Law ("UCL") barred by adequate legal remedies...——

11. Louisiana, North Dakota, and Oklahoma do not allow claims for injunctive relief...——

12. Sufficient allegations to show injury...——

13. Alabama and Pennsylvania Named Plaintiffs cannot meet the requirements of state statutes...——

14. Arkansas statute does not allow claims for "diminution of value"...——

15. Claims in certain states are time-barred...——

G. Unjust enrichment...——

H. Class allegations...——

1. Statutory requirements for a class action under the MMWA...——

2. Requirements of Fed. R. Civ. P. 23...——

I. Outstanding motions...——

1. Motions related to supplemental briefing (ECF Nos. 68, 69, 72, 74, 75)...——

2. Motions related to Plaintiff Gary Goodwin (ECF Nos. 52, 62)...——

3. Defendant's Motion to Dismiss Brandon Tirozzi for Failure to Prosecute (ECF No. 78)...——

CONCLUSION...——

## I. BACKGROUND

### A. Alleged defects of the CP4 pump when combined with U.S. diesel fuel

**\*2** Plaintiffs all bought diesel fuel GMC and Chevrolet trucks from GM for the model years 2011-2016, with 6.6L Duramax engines and a Bosch CP4 model high-pressure

fuel injection pump. ¶ 1, ECF No. 40, PageID.3393. They allege injury at the point of sale: they paid a premium of $5,000-8,000 for these trucks because they run on diesel and were advertised to have a longer life, greater fuel efficiency, and other features above and beyond other vehicles. *Id.* at ¶ 7, PageID.3393.

The CP4 pump is the lynchpin of the trucks' fuel supply system. As alleged by Plaintiffs, design flaws in the CP4 pump cause dangerous rubbing and friction between metal parts of the pump when it runs. The result is a buildup of metal shavings in the fuel system that begins to accumulate as early as the first time the engine is started. Contamination from the metal debris can lead to catastrophic engine failure. *Id.* at ¶¶ 123-35, PageID.3478-85. This wear and tear in the fuel system, and the subsequent potential for malfunction, is exacerbated by a factor unique to the United States: our diesel fuel is "drier," or less lubricious, than the diesel fuel available in other countries due to our different regulatory standards.[1] The CP4 pump itself uses the diesel fuel for lubrication. Due to its poor design that inherently requires *more* lubrication than other fuel pumps, Plaintiffs allege that our "dry" diesel is uniquely unsuited to keep a CP4 pump functioning properly. *Id.* at ¶¶ 148-52, PageID.3491-93.

It is this combination of the alleged subpar pump design and lack of lubricity from U.S. diesel fuel that leads to wear and tear which can cause the small metal shavings to build up within the pump or within the engine block and fuel system generally. Too much buildup of metal in the fuel injectors can lead to "catastrophic failure" where the truck will immediately stop running, requiring a tow and often replacement of not just the fuel injectors, but the entire fuel supply system in the vehicle. *Id.* at ¶¶ 137-40, PageID.3486-87. Because the fuel injection system and engine component parts are contaminated with metal shards, during a catastrophic failure event the vehicle often shuts off while in motion and cannot be restarted. *Id.* at ¶ 4, PageID.3392.

By way of example, Plaintiff Nathan Howton purchased a used 2015 Chevrolet Sierra 2500 HD in September 2015 from an authorized GM dealership. In February 2019, he was traveling with his family and stopped to refuel. Two miles into their resumed journey, "the engine backfired, creating a plume of smoke." The truck lost power and Plaintiff had to "coast the truck onto the driveway of an unoccupied home." The family spent the night in their trailer. Upon finally getting to a GM dealership, Howton was told that GM would not cover

the repair expense related to the CP4 pump because the truck was out of warranty. *Id.* at ¶ 73, PageID.3442. He inspected the engine and injection pump himself and found a significant quantity of metal shavings, a photograph of which appears in the SAC:



*Image of Plaintiff Nathan Howton's engine after catastrophic failure event, showing metal shavings. Id.*

**\*3**  Sixteen of the named Plaintiffs report experiencing a similar catastrophic failure stall out while driving, requiring their truck to be towed and resulting in an eventual repair cost sometimes reaching $10,000 or more. And even if the vehicle does not fail, wear and tear on the pump (which Plaintiffs allege will always occur to some degree due to its design and the use of "dry" diesel fuel) will damage the fuel injectors and other parts of the engine. *Id.* at ¶ 141, PageID.3487.

Plaintiffs allege GM was aware of these issues with the CP4 fuel pump even before it began to sell trucks with the pump incorporated. Despite that, it marketed the vehicles as having increased durability and fuel efficiency, in part due to their use of diesel. *Id.* at ¶¶ 8, 185. Plaintiffs also allege that GM did not take steps to remedy the problem, and instead actively concealed the defect for as long as possible. *Id.* at ¶¶ 9, 186-88. GM stopped using the CP4 pump after the 2016 model year of the class vehicles, switching to another model of pump that had been in use since 2004. *Id.* at ¶ 218.

### B. Structure of claims in the SAC and Motion to Dismiss
Plaintiffs allege the following broad categories of claims under federal law and the laws of 49 states[2] and the District of Columbia:

- Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301

- Fraudulent concealment

• Breach of contract

• Implied warranty of merchantability ("IWM") (state-specific statutes)

• Consumer protection (state-specific statutes)

• Unjust enrichment ("UE") (state-specific statutes)

There are 114 counts: one for the MMWA, one for fraudulent concealment on behalf of all of the sub-classes, one for breach of contract on behalf of all of the sub-classes, and the rest by state (naming the applicable consumer protection, IWM, and UE statutes for each state). Every state has at least one consumer protection claim and California, Georgia, New York, and South Carolina have two each for a total of 54 counts; 42 states have IWM claims and California has two for a total of 43 counts; 14 states have UE claims.

GM seeks to dismiss the SAC in full, and challenges Plaintiffs' claims under theories relating to:

 A. Standing

 B. Deficiencies in the IWM claims

 C. Magnuson-Moss Warranty Act

 D. Breach of contract

 E. Deficiencies in fraudulent concealment claims

 F. Consumer protection

 G. Unjust enrichment

 H. Class allegations

Within each of these broad categories, GM makes numerous arguments as to why claims should be dismissed. *See* Ex. 1 —Chart Summarizing Grounds for Dismissal, ECF No. 48-2. Some challenges can be resolved the same way for all claims, while others have state-specific considerations and outcomes. Additionally, some claims could theoretically be dismissed under more than one theory. To promote clarity, the Court will independently address all state-specific theories that GM has put forward, even if the resulting analysis shows that certain claims could be dismissed for more than one reason. The attached Table of Claims lists all the reasons any given count is being dismissed, if there are more than one.

**C. Outstanding motions**

The Court held oral argument on January 29, 2021, primarily to resolve the Motion to Dismiss (ECF No. 48). At the conclusion of the hearing, the Court asked both sides for supplemental briefing on several specific issues. GM filed a supplemental brief (ECF No. 67), and Plaintiffs subsequently moved to file their supplemental brief under seal (motions at ECF Nos. 68, 69, with an additional chart regarding state-specific caselaw at ECF Nos. 70, 71), indicating that they felt compelled to ask for a seal by an earlier protective order (ECF No. 44) in this case. GM next filed a Motion to Strike the supplemental brief (ECF No. 72), arguing that Plaintiffs improperly included information outside the scope of the Court's request. Plaintiffs' Response to the motion to strike (ECF Nos. 74, 75) also begins with a motion to seal.

**\*4** Also outstanding on the docket are Plaintiffs' Motion to Withdraw as counsel for Gary Goodwin (ECF No. 52), Defendant's Motion to Compel also as related to Gary Goodwin (ECF No. 62), and Defendant's Motion to Dismiss Brandon Tirozzi for Failure to Prosecute (ECF No. 78).

The Court has thoroughly considered all these outstanding matters and will address the other pending motions in this Order as well.

**II. STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*,

617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937).

### III. ANALYSIS

#### A. Standing

Defendant brings three challenges related to standing. None are meritorious, so the Motion to Dismiss based on any reasons pertaining to standing is denied.

#### 1. Standing for nationwide claims or state claims where there is no named plaintiff from that state

Article III "[s]tanding requires Plaintiffs to show 1) that they have suffered an injury-in-fact that was 2) caused by Defendants' conduct and that 3) this Court can likely redress the injury with a decision for Plaintiffs." *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). GM alleges that for states that are not represented by a Named Plaintiff, no one can show injury for claims related to that state, and therefore the court does not have jurisdiction over those claims. Additionally, it alleges that each Named Plaintiff can only allege injuries in their own states, and therefore they have no standing for nationwide claims. ECF No. 48, PageID.4922-23. Plaintiffs say this question should be addressed at the class certification stage. ECF No. 53, PageID.5969-70.

This challenge brings up a question specific to class actions: if Article III standing and class certification are related, in what order should they be addressed? Can a confirmation of Article III standing be deferred to the class certification stage, even though standing is a central part of a court's jurisdiction? This question was first raised in a pair of Supreme Court cases, *Amchem* and *Ortiz*, which held that when class certification issues are "logically antecedent" to Article III concerns, and "themselves pertain to statutory standing," the Article III standing inquiry can essentially be combined with the class

certification inquiry. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see generally* Linda S. Mullenix, *Standing and Other Dispositive Motions After* Amchem *and* Ortiz: *The Problem of "Logically Antecedent" Inquiries*, 2004 Mich. St. L. Rev. 703, 729 (2004).

**\*5** Courts in our district have considered this question in the context of large-scale class actions pertaining to auto defects. Cases that required a named plaintiff to have standing for every claim include *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at \*1 (E.D. Mich. Jan. 4, 2019), *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 755 (E.D. Mich. 2019) (relying on *Wozniak* and *Smith* [cited below]), and *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 784 (E.D. Mich. 2019) (same). The reasoning in these cases derives from *Smith v. Lawyers Title Ins. Corp*, where Judge Murphy concluded that *Amchem* and *Ortiz* "should be construed in a manner that permits consideration of the standing issue now, prior to class certification," and found that a plaintiff who does not allege injury in a state lacks standing to bring claims arising under the laws of that state. No. 07-12124, 2009 WL 514210, at \*3 (E.D. Mich. Mar. 2, 2009). *See also Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590 (CJS), 2006 WL 1704477, at \*3 (W.D.N.Y. June 15, 2006) (a clear explanation of the *Smith* position).

By contrast, this Court found in *Bledsoe v. FCA US LLC* that it is not required at this stage in the litigation for a complaint to have a named plaintiff from every state where claims are alleged: when "Plaintiffs are not seeking relief for themselves under the laws of states where they don't live," but rather are "advancing 'claims for relief under the statutes of the jurisdictions in which they reside but seek similar relief for absent class members' under the statutes for consumer protection, fraudulent concealment, and breach of contract of those absent members' states," that makes the class certification question logically antecedent to the Article III standing question. 378 F. Supp. 3d 626, 641-42 (E.D. Mich. 2019) (quoting *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at \*11 (E.D. Mich. June 6, 2013)). *See also Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667-68 (E.D. Mich. 2008) (finding that when the claim of named plaintiffs "is typical of those individuals whose claims arise under the laws of other states," the "question whether he has standing to proceed as a class representative will be subsumed in the class certification decision.").

Given these two competing approaches, the Court will examine the logic behind both. The central tension between them is their conceptualization of "injury." *Bledsoe* and *Hoving* consider "injury" as the general harm accruing from the conduct of the defendant according to the allegations in a complaint. *Smith* considers "injury" to exist only where a named plaintiff can meet the requirements of every cause of action named in a complaint.

The logic of *Bledsoe* and *Hoving* derives from *Fallick*, a Sixth Circuit ERISA case where the defendant sought dismissal on the grounds that the named plaintiff was on a different insurance plan than some potential class members. The defendant said that any claims related to the other insurance plans should be dismissed, but the Court disagreed, distinguishing between (1) a named plaintiff's own Article III standing and (2) his relationship to other class members. The former must exist in order for the case to move forward, but the latter has to do with the requirements of Fed. R. Civ. P. 23, not standing. The Court held that named plaintiff Fallick did not have to be a member of every plan to (1) establish standing for his *own* injury under *his* plan and (2) also serve as a representative for and maintain the class claims related to other plans. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998).

**\*6** This is analogous to the situation here. The plaintiff's complaint in *Fallick* was about "the methodology used to determine benefits," which he alleged was the root cause of the harm and which was common to all potential class members, no matter the particular ERISA plan they were enrolled in. *Fallick*, 162 F.3d at 423. Here, Plaintiffs' complaint is about the CP4 pump and its effects on truck engines, which is alleged to cause harm and is common to all class members, no matter exactly which truck they bought or what the terms of their state consumer protection laws are. The general wrongdoing GM is accused of applies to the Named Plaintiffs and the absent putative class members alike, making the class certification question logically antecedent to the Article III standing question.

Additionally, looking closely at the cases cited by *Smith*, they involve comparatively extreme factual circumstances that implicate a lack of *any* Article III standing for the named plaintiffs in question: defendants who did not cause injury to the named plaintiffs, but theoretically caused injury to potential class members (*Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004)); multiple reasons for injury, only some

of which were suffered by the named plaintiff, and others that were theoretically suffered by potential class members (*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)); a named plaintiff lacking standing at all (*Stone v. Crispers Restaurants, Inc.*, No. 606CV1086ORL31KRS, 2006 WL 2850103, at \*2 (M.D. Fla. Oct. 3, 2006)). None of these situations is present in the facts of this case. The logic of *Fallick* also indicates that the Sixth Circuit has deliberately decided to embrace a "general harm accruing from conduct" conceptualization of injury.

Most courts agree that *Amchem* and *Ortiz* did not mandate one approach or the other, but merely indicated a "limited exception" that courts *may* defer the Article III standing question to the class certification stage in certain scenarios. *See* Mullenix, *Standing and Other Motions*, at 727. The Court finds this to be the appropriate path to follow here and declines to dismiss nationwide or state-specific claims simply because there is no named plaintiff representing that state.

### 2. Standing for injunctive relief

"When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review" in addition to the basic standing requirements of injury, causation, and redressability. *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).

Here, GM says Plaintiffs do not allege that they plan to buy another class vehicle in the future, and therefore do not show a risk of future harm. ECF No. 48, PageID.4924. Plaintiffs say in response that there is an "ongoing harm" because their trucks could experience catastrophic failure at any time, and it is on this basis they seek injunctive relief in the form of replacement or recall from GM. ECF No. 53, PageID.5971.

The Sixth Circuit has found ongoing harm where it is "not too speculative" that future harm could occur, and where "a reasonable inference" can be drawn that an as-yet-unrealized harm might come to pass. *Kanuszewski*, 927 F.3d at 410-11. Here, for the Named Plaintiffs who have not yet experienced a catastrophic failure, it does not seem speculative that it could happen to them based on the experiences of other Named Plaintiffs with these trucks. For the Named Plaintiffs who have already experienced catastrophic failure, they have

alleged that it might happen again, because even after repair or replacement of the CP4 pump in their truck, the usage of dry diesel fuel could cause the malfunctions to repeat themselves. ECF No. 40, ¶ 2 (a "ticking time bomb"), PageID.3391; ¶¶ 3-5, 7, 11-12, PageID.3391-93, 3395. At least one Named Plaintiff has experienced more than one failure with the same vehicle. *Id.* at ¶ 51, PageID.3426-27. In view of these allegations, at this stage, Plaintiffs have sufficiently alleged a possibility of future harm to give them standing for injunctive relief.[3]

### 3. Lack of a cognizable injury

**\*7** GM identifies four Named Plaintiffs (Gwinn, McDuffie, Dearborn, and Lawson[4]) who never experienced a "catastrophic failure," or indeed any other issue with their trucks. GM argues they have not therefore suffered any injury. ECF No. 48, PageID.4924-26. However, this Court has recognized "overpayment" as a type of injury in this sort of situation:

> The prevailing jurisprudence in this district ... thus holds that a consumer who alleges she would not have purchased a vehicle (or would have paid less for it) had the manufacturer not misrepresented the vehicle to customers' detriment or omitted mention of its significant limitations, has alleged a plausible injury-in-fact.

*Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020) (collecting cases).

All four of these Plaintiffs allege that they paid a premium for these diesel trucks based on representations of durability, power, reliability, and fuel efficiency, and that they would not have bought the vehicles or would have paid less for them but for GM's misrepresentations. ECF No. 40, ¶¶ 18-19, 21-22, 97-98, 105-106, 188, PageID.3400-04, 3460-62, 3466-3468, 3515-16. The alleged defect, which does not lead to the exact same consequences in every truck, is not as clean-cut in this case as some others. *Cf. Raymo*, 475 F. Supp. 3d at 687 (every car with alleged washcoat and flash defects exceeded emissions limits). But at this stage, taking Plaintiffs' allegations as true, every truck with a CP4 pump is per se defective because of the inherent potential for malfunction due to its design. ECF No. 40, PageID.3516. This is sufficient to allege an overpayment theory of injury for standing.

### B. Deficiencies in IWM claims

Plaintiffs bring IWM claims for state sub-classes under the specific laws of each state.[5] Upon examination of these claims and the laws of those states, the Court concludes that 7 of the 43 IWM claims will be dismissed.[6]

### 1. Sufficiency of allegations regarding merchantability

In this argument GM does not specifically challenge the sufficiency of any individual IWM claim, but rather asserts generally that all these counts fail because they do not allege that the vehicles were unmerchantable at the time Plaintiffs purchased them. Neither party argues that the standard for merchantability is meaningfully different in different states, and the Court's review of state laws did not identify any barrier to considering this argument uniformly across the states.

To be merchantable means that a good is "fit for the ordinary purposes for which such goods are used." UCC § 2-314. GM asserts that the "ordinary purpose" of a vehicle is to provide transportation, and therefore to the extent that all Named Plaintiffs admit to being able to drive their trucks, all the allegations of breach of an IWM fail. ECF No. 48, PageID.4926-28. Plaintiffs counter that this is a "crimped" definition of ordinary purpose, and that courts have regularly recognized that automobiles must provide safe and reliable transportation for "ordinary purpose" to have any meaning. ECF No. 53, PageID.5996. The fact that there is a latent potential for engine stalls and catastrophic failure, Plaintiffs say, is what makes the trucks unfit for their ordinary purpose and therefore unmerchantable.

**\*8** In this district, Judge Roberts recently held that "cars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects." *Matanky*, 370 F. Supp. 3d at 785 (design defect causing engine to overheat and car to unexpectedly decrease speed); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 112-14 (E.D. Mich. 2019) (defective gear shift). The Court finds Plaintiffs' allegations of unexpected stall-out, which could occur at any time due to a fuel pump failure and could also result in potentially extensive repair costs, to be sufficient to allege that these trucks were not "safe and reliable."

The defects at issue in the cases cited by GM (where courts found that unmerchantability was not sufficiently alleged) are factually distinguishable from and less serious than the defect at issue here. *See, e.g., Rosenbaum v. Toyota Motor Sales, USA, Inc.,* No. 16-cv-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016) (electric car's range was below what was advertised and car did not operate in electric-only mode at certain temperatures); *Gomez v. Mercedes-Benz USA LLC,* No. 335661, 2018 WL 987398, at *5 (Mich. Ct. App. Feb. 20, 2018) (no defect alleged); *Bussian v. DaimlerChrysler Corp.,* 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006) (defective ball joints, never caused mechanical problems or caused vehicle to stop working). By contrast, Plaintiffs' allegations regarding engine stalls and catastrophic failure are serious enough to plausibly allege unmerchantability, and the Court declines to dismiss any IWM claims on this ground.[7]

### 2. Certain claims where state law requires a showing of privity

GM alleges that the following states have privity requirements for IWM claims: Alabama, California, Florida, Illinois, Michigan, Nevada, New York, North Carolina, Tennessee, Virginia, Washington, and West Virginia. If Plaintiffs in any of these states purchased their vehicles from independent dealerships or other third parties, GM argues, they cannot allege privity—that is, a direct legal connection between the defendant and the plaintiff through a transaction. ECF No. 48, PageID.4928. Plaintiffs do not assert that they have privity with GM, but instead assert various state-by-state exceptions under which a lack of privity does not bar an IWM claim, and argue that it is premature to dismiss claims at this stage because they allege sufficient facts to meet the standards for these exceptions. ECF No. 53, PageID.5998-6000.

Every state has its own precedent governing privity requirements for IWM claims, and so these claims must each be analyzed individually. Having reviewed the Parties' briefs and the relevant caselaw, in the table below the Court will cite to the authority it found most persuasive along with its conclusion on the outcome:

| State | Authority | Conclusion |
|---|---|---|
| AL | *Weidman v. Ford Motor Co.,* No. 18-CV-12719, 2019 WL 3003693, at *4 (E.D. Mich. July 10, 2019). | Has a privity requirement and no exceptions; claim fails. |
| CA | *In re Gen. Motors LLC CP4 Fuel Pump Litig.,* 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019). | Recognizes third-party beneficiary exception to privity in limited circumstances.[8] |
| FL | *Padilla v. Porsche Cars N. Am., Inc.,* 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019). | Has a privity requirement and no exceptions; claim fails. |
| IL | *McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1362 (N.D. Ga. 2013); *Quitno v. Gen. Motors LLC,* No. 1:18-CV-07598, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020). | Has a privity requirement and no exceptions; claim fails. |
| MI | *Montgomery v. Kraft Foods Glob., Inc.,* 822 F.3d 304, 309 (6th Cir. 2016). | No privity requirement. |
| NV | *Matanky v. Gen. Motors LLC,* 370 F. Supp. 3d 772, 787 (E.D. Mich. 2019). | No privity requirement. |
| NY | *Cummings v. FCA US LLC,* 401 F. Supp. 3d 288, 311-14 (N.D.N.Y. 2019); *Dixon v. Ford Motor Co.,* No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *4 (E.D.N.Y. Sept. 30, 2015). | Has a privity requirement and no exceptions; claim fails. |
| NC | N.C. Gen. Stat. §§ 25-2-103(1)(d), 25-2-314. | No privity requirement. |
| TN | *Americoach Tours, Inc. v. Detroit Diesel Corp.,* No. 04-2016 B/V, 2005 WL 2335369, at *8-9 (W.D. Tenn. Sept. 23, 2005). | Has a privity requirement and no exceptions; claim fails. |
| VA | *McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1362 (N.D. Ga. 2013). | No privity requirement for direct damages. |
| WA | *Tex Enterprises, Inc. v. Brockway Standard, Inc.,* 66 P.3d 625, 628 (Wash. 2003). | Recognizes third-party beneficiary exception to privity in limited circumstances. |
| WV | *Sewell v. Gregory,* 371 S.E.2d 82, 83 (W. Va. 1988). | No privity requirement. |

[**Editor's Note:** The preceding image contains the reference for footnote[8]].

**\*9** For states that recognize a third-party beneficiary exception to the privity requirement, the Court finds that Plaintiffs have sufficiently alleged they are third-party beneficiaries of the contract between GM and its dealers at this stage of the litigation. SAC ¶ 285, PageID.3573. Those claims can therefore move forward. The claims under the Alabama (C.II), Florida (K.III), Illinois (O.II), New York (HH.III), and Tennessee (RR.II) IWM statutes, where no exceptions are recognized, are dismissed for failure to sufficiently allege privity.

### 3. Certain claims not within the terms of the IWM as limited by state law

Parties agree that the class vehicles came with a "60-month, 100,000-mile written warranty" that purported to limit any

implied warranty to that duration. ECF No. 48, PageID.4930. GM asserts that certain states do in fact allow manufacturers to limit implied warranties to the duration of an express warranty, and that therefore some of the Named Plaintiffs' IWM claims are untimely because they are outside the sixty-month and/or 100,000-mile limits. *Id.* at PageID.4930-31. Plaintiffs argue that it does not matter if IWM claims can be limited to the express warranty terms in certain states, because the breach of warranty occurred at the point of sale—anyone who bought a class vehicle was buying a defective vehicle from the start. ECF No. 53, PageID.6003.

Plaintiffs are correct. At this stage, they reference a uniform defect, the allegedly defectively designed CP4 pump, that was present in trucks and made them unmerchantable. Essentially, Plaintiffs allege that their trucks were "never fit for their ordinary purpose," so the question of whether a defect manifested within the warranty period does not arise. *See Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *10 (S.D. Fla. Feb. 7, 2017) (collecting cases); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 880 (N.D. Cal. 2018) ("the defect was inherent in the engine design and, therefore, existed at the time of purchase.").

The main case GM cites is distinguishable—there, although the plaintiff's allegation was ostensibly of an "inherent" screen defect in an Apple computer, he did not support his allegation with sufficient detail to make out a "point of sale" breach, and so the court applied the warranty's time limits. The allegations about the defect being inherent to the product were "conclusory" and "lack[ed] sufficient detail." *Hovsepian v. Apple, Inc.*, No. 08-5788 JF, 2009 WL 2591445, at *7-8 N.D. Cal. Aug. 21, 2009. The cases cited by GM in n.8 (ECF 56, PageID.6038-39), in which courts find allegations insufficient to make out a "point of sale" defect claim even at the motion to dismiss stage, involve general allegations about a latent defect similar to those in *Hovsepian*. Here, Plaintiffs allege a specific latent defect, the CP4 pump, that they say is the cause of the breach of warranty. The Court therefore declines to dismiss any IWM claims as being limited by the express warranty.

**4. Certain claims barred because Plaintiffs did not provide pre-suit notice**

GM alleges that Alabama, Florida, Illinois, Maryland, Michigan, Montana, New York, Pennsylvania, and Virginia require pre-suit notice for an IWM claim, and that Plaintiffs

did not provide it. ECF No. 48, PageID.4931. Plaintiffs state that many of Named Plaintiffs brought their truck to a dealer for repair, which should suffice as notice; additionally, they state that through letters submitted pre-suit and other lawsuits alleging this same defect, GM should have received sufficient notice for this action; lastly, they state that sufficiency of notice should be a jury question. ECF No. 53, PageID.6000-02.

**\*10** Generally, the purpose of notice requirements is to provide the manufacturer with a commercially reasonable opportunity to address a defect. Different states have varying levels of strictness in terms of the notice requirement—some find presentation to the dealer or filing of a lawsuit to suffice, and some make exceptions to the requirement if the manufacturer cannot show prejudice, but others interpret it very strictly.

Courts in our district have held that when Plaintiffs can successfully allege providing at least some notice, the question of adequacy and timeliness of notice becomes one of fact, and the claim should not be defeated at the motion to dismiss stage. *See, e.g., In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 227 (E.D. Mich. 2020). The analysis in these cases proceeds on the logic that even if different states have different standards regarding notice, at the motion to dismiss stage it is unnecessary to scrutinize state specific law as long as *some* notice is alleged. Presentation of the vehicle to a dealer is an example of the kind of action that creates a question regarding sufficiency of notice such that a claim should survive. *Francis v. Gen. Motors, LLC*, No. 19-11044, ---- F.Supp.3d ----, ----, 2020 WL 7042935, at *12 (E.D. Mich. Nov. 30, 2020). If a court finds that no notice has been alleged, the Court will have to examine state-specific standards to determine whether that claim can still survive.

This claim is best evaluated by considering the facts alleged for each state and Plaintiff:

| State[9] | Authority[10] | Conclusion |
|---|---|---|
| AL (1) | Plaintiff McCormick brought his truck to a dealer. ¶ 42, PageID.3419. | Satisfies notice. |
| FL (1) | Plaintiff Reasor brought her truck to a dealer. ¶ 100, PageID.3463. | Satisfies notice. |
| IL (3) | Plaintiff Howton brought his truck to a dealer. ¶ 73, PageID.3441-42. | Satisfies notice. |
| | Plaintiff Gwinn never brought his truck in to a dealer, and does not allege any specific attempts to provide notice to GM regarding his complaint under IL law. *See* ¶ 751, ECF No. 40, PageID.3687. | Potentially insufficient allegation of notice, discussed below. |
| | Plaintiff Alliss: same. | Potentially insufficient allegation of notice, discussed below. |
| MD (1) | This Plaintiff will be terminated (ECF No. 52). | N/A |
| MI (1) | Plaintiff Recchia never brought his truck in to a dealer, and does not allege any specific attempts to provide notice to GM regarding his complaint under MI law. *See* ¶ 989, ECF No. 40, PageID.3748. | Potentially insufficient allegation of notice, discussed below. |
| MT (1) | Plaintiff Kinchloe brought his truck to a dealer. ¶ 27, PageID.3408. | Satisfies notice. |
| NY (1) | Plaintiff Chapman brought his truck to a dealer. ¶ 14, PageID.3396-97. | Satisfies notice. |
| PA (2) | Plaintiff Joyce brought his truck to a dealer. ¶ 30, PageID.3411. | Satisfies notice. |
| | Plaintiff Cappiello brought his truck to a dealer. ¶ 69, PageID.3438-39. | Satisfies notice. |
| VA (1) | Plaintiff Taylor brought his truck to a dealer. ¶ 34, PageID.3413-14. | Satisfies notice. |

[**Editor's Note:** The preceding image contains the reference for footnotes[9,10]].

For Plaintiffs Gwinn, Alliss, and Recchia, who did not present their cars to a dealer, the Court must determine if any other actions they took could constitute notice. As noted, this requires examining the underpinnings of the notice requirement in each state. In Michigan, the "notice requirement is not just a formality.... Pre-suit notice allows the buyer and the breaching party to negotiate and propose settlements, including potential cure, without resort to litigation." *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152, 2018 WL 646683, at \*3 (E.D. Mich. Jan. 31, 2018) (citing *American Bumper & Mfg. Co. v. Transtechnology Corp.*, 252 Mich.App. 340, 652 N.W.2d 252, 256 (2002)). In Illinois, "buyers ... must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty. [However,] [d]irect notice is not required when ... the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 589 (1996). "Only a consumer

plaintiff who suffers a personal injury" can satisfy notice through the filing of a complaint. *Id.*, 221 Ill.Dec. 389, 675 N.E.2d at 590.

**\*11** Counsel for Plaintiffs indicated at the hearing that communications sent to GM included "two different letters in the latter half of 2019 ... in the context of Consumer Protection Act claims." Tr. 1/29/21, 54:15-19, ECF No. 66, PageID.7110. These letters are not in the record, and Plaintiffs do not provide any more specific information about their contents. Importantly, they do not allege that any sort of letter or communication was sent to GM specifically about *these* named Plaintiffs or *their* claims. Plaintiffs also contend the fact that other lawsuits about this specific defect are underway should satisfy the notice requirement.[11]

Under Michigan law, these actions are not sufficient to allege adequate pre-suit notice. Neither the letters nor the filing of the lawsuit would have given GM notice about *Recchia's* specific claims or allowed GM to resolve such claims with him pre-litigation. If the notice requirement were intended merely put a manufacturer generally "on guard" about the potential of a defect, the outcome might be different. But it is evident from the caselaw cited that the standard is higher in Michigan. *See also* Def.'s Suppl. Br., ECF No. 67, PageID.7151-52. By contrast, the Illinois Plaintiffs here are suing for personal injury, and therefore the filing of this lawsuit satisfies their notice requirement. The IWM claim under Michigan law (Plaintiff Recchia, X.II) is therefore the only claim dismissed for failure to provide pre-suit notice.

### 5. Certain claims time-barred

Lastly, GM alleges that the statute of limitations on implied warranty claims is four years, starting at the time of sale, and lists nine plaintiffs (Gwinn, Kincheloe, Joyce, Taylor, McCormick, Recchia, Smith, Sizelove, and Lawson) whose claims it alleges are barred because they bought their vehicles more than four years before this action. ECF No. 48, PageID.4932. Plaintiffs concede that these individuals' truck purchase dates put them all outside the four-year time period,[12] but respond that the claims are either equitably tolled due to fraudulent concealment or tolled due to the discovery rule,[13] and more generally that when there are fact questions about accrual it is inappropriate to dismiss at the motion to dismiss stage. ECF No. 53, PageID.6006-08.

**\*12** The applicability of the tolling provisions relied upon by Plaintiffs name varies state-by-state. The Court will identify appropriate authority under each state's law regarding when tolling is allowed. If one basis of tolling is available (either through fraudulent concealment or a discovery rule), that singular basis will be identified:

| State | Tolling through fraudulent concealment? | Tolling through discovery rule? | Conclusion |
|---|---|---|---|
| IL (Gwinn) | Can only be used if there is "affirmative concealment." *Cangemi v. Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 804 (Ill. App. 2006). | Not recognized. | No tolling available, grant dismissal of claim. |
| MT (Kincheloe) | | Discovery rule applies if "the facts constituting the claim are by their nature concealed or self concealing." *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 788 (Mont. 2013). | Discovery rule could toll claims. |
| PA (Joyce) | | Duration of IWM claim can be extended with a "latent defect." *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996). | Discovery rule could toll claims. |
| VA (Taylor) | Can only be used if there is "affirmative concealment." *Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 882 (E.D. Va. 2015). | Not recognized. | No tolling available, grant dismissal of claim. |
| AL (McCormick) | | Discovery rule applies in cases of fraud. *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, No. 2004408MD2004CDL, 2016 WL 4446460, at *2 (M.D. Ga. Aug. 19, 2016). | Discovery rule could toll claims. |
| MI (Recchia) | Can only be used if there is "affirmative concealment." *Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2010 WL 3905770, at *5 (E.D. Mich. Sept. 29, 2010). | Not recognized. | No tolling available, grant dismissal of claim. |
| CA (Smith, Sizelove, Lawson) | | Discovery rule is recognized. *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. | Discovery rule could toll claims.[14] |

| | | 3d 871, 884 (N.D. Cal. 2019). | |
|---|---|---|---|

[**Editor's Note:** The preceding image contains the reference for footnote[14]].

For states where the discovery rule exception is recognized, the Court finds Plaintiffs have alleged sufficient facts to raise the possibility that the rule could apply, and therefore for those claims the limitations period can be tolled. However, as discussed *infra* Section III.E.1, Plaintiffs have not sufficiently alleged affirmative concealment. Because that is necessary for tolling to take place in the other states named, those Plaintiffs cannot succeed in tolling the statute for their claims under this theory. Therefore, the IWM claims under Illinois (Plaintiff Gwinn, O.II), Michigan (Plaintiff Recchia, X.II), and Virginia (Plaintiff Taylor, UU.II) law will be dismissed as time-barred.

### C. Magnuson-Moss Warranty Act

GM argues that a "nationwide" claim for breach of the MMWA cannot proceed without being predicated on viable state law breach of warranty claims. ECF No. 48, PageID.4934. Plaintiffs counter that their warranty claims are validly pled and therefore the MMWA cause of action should survive. ECF No. 53, PageID.5996.

The MMWA only provides a federal cause of action for consumers who are damaged by a failure to comply under a state warranty; MMWA claims therefore "stand or fall" with valid state law warranty claims. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich. 2017). Consequently, any Plaintiffs that have viable state law warranty claims will also have viable MMWA claims. *See, e.g., In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 986 (N.D. Cal. 2014) ("Accordingly, the Court concludes that the MMWA claim is dismissed in part—more specifically, to the extent the Court has dismissed any of the state express and implied warranty claims."). Therefore, Count I of the SAC will be dismissed as to any of the state sub-classes where their claims for IWM under state law have been found not to be viable.

### D. Breach of Contract

Plaintiffs concede that their breach of contract claims are insufficiently pled in light of this Court's opinion in *Raymo*, 475 F.Supp.3d at 709–10. *See* n. 8, ECF No. 53, PageID.5968;

Tr. 1/29/21, 12:18-21, PageID.7068. Therefore, Count III of the SAC is dismissed.

### E. Deficiencies in fraudulent concealment claims

**\*13** GM makes six arguments as to why Plaintiffs' fraudulent concealment claims are insufficiently pled. Having considered these arguments and the laws of the state jurisdictions at issue, the fraudulent concealment claims will be dismissed as to eleven states.[15] Additionally, although the Court declines to dismiss any specific Named Plaintiffs at this time, any consumer protection claims are dismissed to the extent they involve claims where GM did not have knowledge of the defect prior to the time of sale.

Neither party advocates for a particular definition of fraudulent concealment or highlights any significant differences in formulation of its elements between various states' laws, so the Court will use a definition from this district's caselaw. Plaintiffs must allege that:

> (1) GM concealed or omitted a material fact;

> (2) GM had a duty to disclose;

> (3) Plaintiffs justifiably relied on the omission of material fact; and

> (4) Plaintiffs suffered damages as a result.

*Matanky*, 370 F. Supp. 3d at 789.

Plaintiffs make a number of allegations in their SAC (ECF No. 40) that are relevant to fraudulent concealment, and the Court will summarize them here before addressing GM's arguments:

> • GM touted "durability, fuel economy, and performance qualities" of the class vehicles and said that they had "no significant defects and were compatible with US diesel fuel." Advertising materials promised that class vehicles would be "11 percent more fuel efficient," take performance and fuel economy "to the next level," and have proven durability. ¶ 303.

> • GM "intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality" of the vehicles, as well as facts concerning their "compatability (sic) with American diesel fuel." ¶ 299.

> • Each named plaintiff states that they "saw and recalled GM's television commercials, internet advertisements, sales brochures, and heard statements from GM dealership sales representatives wherein GM claimed that the Duramax diesel truck which Plaintiff ultimately purchased had superior fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM through the channels listed above that the Class Vehicle was compatible with American diesel fuel ... Absent these representations, Plaintiff would not have purchased the vehicle, or would have paid less for it, because it is unfit for its ordinary use." *See, e.g.*, ¶ 15.

As to the question of GM's knowledge, Plaintiffs allege that the following known or knowable facts all indicate GM was aware of this defect before selling these trucks to consumers:

> • Higher lubricity specifications required for CP4 pumps than those required for U.S. diesel fuel as early as 2010. ¶ 301.

> • A National Highway Traffic Safety Administration ("NHTSA") safety investigation opened relevant to the CP4 pumps in Volkswagen and Audi cars in February 2011. ¶ 169.

> • Internal communications from the 2009-2011 between auto manufacturers Volkswagen and Audi and the CP4 manufacturer Bosch regarding the defective CP4 pumps. Communications were made public in 2011 as a part of the NHTSA investigation. ¶ 170.

> • An alleged internal tracking system at GM of "lessons learned" related to the CP4, as well as an alleged general industry practice of keeping up with safety issues, recalls, and trade organization bulletins. ¶¶ 172-79.

> **\*14** • Alleged pre-release testing that GM would have conducted prior to the release of the CP4 pump in cars. ¶¶ 184-85.

> • Six complaints posted in online forums and seventeen consumer complaints filed with the NHTSA, spanning between October 2010 and April 2018. ¶¶ 188-211.

> • Field data GM submitted to the NHTSA from October – December 2011 with reports of CP4 pump failure. ¶¶ 180-81.

• An uptick in warranty claims submitted to GM from 2010 to 2011 related to the fuel pump. ¶ 182.

• Internal service bulletin regarding "hard start or no start" problems with Duramax diesel engines issued in August 2014. ¶ 216-17.

### 1. Failure to meet Rule 9(b)'s particularity requirements for fraud allegations

First, GM alleges that Plaintiffs have not sufficiently pled their claims of fraudulent concealment. ECF No. 48, PageID.4939-41. Claims for fraud must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). There are two kinds of fraudulent concealment claims, affirmative and omission-based, and the requirements are different for each:

Sixth Circuit precedent demands that claims for affirmative misrepresentations: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008). For claims involving fraudulent omissions, Rule 9(b) requires that Plaintiffs plead "the who, what, when, where, and how" of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). Specifically, a plaintiff must allege "(1) precisely what was omitted; (2) who should have made the representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* Stating a claim for fraudulent omission also requires pleading a duty to disclose. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013).

*Raymo*, 475 F. Supp. 3d at 705. Plaintiffs fail to specify the type of fraudulent concealment they are alleging, presumably leaving it to the Court to do the work of assessing whether facts alleged support either.

With regard to affirmative misrepresentation, the only specific statements that Plaintiffs cite are those noted above from advertising materials. SAC ¶ 303. However, "[i]nherently subjective" statements, or statements that are so general as to be mere puffery, cannot form the basis of a fraud claim. *Raymo*, 475 F. Supp. 3d at 705-06 (quoting *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 598 (E.D. Mich. 2017)). The Court does not find any of the advertising descriptors cited by Plaintiffs—"11 percent more fuel efficient," "take[s] performance and fuel economy to the next level," or "proven durability"—to amount to anything other than puffery. *See Raymo*, 475 F. Supp. 3d at 706 (finding statements such as "leading fuel economy," "unprecedented performance and fuel economy," "environmentally clean," "low-cost of ownership," and "built to last for years" to be "general and nonquantifiable" and therefore puffery). While "11 percent more fuel efficient" might seem closer to the types of statements the Court found to be actionable in *Bledsoe II*, the allegations fail to indicate what benchmark the 11% figure is being compared to (i.e., the trucks are 11% more fuel efficient than what?), and therefore the Court does not consider the use of this figure to be a quantifiable promise that could constitute affirmative misrepresentation. *Cf. Bledsoe v. FCA US LLC ("Bledsoe II")*, 378 F. Supp. 3d 626, 648-50 (E.D. Mich. 2019).

**\*15** However, the specific allegations Plaintiffs make contain enough facts at this stage to show fraudulent omission. Summarizing Plaintiffs' allegations in the light most favorable to them, the complaint alleges that (1) GM did not provide relevant and needed information about the trucks' compatibility with U.S. diesel or issues with the CP4 pump, (2) GM should have done so, as the manufacturer of the vehicles with superior knowledge about this pump, (3) this caused Plaintiffs to buy trucks that they otherwise would not have, and (4) they paid GM a premium that GM subsequently retained. SAC ¶¶ 299-300, 303-14. They have made sufficient "who, what, when, where, how" allegations under Fed. R. Civ. P. 9(b) for an omissions-based claim at this stage, and the Court declines to dismiss any claims for not meeting the Rule 9(b) pleading standard.

### 2. Failure to allege knowledge at the time of sale

Plaintiffs concede that to allege fraud, they must allege GM was aware of a defect at the time of sale. ECF No. 48, PageID.4941. GM argues that none of the allegations of knowledge made by Plaintiffs are concrete enough. ECF No. 48, PageID.4941-47.

While there is no "smoking gun" allegation pinpointing a moment in time when GM knew to a certainty about issues with the CP4 pump and U.S. diesel fuel, *see, e.g., Matanky*, 370 F. Supp. 3d at 791 (public statement by the Chief Engineer indicated that GM had knowledge of a defect prior to car's release), it is also not the case that Plaintiffs have alleged *no*

facts or only conclusory statements to indicate GM at some point developed knowledge about the defect in question. *See, e.g., Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *13-14 (E.D. Mich. June 7, 2018).

In considering each potential source of "knowledge" alleged by Plaintiffs, the Court does not find the general allegations about pre-release testing, internal tracking systems, or general industry practices to be persuasive by themselves. SAC ¶¶ 173-79, 184-85. Plaintiffs do not provide concrete information about these, but merely assert that they must exist, and this Court and others in this district have found those types of allegations to be at too high a level of generality to allege knowledge. *Raymo*, 475 F. Supp. 3d at 707-09 (collecting cases).

But the SAC also points to a NHTSA safety investigation that was opened in February 2011[16] regarding CP4 pumps in Volkswagen and Audi vehicles. SAC ¶ 169. As a part of this investigation, GM submitted field data regarding CP4 pump failures collected between October and December 2011 to NHTSA. SAC ¶¶ 180-81, *see also* SAC Ex. 18, ECF No. 40-20. The investigation also published on NHTSA's website internal communications between Volkswagen, Audi, and the CP4 manufacturer Bosch about defective CP4 pumps. SAC ¶ 170. Although this investigation centered on two other automakers, not GM, the Court is not convinced by GM's argument that Plaintiffs' allegations do not specifically posit that GM "saw any of those communications." Tr. 1/29/21, 24:16-20, PageID.7080.[17] Particularly when GM and other OEMs were asked to submit data, it seems implausible that GM would not have carefully examined the rest of the investigation materials given its vested interest in knowing as much as possible about the possibility of problems with the fuel pump that was in its trucks. This investigation involves the same pump model[18] that GM was using, made by the same manufacturer, and includes email communications between Volkswagen, Audi, and Bosch employees specifically discussing the pump, issues with fuel lubricity, and the presence of metal shavings in the pump housing. *See* SAC Exs. 15-17, ECF Nos. 40-17, 40-18, 40-19. The Court finds it plausible that this kind of investigation would have put GM on notice about issues with its own CP4 pumps.

 **\*16** Although the public release of this information in February 2011 seems like the strongest indicator of a starting point for GM's knowledge, Plaintiffs also plausibly allege that GM engineers would have kept abreast of these kinds

of developments even before then, through tracking of competitors and emerging safety or technical issues. SAC ¶ 172. Plaintiffs point to two research studies, from August 2005 and September 2009, regarding fuel injection pumps and fuel lubricity, specifically warning manufacturers of the potential for malfunction with fuels in the American market. SAC ¶¶ 154-55. These studies did not specifically discuss the CP4 pump. Plaintiffs nevertheless allege these papers would have put GM on notice regarding the potential for fuel pump malfunction with American diesel fuel such that when issues regarding the CP4 pump came to light, it would likely have taken action to investigate further. Taking the totality of these allegations in the light most favorable to Plaintiffs, as soon as manufacturers began having issues with CP4 pumps that used American diesel it is not implausible that GM would have become aware of the defect.[19]

It is important to determine a starting point for GM's knowledge of the alleged defect with the CP4 pump in class vehicles because that affects which Plaintiffs here have viable claims—any Plaintiff who bought their truck before that starting point cannot pursue fraudulent concealment claims.

Given the lack of a single-source "event" that can be said to have definitively marked the moment when knowledge of the defect was imparted to GM, the Court is unable at this time to identify such an exact starting point. But looking at all of Plaintiffs' allegations, it is evident that at *some* point within the timeframe covered by the allegations in the SAC, the balance of available evidence would have tipped the scale towards knowledge. While the evidence is strongest after February 2011, the complaint overall raises a plausible allegation of knowledge of the problem at the time when the vehicles at issue were manufactured, before any Plaintiffs bought their trucks.[20] Conversely, it is clear given the elements required to show fraudulent concealment that no claims related to purchases that occurred before GM had knowledge of this defect, whenever that was, can survive.

Further clarification will likely emerge in discovery, and assuming Parties still disagree about the exact starting point of GM's knowledge, the question can be addressed again at the summary judgment stage. The Court declines at this time to dismiss any fraudulent concealment claims for lack of knowledge.

### 3. Failure to allege a duty to disclose

Plaintiffs also concede that they have to allege GM had a duty to disclose information about the defect to consumers in order to succeed on a fraudulent concealment claim. They offer various theories (superior knowledge, creation of a false impression, and material defect) that they say give rise to such a duty. ECF No. 53, PageID.5977-586.

The Court notes that Parties did not make it easy to evaluate this issue. For Plaintiffs, whether any of these theories does or does not apply depends on the state's law in question, and the caselaw presented required supplemental briefing related to a specified list of states. Tr. 1/29/21, 81:8-18, PageID.7137. On the other hand, GM purports to challenge the sufficiency of Plaintiff's allegations under the laws of every state, but only lodges specific arguments about why Plaintiffs' pleadings are insufficient for certain states. *See* ECF No. 48, PageID.4947. The Court will therefore only address whether there is a duty to disclose in the states where GM specifically challenges the issue, and declines to grant the motion to dismiss for failure to allege a duty to disclose as to any other states.

**\*17** GM raises several different arguments regarding the duty to disclose, according to the law of the individual states. Therefore, the Court will outline on a state-by-state basis the argument for dismissal raised by GM, the best authority from those cited by Parties regarding any potential grounds on which a duty to disclose arises, and the Court's conclusion as to which position is correct:

| State | Authority | Conclusion |
|---|---|---|
| FL | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | Plaintiffs cite *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 638 (E.D. Mich. 2019) (duty to disclose can arise under Florida law when manufacturer has "superior knowledge" of an alleged defect) (quoting *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at \*13 (D.N.J. Oct. 9, 2013)). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| IL | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | Plaintiffs cite *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1011 (N.D. Cal. 2018) ("suppression of material facts" creates a duty in IL). | Allegations regarding concealment are sufficient to show suppression of material facts at this stage. |
| MI | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | Plaintiffs cite *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 553 (W.D. Mich. 1998) (duty to disclose can arise if "one party possesses superior knowledge, not readily available to the other and knows that the other is acting on the basis of mistaken knowledge"). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| NV | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |

| | | |
|---|---|---|
| | Plaintiffs cite *Heldenbrand v. Multipoint Wireless, LLC*, No. 2:12-CV-01562-RCJ, 2012 WL 5198479, at *4 (D. Nev. Oct. 18, 2012) (duty to disclose can arise from "the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonably reach of the other party") (citing *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98, 110 (1998) (overruled on other grounds)). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's knowledge of material facts at this stage. |
| NY | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | Plaintiffs cite *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 236 (S.D.N.Y. 2015) ("a seller in an arm's-length transaction has a duty to disclose ... if they have superior knowledge of those facts and the buyer could not discover them through ordinary diligence under the laws of ... New York."). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| OH | GM argues no duty to disclose when bought from a dealer. | Grant Motion to Dismiss |
| | Plaintiffs argue there is a duty to disclose when the defect at issue raises safety concerns, but none of the cited cases specifically discuss Ohio law or discuss omission-based disclosure, rather than affirmative misrepresentation. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 870-71 (S.D. Ohio 2012); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *19-20 (D.N.J. May 8, 2017); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). | Plaintiffs do not cite any authority indicating that Ohio recognizes a safety defect duty to disclose. |
| | | *See also Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 795 (E.D. Mich. 2019) (finding no authority supporting a duty to disclose when there is a safety defect under Ohio law). |
| PA | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | *Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003) (duty to disclose under PA | Allegations that cars can stall out without warning while driving are enough to allege bodily harm. |

law can arise when there are defects that cause "significant bodily harm").

| | | |
|---|---|---|
| VA | GM argues no duty to disclose when bought from a dealer. | Deny Motion to Dismiss |
| | *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1011 (N.D. Cal. 2018) ("superior knowledge" creates a duty in VA). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| ME | GM argues no duty to disclose, citing *Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) (no duty to disclose without "fiduciary or confidential relationship"). | Deny Motion to Dismiss |
| | *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1009 (N.D. Cal. 2018) (even if none of the normal elements giving rise to a duty to disclose under Maine law are present, "fraud based on a party's silence may still be actionable depending on the facts of the case") (quoting *Martin v. Ort*, No. BANSC-CV-2015-195, 2016 WL 1069907, at *3 (Me. Super. Feb. 03, 2016)). | Dismissal is inappropriate at this stage given that Plaintiffs have successfully alleged fraud by omission. |
| MO | GM argues duty only arises when there is fiduciary relationship, privity, or superior knowledge. | Deny Motion to Dismiss |
| | *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) (duty to disclose can arise when there is "superior knowledge," although it "requires the plaintiff to show that he exercised due diligence to discover the information"). | Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge and their own due diligence at this stage. |
| NJ | GM argues no duty to disclose, citing *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (no duty to disclose when no fiduciary relationship or special reliance). | Grant Motion to Dismiss |
| | *See also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *20 (D.N.J. May 8, 2017) (duty to disclose when defendant makes a partial disclosure). | New Jersey only recognizes a duty to disclose when there is a fiduciary relationship or when defendant has made a partial disclosure, neither of which Plaintiffs can show. |

| SC | GM argues no duty to disclose, citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 447 (4th Cir. 2001) (South Carolina only recognizes duty to disclose in limited circumstances). | Grant Motion to Dismiss |
| | | Plaintiffs cannot allege fiduciary relationship, affirmative misrepresentation, or any other facts recognized as creating a duty to disclose in South Carolina. |

**\*18** The Court will dismiss Count II as to Ohio, New Jersey, and South Carolina for failure to allege a duty to disclose under state law.

#### 4. Economic loss doctrine

The economic loss doctrine prevents a purchaser of a defective product from using a tort claim to recover only economic damages. GM alleges that this bars Plaintiffs' fraud claims in certain states.[21] ECF No. 48, PageID.4950. Plaintiffs concede that they are only seeking economic damages, but counter that all the states named recognize fraud exceptions to the doctrine, and that some also recognize safety exceptions. ECF No. 53, PageID.5987-88.

Given the structure of the briefing, the Court will address these claims in groups and cite the authority it finds most persuasive:

| State | Authority | Conclusion |
|-------|-----------|------------|
| FL | Plaintiffs cite cases indicating that these states recognize a fraud exception to the economic loss doctrine. ECF No. 53 at n.20, PageID.5987. | Deny Motion to Dismiss |
| KY | GM does not respond. | |
| ME | *See also Francis v. Gen. Motors, LLC*, No. 19-11044, 2020 WL 7042935, at *17-18 (E.D. Mich. Nov. 30, 2020) (collecting cases regarding economic loss doctrine in various states). | |
| MN | | |
| MO | | |
| NJ | | |
| NY | | |
| NC | | |
| PA | | |
| SC | | |
| CA | Two recent and well-reasoned cases indicate CA's fraud exception only extends to affirmative | Grant Motion to Dismiss |

*Chapman v. General Motors LLC, --- F.Supp.3d ---- (2021)*

| | | |
|---|---|---|
| | misrepresentation, not omission. *See Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at \*25 (N.D. Cal. Apr. 23, 2020). | |
| | | Plaintiffs have not sufficiently alleged affirmative misrepresentation. |
| MD | Both parties cite the same case, which states that Maryland only recognizes an exception to the economic loss doctrine bar where the concealment of a defect gives rise to "a serious risk of bodily harm." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 275 (Md. 2007). | Deny Motion to Dismiss |
| | | Plaintiffs have sufficiently alleged that the defect gives rise to a risk of serious bodily harm through allegations that cars can stall out without warning while driving. |
| | | *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 590 (E.D. Mich. 2018) (same finding regarding Maryland economic loss doctrine). |
| MI | A thorough analysis by the Michigan Court of Appeals indicates that "action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 52, 649 N.W.2d 783, 789 (2002) | Grant Motion to Dismiss |
| | Plaintiffs' cited case indicates that the "separate duty" exception is for fraud in the inducement only. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 591 (E.D. Mich. 2018). | Plaintiffs cannot meet the elements of fraud in the inducement because they do not allege affirmative misrepresentation. |
| NH | *Border Brook Terrace Condo. Ass'n v. Gladstone*, 137 N.H. 11, 18, 622 A.2d 1248, 1253 (1993) (collecting cases indicating that economic loss doctrine is recognized in New Hampshire). | Grant Motion to Dismiss |
| | Plaintiffs' cited case indicates that New Hampshire makes an exception for negligent misrepresentation only. *Wyle v. Lees*, 33 A.3d 1187, 1191 (N.H. 2011). | Plaintiffs cannot meet the elements of negligent misrepresentation because they have not sufficiently alleged any affirmative misrepresentations, only omissions. |

**\*19**  The Court will dismiss Count II as to California, Michigan, and New Hampshire for being barred by the economic loss doctrine.

### 5. Certain state product liability statutes preclude fraudulent concealment claims

GM argues that the Louisiana Products Liability Act precludes a common law fraudulent concealment claim. ECF No. 48, PageID.4951. Plaintiffs do not respond, so the Court finds this argument to be conceded. Count II is therefore dismissed as to Louisiana plaintiffs.

GM also alleges in a footnote that other state fraudulent concealment claims are preempted by state law, and therefore should be dismissed in the context of putative class members. ECF No. 48 at n.31, PageID.4952. Plaintiffs respond with cases to indicate that these state statutes do not preclude fraud-based cases. ECF No. 53, PageID.5988. Having reviewed each party's briefing, Court will cite to the authority it finds most persuasive for each state:

| State | Authority | Conclusion |
|-------|-----------|------------|
| CT | N/A | Deny Motion to Dismiss<br><br>The cases cited by GM indicate that common law claims are sometimes barred under the Connecticut Products Liability Act, but Plaintiffs' claim is under the Connecticut Unfair Trade Practices Act: the argument is inapposite. *See* Count H.I, PageID.3634. |
| OH | *Jones v. Am. Tobacco Co.*, 17 F. Supp. 2d 706, 718-19 (N.D. Ohio 1998). | Deny Motion to Dismiss<br><br>Ohio products liability statute does not preempt all common law fraud claims. |
| MS | *Elliott v. El Paso Corp.*, 181 So. 3d 263, 269 (Miss. 2015). | Grant Motion to Dismiss |
| TN | *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 918 (N.D. Ill. 2013). | Grant Motion to Dismiss |
| WA | *Bylsma v. Burger King Corp.*, 293 P.3d 1168, 1170 (Wash. 2013). | Deny Motion to Dismiss<br><br>Fraud claims are excluded from state product liability statute and therefore not preempted. |
| OR | *Weston v. Camp's Lumber & Bldg. Supply, Inc.*, 135 P.3d 331, 337-38 (Or. Ct. App. 2006). | Grant Motion to Dismiss |

Given this analysis, the Court finds that Count II is also dismissed as to Mississippi, Tennessee, and Oregon because these claims are preempted by state statute.

### 6. Failure to plead injury

Lastly, GM alleges that the Plaintiffs who never experienced a catastrophic failure cannot allege injury as required for

element (4) of a fraudulent concealment claim. ECF No. 48, PageID.4951-52. As already discussed *supra* Section III.A.3, the Court recognizes overpayment at the point-of-sale as an injury. The Court therefore declines to dismiss Count II on this ground.

### F. Consumer protection

GM makes fifteen arguments to dismiss consumer protection claims on various theories. Each consumer protection claim is brought under relevant state consumer protection statute(s), and therefore most of these theories are state-specific and must be analyzed individually. In total, 13 of the 54 consumer protection claims will be dismissed.[22] Additionally, consumer protection claims are dismissed if they involve claims where GM did not have knowledge of the defect prior to the time of sale. *See supra* Section III.E.2.

### 1. Alaska claim is a placeholder

**\*20** GM argues that the Alaska consumer protection count does not "actually assert a claim." ECF No. 48, PageID.4952. Plaintiffs do not respond. Such placeholder claims can be dismissed at this stage. *See Wozniak*, 2019 WL 108845, at \*1. The Court will dismiss Count D.I.

### 2. Insufficient pleading of deceptive conduct, reliance, and causation

GM next argues various deficiencies in pleading the elements of consumer protection claims. ECF No. 48, PageID.4952-54. Plaintiff counters that to the extent it has met its pleading requirements under Fed. R. Civ. P. 9(b) for its fraud claim, it has met the required pleading standards for state consumer protection statutes. ECF No. 53, PageID.5989-91.

Although each states' consumer protection statutes are different, the Court can resolve this claim because they all at a minimum require deceptive conduct, reliance, and causation to be pled with the same level of particularity required by Fed. R. Civ. P. 9(b). *See, e.g., Matanky*, 370 F. Supp. at 797. GM does not allege that any state requires *more* than that. And the Court has already found these elements of Rule 9(b) to be satisfied, *see supra* Section III.E.1, at least for fraudulent omission. *See, e.g.*, ¶ 15, ECF No. 40, PageID.3398.

At this stage, courts do not generally find, as GM urges, that Plaintiffs must identify specific advertisements or be able to articulate exactly when they saw them. *See, e.g., In re CP4*, 393 F. Supp. 3d at 878; *Click*, 2020 WL 3118577, at \*6 ("Plaintiffs allege that they saw GM's advertisements in the weeks and months prior to their purchases, satisfying the "when" of Rule 9(b)."). GM cites to *Wozniak*, but in that case Plaintiffs did not plead "*any* representations" that were made to them regarding the defective lug nuts at issue. 2019 WL 108845, at \*3 (emphasis added). The Court therefore declines to dismiss any counts on this ground.

### 3. GM's knowledge of the defect at the time of sale

GM repeats its argument that Plaintiffs have not sufficiently alleged it had knowledge of the defect at the time of purchase. ECF No. 48, PgeID.4954. It makes no additional arguments on this point, and so the Court's conclusion is the same as explained previously. *See supra* Section III.E.2. Any state consumer protection claims that involve purchases made before GM had knowledge of the defect do not survive.

### 4. Certain state statutes do not allow class actions to be brought with state consumer protection claims

Next, GM references the consumer protection statutes of Georgia, Louisiana, South Carolina, and Tennessee, noting that these statutes do not allow state consumer protection claims to be brought as part of a class action lawsuit. ECF No. 48, PageID.4954-55.

In *Shady Grove v. Allstate*, the Supreme Court considered this question of what to do when a state statute conflicts with Fed. R. Civ. P. 23, which governs class actions. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010); *see In re FCA Gearshift*, 355 F. Supp. 3d at 599-600 (summarizing *Shady Grove* decision). Our district, like many others, treats Justice Stevens' opinion in *Shady Grove* as controlling, which directs us to ask: is the state law substantive (in which case it will control) or procedural (in which case Fed. R. Civ. P. 23 can supersede)?

**\*21** The Court is persuaded by Judge Roberts' discussion in *Matanky*, finding that the bar on class actions in state consumer protection statutes like these is best understood as a substantive policy choice: these states do not want

consumer protection claims to be maintained as part of class actions. This was a choice made not simply because of procedural convenience, but for reasons relating to the substantive nature of class action lawsuits. 370 F. Supp. 3d at 798-99; *see also Delgado v. Ocwen Loan Servicing, LLC*, No. 13CV4427NGGST, 2017 WL 5201079, at \*10 (E.D.N.Y. Nov. 9, 2017). The Court will therefore dismiss Counts L.I (Georgia), T.I (Louisiana), PP.I (South Carolina), and RR.I (Tennessee).

### 5. Colorado's bar on class claims for money damages

Citing Colorado's consumer protection statute, GM argues that it does not allow class claims for money damages. ECF No. 48, PageID.4955. The Court again references Judge Roberts' analysis in *Mataky*, which considers the same argument, and agrees with her conclusion that the plain language of the statute does not allow class claims for money damages. *See* 370 F. Supp. 3d at 799. Because Plaintiffs are seeking monetary as well as injunctive relief, the Court will dismiss Count G.I (Colorado) as a class claim seeking damages.

### 6. Michigan's consumer protection statute exempts automobile sales

Michigan's Consumer Protection Act ("MCPA") contains a broad exception: it does not apply to any transactions or conduct "specifically authorized under laws administered by a regulatory agency or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1). GM argues that because automobile sales are regulated by the state, they qualify within that exception, and therefore Plaintiffs cannot bring claims under this statute regarding trucks purchased in Michigan. ECF No. 48, PageID.4955-56.

The caselaw on this question has evolved over time. Judge Roberts in *Mataky* found that automobile sales do fall under the statutory exemption, because the sale of cars is authorized and regulated by law in Michigan. 370 F. Supp. 3d at 799. Judge Leitman in a following decision considered this analysis but rejected it at the motion to dismiss stage, concluding that the party making the argument must specifically identify the federal or state laws that qualify a given transaction for the exception. *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,

406 F. Supp. 3d 618, 643 (E.D. Mich. 2019). But GM cites a subsequent Michigan Court of Appeals decision that thoroughly reviews various state and federal laws related to automobile sales before deciding that automobile sales are "specifically authorized" such that they qualify for the MCPA exception. *Cyr v. Ford Motor Co.*, No. 345751, 2019 WL 7206100, at \*1-3 (Mich. Ct. App. Dec. 26, 2019).

Given the authority from a Michigan state court interpreting this statute and finding the exception to apply to automobile sales, the Court will dismiss Count X.I (Michigan).

### 7. Class action notice requirement in Ohio's consumer protection statute

The Ohio Consumer Sales Practices Act (OCSPA) has a class action notice requirement: to bring a class action under the OCSPA, a plaintiff must base the action on a rule promulgated by the Attorney General or on "an act or practice that was [previously] determined by a court to violate the OCSPA." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012). "[A] plaintiff must identify *in his or her complaint* the rule or case" that satisfies this notice requirement. *Id.* (emphasis added). GM alleges that Plaintiffs have failed to meet this requirement. ECF No. 48, PageID.4956.

**\*22** Though Plaintiffs point to such cases in their Response, ECF No. 53, PageID.5993, they do not identify them in the SAC. The Court will therefore dismiss Count KK.I without prejudice.

### 8. North Carolina and Pennsylvania bar consumer protection claims solely for economic losses

GM alleges that the consumer protection statutes for these states bar claims solely for economic losses. ECF No. 48, PageID.4956. Plaintiffs do not respond, which the Court will take as a concession, and therefore Counts II.I (North Carolina) and NN.I (Pennsylvania) are dismissed.

### 9. Louisiana Products Liability Act precludes consumer protection claim

GM alleges the Louisiana Products Liability Act is the exclusive remedy in that state for claims against

manufacturers, and therefore there can be no cause of action under the Louisiana Unfair Trade Practices and Consumer Protection Law as Plaintiffs currently allege. ECF No. 48, PageID.4956. Plaintiffs do not respond, which indicates a concession of the claim, and therefore Count T.I is dismissed.

## 10. Claims under the California Unfair Competition Law ("UCL") barred by adequate legal remedies

California's UCL only provides for restitution and injunctive relief. A plaintiff pursuing a claim under it must establish that there is no adequate remedy at California law available, such that equitable relief is the only option left. *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). GM argues that because other state law claims and an MMWA claim are available to Plaintiffs, the UCL cause of action must be dismissed. ECF No. 48, PageID.4957.

Initially, the Court must allow this claim to survive as the law of the case because it was already decided on by Judge Tigar in *In re CP4*. 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019) (declining "to bar 'the pursuit of alternative remedies at the pleadings stage.' "). But the Court is also persuaded by this reasoning: the UCL claim is essentially a pleading in the alternative, and it would be premature to dismiss it now.

## 11. Louisiana, North Dakota, and Oklahoma do not allow claims for injunctive relief

GM alleges that the consumer protection statutes in these states do not allow claims for injunctive relief. ECF No. 48, PageID.4957. Plaintiffs do not respond, which the Court will take as a concession, and therefore Counts T.I (Louisiana), JJ.I (North Dakota), and LL.I (Oklahoma) will be dismissed.

## 12. Sufficient allegations to show injury

GM again argues that those Plaintiffs who have not suffered a catastrophic failure have not experienced an injury sufficient to invoke the protection of any state consumer protection statutes. As already discussed *supra* Section III.A.3, the Court recognizes overpayment at the point-of-sale as an injury. The Court therefore declines to dismiss any consumer protection counts on this ground.

## 13. Alabama and Pennsylvania Named Plaintiffs cannot meet the requirements of state statutes

GM alleges that the consumer protection statutes in these states only cover claims for vehicles purchased "primarily for personal, family, or household use," and that because Plaintiffs Cappiello and Miller allege they used their trucks for work purposes, these claims cannot proceed. ECF No. 48, PageID.4958. Plaintiffs do not respond, and such a failure operates as a concession, so Counts C.I (Alabama) and NN.I (Pennsylvania) will be dismissed.

## 14. Arkansas statute does not allow claims for "diminution of value"

**\*23** Under the Arkansas Deceptive Trade Practices Act ("DTPA"), a private right of action is only available when "actual damage or injury is sustained," which occurs "when the product has actually malfunctioned or the defect has manifested itself." *Wallis v. Ford Motor Co.*, 362 Ark. 317, 328, 208 S.W.3d 153, 161 (2005). GM concedes this, and merely argues that there is no Arkansas named plaintiff to sustain this claim. ECF No. 48, PageID.4958. But given that the claim is brought on behalf of potential class members, who may very well have suffered "actual damage or injury" as required by the statute, it would be premature to dismiss it at this stage. *See, e.g., Burns v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:14-CV-02208, 2016 WL 128544, at *3 (W.D. Ark. Jan. 12, 2016) (finding a cause of action under the ADTPA at the summary judgment stage when plaintiff's car rusted). The Court declines to dismiss the Arkansas consumer protection claim on this ground.

## 15. Claims in certain states are time-barred

Lastly, GM argues that Plaintiffs' claims in Alabama (McCormick), Michigan (Recchia), and Oklahoma (Egelberry) are time-barred. ECF No. 48, PageID.4959. Plaintiffs do not argue that the claims are timely under the relevant state statutes. Rather, they argue that the claims should be equitably tolled because of GM's "active concealment" and these plaintiffs' inability to recognize this defect on their own. ECF No. 53, PageID.5995. They say they allege active concealment through GM's actions such as: continued lack of disclosure and concealment of the fact that class vehicles can experience these failures,¶ 250; failure to

issue a recall, despite the issuance of internal service bulletins, ¶ 216-17; and creation of a licensing scheme to sell premium diesel fuel, with greater lubricity, so as to be more compatible with the CP4 pumps, ¶ 147. SAC, ECF No. 40.

While these arguments are similar to Plaintiffs' invocation of equitable tolling due to "affirmative concealment" in the implied warranty context, *see supra* Section III.B.5, based on a review of relevant cases from each state the threshold for successfully pleading "active concealment" in the context of state consumer protection statutes seems to be lower. *See In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 6072406, at *12 (S.D. Fla. Oct. 14, 2016) (Alabama law) (finding that a defendant's "active concealment of the true nature of the defect" can be sufficient to toll the statute of limitations); *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 648-49 (E.D. Mich. 2014) (applying Michigan's fraudulent concealment statute to find that an allegation of "active conspiracy to conceal" was sufficient to allow equitable tolling, at least at the motion to dismiss stage); *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 18, 195 P.3d 48, 54 (Oklahoma law) (finding that "when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act of concealment," a statute of limitations can be equitably tolled).

The distinction between "affirmative concealment" and "active concealment" may seem semantic. But the Court finds it significant that cases discussing affirmative concealment generally list elements that must be satisfied, akin to the elements for showing affirmative fraudulent concealment. By contrast, cases discussing active concealment use more general language, as quoted above. Additionally, at least one other court found the type of activity Plaintiffs allege, combined with the "hidden" and complex nature of the fuel pump defect, to be sufficient to allege the elements of equitable tolling in the consumer protection context. *See Click*, 2020 WL 3118577, at *14. The Court therefore declines to dismiss the Alabama, Michigan, and Oklahoma consumer protection claims on this ground.

### G. Unjust enrichment

**\*24** Plaintiffs bring unjust enrichment ("UE") claims in 14 states. GM does not challenge the claims in any particular state or allege that any claims are brought in states that do not recognize the cause of action. Rather, it indicates that all the UE claims should fail for a number of reasons: UE is not available when there is an express contract; UE is not available when there is adequate legal remedy; UE is

not available because plaintiffs purchased their vehicles from third parties and conferred no benefit directly on GM; and, UE claims cannot move forward if Plaintiffs do not adequately plead fraudulent conduct under Fed. R. Civ. P. 9(b). ECF No. 48, PageID.4961-62. Plaintiffs reply generally that it is inappropriate to dismiss this claim at this stage, given that it is a pleading in the alternative. ECF No. 53, PageID.6009-11.

This Court considered in-depth a similar set of arguments in *Raymo* and does not see any distinguishing factors in this case that would require a different result. 475 F. Supp. 3d 680, 709-11 (E.D. Mich. 2020) (collecting cases regarding state law UE pleading standards). For any state that recognizes the cause of action, "[t]he typical elements of a state-law claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted the benefit; and (3) injustice would occur if the defendant did not pay the plaintiff for the value of the benefit." *Id.* at 709. Here, Plaintiffs broadly allege that GM induced them to pay a premium for vehicles that did not perform as advertised, and that indeed are unsafe to drive, and has since then unjustly retained that benefit. The Court declines to dismiss any unjust enrichment claims at this stage.

### H. Class allegations

GM makes two arguments as to why the Court should strike Plaintiffs' class allegations. Because, as explained below, the Court does not find either persuasive, the motion to strike the class allegations is denied. Class certification will be addressed at a later date on an appropriate motion.

### 1. Statutory requirements for a class action under the MMWA

GM argues that because the MMWA has a statutory requirement of 100 named plaintiffs for a class action, the Court cannot have jurisdiction over an MMWA class claim in this case. ECF No. 48, PageID.4962. Plaintiffs counter that 100 named plaintiffs are not required because the Class Action Fairness Act ("CAFA") provides an alternate basis for jurisdiction. ECF No. 53, PageID.6012-13.

The MMWA does require 100 named plaintiffs for a class action. 15 U.S.C. § 2310(d)(3)(C). CAFA requires that (1) at least one class member have diversity of citizenship from one defendant, (2) there are more than 100 class members, and (3) the aggregate amount in controversy exceeds $5 million.

28 U.S.C. § 1332(d)(2). Defendant does not contest that Plaintiffs do meet CAFA requirements. Tr. 1/29/21, 34:11-13, PageID.7090.

When bringing a class action with an MMWA claim, must the class action requirements of the MMWA be met where the requirements for CAFA are fully established? Two circuits have addressed this question. *Compare Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (determining that CAFA was meant to create another avenue for federal court jurisdiction, and that "CAFA effectively supercedes the MMWA's more stringent jurisdictional requirements") *with Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) (finding that "[t]he text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs" and that having diversity jurisdiction under CAFA cannot replace the jurisdiction requirements in the MMWA).

The Court will follow *Kuns*. As a preliminary matter, this is a Sixth Circuit decision, and though unpublished it is authority the Court would be inclined to follow over an out-of-circuit case. But the Court is also persuaded by the reasoning in *Kuns*. Specifically, *Floyd* does not wrestle with the fact that the MMWA defines *two* categories of courts with jurisdiction over MMWA claims. An MMWA action can be brought: "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1). Paragraph (3) contains the requirement of 100 named plaintiffs; therefore, relying solely on the text of the statute, that requirement only applies to class actions brought under (B).

**\*25** By contrast, the language of (A), "any court of competent jurisdiction," is broad—there is no indication that it is restricted to only state courts, or conversely that federal courts are excluded. Therefore, if a district court had jurisdiction over an MMWA claim through CAFA, it would meet the requirements of (A), and the 100 named plaintiffs requirement would not apply. *See also Barclay v. ICON Health & Fitness, Inc.*, No. 19-CV-2970 (ECT/DTS), 2020 WL 6083704, at \*7 (D. Minn. Oct. 15, 2020) (collecting district court cases coming to the same conclusion as *Kuns*).

CAFA was created to expand litigants' ability to access class actions as long as particular conditions were met. For that reason, when CAFA and the MMWA interact, the Court finds it more appropriate to understand CAFA as providing an alternative basis for jurisdiction, not "replacing" or superseding the MMWA requirements as *Floyd* would characterize it.

## 2. Requirements of Fed. R. Civ. P. 23

GM also alleges that Plaintiffs cannot show their claims meet the requirements of a class action, citing deficiencies relating to commonality, predominance, and superiority. Defendant is essentially asking the Court to rule on the propriety of the proposed class at this stage. ECF No. 48, PageID.4962-65. Plaintiffs reply that class claims should not be ruled on until the class certification or summary judgment stage, when there is a fuller record. ECF No. 53, PageID.6013-15.

It is true that the Court is not required to wait until the class certification stage to rule on this question. Fed. R. Civ. P. 23(c)(1)(A). But construing the facts in Plaintiffs' favor, it is not a foregone conclusion that they will be unable to meet class certification requirements after discovery. They allege the same central defect on GM's part and cite the same marketing and advertising materials as supporting their fraud claims. These facts distinguish this case from *Pilgrim*, where the Sixth Circuit upheld denial of class certification at the motion to dismiss stage because the Plaintiffs alleged fundamentally different conduct in each of the states where they were bringing state-specific claims. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (noting that the "program did not operate the same way in every State and the plaintiffs suffered distinct injuries as a result" and that no amount of discovery would save the class allegations). *See also Francis*, ---- F.Supp.3d at ----, 2020 WL 7042935 at \*23 (declining to rule on class certification at the motion to dismiss stage because it was "procedurally premature").

For these reasons, the Court declines to strike the class allegations at this stage.

### I. Outstanding motions

### 1. Motions related to supplemental briefing (ECF Nos. 68, 69, 72, 74, 75)

At oral argument, the Court asked for supplemental briefing related to (1) the duty to disclose in a named set of states, (2) equitable tolling regarding the IWM as to several specific Plaintiffs, and (3) the issue of affirmative concealment. Tr.

1/29/21, 81:8-82:11, PageID.7137-38. GM subsequently filed a supplemental brief. ECF No. 67. Plaintiffs filed a motion to seal their supplemental brief and the brief itself. ECF Nos. 68, 69. Plaintiffs' brief addresses the three questions posed by the Court, and also includes argument relating to GM's knowledge of the defect, accompanied by six exhibits. GM filed a motion to strike the brief. ECF No. 72. Because there are several docket entries, some captioned as motions and some not, that contain duplicative sets of material,[23] the Court will briefly outline what is included in each for clarity:

**\*26** • ECF No. 68: **Plaintiffs' Motion for Leave to File Under Seal** (PageID.7238-42), **Plaintiffs' Supplemental Brief** (redacted) (Ex. 1, PageID. 7248-7259), Exs. 2-7 (redacted).

• ECF No. 69: **Same as ECF No. 68**, sealed and unredacted.

• ECF No. 70: **Plaintiffs' Supplemental Brief** (redacted) (PageID.7366-77), case chart with supplemental authorities (Ex. 1, PageID.7382-87), Exs. 2-7 (redacted).

• ECF No. 71: **Same materials as ECF No. 70**, sealed and unredacted.

• ECF No. 72: **GM's Motion to Strike**.

• ECF No. 73: **GM's Response to Plaintiffs' Supplemental Brief**.

• ECF No. 74: **Plaintiffs' Motion for Leave to File Under Seal** (PageID.7692-94) and **Response to Motion to Strike** (Ex. 1, PageID. 7698-7707).

• ECF No. 75: **Same materials as ECF No. 74**, sealed and unredacted.

• ECF No. 76: **Response to Motion to Strike** (redacted).

• ECF No. 77: **Same as ECF No. 76**, sealed and unredacted.

GM essentially asks the Court to strike Section III of Plaintiffs' supplemental briefing (titled "GM's Knowledge of the Defect") as well as the exhibits that it references. ECF No. 72, PageID.7496. It argues that this section of the brief and these exhibits contain information that goes beyond the Court's request for supplemental briefing and seeks to improperly introduce new factual allegations, and therefore this information should not properly be before the Court to consider in evaluating its Motion to Dismiss. *Id.* at PageID.7495-96. Plaintiffs respond that striking is an extreme

remedy, and that the Court has discretion to consider these materials. ECF No. 74-1, PageID.7701.

In evaluating a motion to dismiss, the Court is limited to "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Gomba Music*, 62 F. Supp. 3d at 636 (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). If the Court considers any materials beyond the pleadings and these limited exceptions, it must convert the motion to dismiss into a motion for summary judgment and evaluate it accordingly. Fed. R. Civ. P. 12(d).

To be clear, while the Court admitted it was "interested" in knowing whether Plaintiffs had uncovered other evidence of GM's knowledge, it did not request that such factual material be filed, instead reminding counsel that "this isn't some kind of Congressional hearing." *See* Tr. 1/29/21 at 44:2-8, ECF No. 66, PageID.7100. The Court did not request supplemental legal argument or supplemental factual materials regarding GM's knowledge of the defect. None of the exhibits Plaintiffs seek to introduce are public records or items specifically referred to in the Complaint. And they do much more than "fill in the contours and details" of the Complaint, which the Sixth Circuit has allowed—they present completely new information relating to whether and when GM had knowledge of the alleged defect. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

**\*27** In their Response, Plaintiffs suggest they are submitting these documents because they are "directly responsive to the Court's inquiries," and because the Court "expressed an interest in viewing certain documents referenced by Plaintiffs' counsel during the Hearing," but inquiries in the context of a hearing are not invitations to submit new records and evidence at the motion to dismiss stage in the absence of some explicit instruction to do so. ECF No. 76, PageID.7732. The Court made specific requests for supplemental briefing, and it did not ask Plaintiffs to present additional evidence or present factual material outside the record.[24]

The Court may not consider the addition of numerous exhibits offered by Plaintiffs that fundamentally seek to also supplement their *factual allegations* with information outside the pleadings. The Court understands that these materials have been produced as a part of discovery in *Click*, and

that the Parties have agreed they can be properly used in connection with this case. ECF No. 74-1, PageID.7700. As such, they may be incorporated by Plaintiffs in relevant future motions practice, but the Court will not and does not consider them now in any way.

For the reasons suggested above, the Court will grant the Motion to Strike (ECF No. 72) and strike all copies of the referenced material on the docket. Accordingly, the Court orders Plaintiffs to file on the docket a copy of their supplemental briefing with Section III and Exhibits 2-7 removed. The motions to seal are denied as moot (ECF Nos. 68, 69, 74, and 75). Though it was necessary to review the stricken materials and exhibits in order to rule on the Motion to Strike, as stated the Court did not consider them in any way in conducting its analysis or decision-making regarding the Motion to Dismiss, and those materials have no bearing on its conclusions.

**2. Motions related to Plaintiff Gary Goodwin (ECF Nos. 52, 62)**

As the parties have stipulated to the voluntary dismissal of Plaintiff Gary Goodwin (ECF No. 63), the Court will deny these motions (ECF Nos. 52, 62) as moot.

**3. Defendant's Motion to Dismiss Brandon Tirozzi for Failure to Prosecute (ECF No. 78)**

GM filed a motion to dismiss Plaintiff Brandon Tirozzi for failure to prosecute. Plaintiffs have not responded. The Court is authorized to dismiss a case if a plaintiff fails to comply with a court order. Fed. R. Civ. P. 41(b). "When contemplating dismissal of an action under Rule 41(b), a court will consider: (1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dilatory conduct of the party; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Berry v. Cent. Michigan Univ.*, No. 2:19-CV-10306-TGB, 2019 WL 7293374, at *2 (E.D. Mich. Dec. 30, 2019) (citing *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)).

**\*28** After being appropriately served, Plaintiff Tirozzi has not responded to the Court's Order to obtain counsel, or

otherwise communicated with the Court in any way, making it difficult to determine what reasons are motivating his lack of response. ECF Nos. 41, 42. GM will certainly be prejudiced if, after the entry of this order, it is forced to re-litigate these claims as to Plaintiff Tirozzi alone. The Order granting leave to withdraw did not specifically warn him that he could be dismissed for failure to find a new attorney. But because this is a class action, he cannot remain in the case as a named plaintiff without an attorney. *Ziegler v. Michigan*, 90 Fed. App'x 808, 810 (6th Cir. 2004). "Less drastic" sanctions do not therefore seem to be an option. The Court will grant the motion to dismiss Plaintiff Tirozzi, with the understanding that his claims may live on inasmuch as he would be a member of Plaintiffs' putative class.

**CONCLUSION**

The Motion to Dismiss (ECF No. 48) is **GRANTED IN PART** and **DENIED IN PART**. Of the total of 114 claims, 20 will be dismissed with prejudice, 1 is dismissed without prejudice, and 93 survive. For convenience, the Court attaches a Table of Claims containing a breakdown of the claims that survive and those that are dismissed. The Table of Claims is hereby incorporated in this Order by reference and specifies according to the Count numbers in the SAC which claims remain and which are being dismissed.

The Motion to Strike (ECF No. 72) is **GRANTED**, and the Clerk is instructed **TO STRIKE** ECF Nos. 68, 69, 70, 71, 74, 75, 76, and 77 from the docket. The Motions to Seal (ECF Nos. 68, 69, 74, 75) are **DENIED** as moot because the materials will no longer be part of the docket. Plaintiffs are ordered to file a copy of their supplemental briefing with the stricken materials removed on the docket, and clearly label it to indicate what is included.

The motions related to Plaintiff Gary Goodwin (ECF Nos. 52, 62) are **DENIED** as moot. The Motion to Dismiss Plaintiff Brandon Tirozzi (ECF No. 78) is **GRANTED** and he is **DISMISSED WITH PREJUDICE** from this action.

**SO ORDERED,** this 31st day of March, 2021.

**All Citations**

--- F.Supp.3d ----, 2021 WL 1286612

Footnotes

1    In order to comply with our environmental regulations, diesel fuel in the U.S. is refined through a process called hydrodesulfurization. This process removes sulfur as well as a variety of other nitrogen and oxygen compounds, the latter of which are important to making diesel fuel lubricious. ¶ 149, ECF No. 40, PageID.3491.

2    Parties are bringing litigation under Texas state law in a separate action that they have chosen not to consolidate in this Court. *See* *Click v. Gen. Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020). Texas is included, however, in the federal Magnuson-Moss Warranty Act claim.

3    Defendants rely on *Matanky*, which is distinguishable. There, the Court found no standing to seek injunctive relief under a statute that was specifically addressing injury due to "deceptive trade practices"—after having already purchased the product at issue, "deceptive trade practices" could not cause future harm. 370 F. Supp. 3d at 801-82.

4    From the Court's review of the SAC, it would appear that Plaintiff Recchia could also be included in this group.

5    There are no IWM claims for AZ, CT, GA, ID, IA, KY, and WI.

6    Counts C.II (AL), K.III (FL), O.II (IL), HH.III (NY), and RR.II (TN) (lack of privity); X.II (MI) (lack of notice); O.II (IL), X.II (MI), and UU.II (VA) (time-barred).

7    Plaintiffs also cite litigation in other courts dealing with the same defect at issue here where IWM claims were allowed to move forward at this stage. *See* *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 883 (N.D. Cal. 2019); *Click*, 2020 WL 3118577, at *11. The Court is not bound by these opinions on this issue but finds their reasoning to also support this outcome.

8    The Court also notes that as to any California-law claims, the holdings of *In re CP4* are arguably binding on this Court as the law of the case because it has been consolidated with the instant action.

9    The numbers in parentheses indicate the number of plaintiffs who have claims from that state.

10   All citations are to the SAC, ECF No. 40.

11   There is authority on both sides of this issue. *Compare* *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1158 (D. Minn. 2016) ("Defendants have been locked in litigation ... in courts all across the country; it could hardly be said that Plaintiffs' complaint was the first time Defendants received notice of the kind and type of claims raised by Plaintiffs.") *with* *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) ("actual or constructive notice of the defect on the part of the manufacturer is irrelevant; the plaintiff must provide notification independently."). The Court finds that this exemption to pre-suit notice cannot therefore be applied broadly to all Plaintiffs in a case: whether it is available depends on the relevant state law.

12   This four-year statute of limitations derives from UCC § 2-725. Although the Uniform Commercial Code has not been universally adopted, Plaintiffs do not dispute that it applies to all of the Plaintiffs identified by GM here.

13   "The discovery rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *In re CP4*, 393 F. Supp. 3d at 884 (quoting *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *7 (N.D. Cal. July 7, 2015)).

14   Again, the Court finds this conclusion is the law of the case based on the previous opinion.

15   Count II is dismissed as to OH, NJ, and SC (failure to allege duty to disclose), CA, MI, and NH (barred by economic loss doctrine), and LA, MS, TN, and OR (preempted by state statute).

16   The Court has only relied on the portions of the NHTSA safety investigation included in the SAC by Plaintiffs, but the Office of Defects Investigation ("ODI") Resume for the investigation confirms it was opened on February 7, 2011. *See* ODI Resume EA 11-003 (March 26, 2021), https://perma.cc/4CWN-L5VE.

17   Some other sources of knowledge cited by Plaintiffs—complaints posted on online forums, consumer complaints filed with the NHTSA, an uptick in warranty claims, and an internal service bulletin issued in 2014—are also part of the data that was available to GM, but their impact is a closer call. Defendant GM argued that the number of complaints cited is quite small in the context of GM's overall production volume. Tr. 1/29/21, 28:11-21, PageID.7084. But Plaintiffs reasonably allege that auto manufacturers "watch year-on-year failure data closely" to effectively react to problems. ECF No. 53, PageID.5979. Having already decided that Plaintiffs have sufficiently alleged knowledge through other materials, and lacking contextual information to properly gauge the additive value of these other allegations, the Court will not determine whether these sources *on their own* would be enough to establish knowledge. They were part of the available information that should have alerted GM to problems with the CP4 pump and may become more relevant with the addition of more context through discovery in determining exactly when GM developed knowledge regarding the defect.

18   GM argues that parts are custom-made for various manufacturers, and therefore the CP4 pump made for Volkswagen and Audi is not necessarily exactly the same as the one made for GM. Tr. 1/29/21, 73:2-6, PageID.7129. But at this

stage Plaintiffs plausibly allege that it was the same pump. *Id.* at 47:4-8, PageID.7103. Even if there could have been customizations made for GM, taking the SAC in the light most favorable to Plaintiffs, the fact that it has the same name (CP4) and the same manufacturer (Bosch) plausibly indicates that it is the same or a substantially similar pump.

19    Plaintiffs cite some studies and academic reports from as far back as 2002, presumably to show that knowledge about the defects in this pump and its relationship with dry diesel were commonly understood in the automotive industry. *See generally* SAC ¶¶ 150, 154-56. But the Court does not find these studies alone to support Plaintiffs' allegations knowledge of this defect—which involves *both* the nature of dry diesel and its effects on the CP4 pump—at the time they were published.

20    The only Plaintiff whose claim would be affected by a February 2011 cut-off is Bruce Dawson, who purchased one of his vehicles in October 2010. But the Court declines to dismiss his claim at this time given the uncertainty regarding the exact starting point of knowledge.

21    CA, FL, KY, MD, ME, MI, MN, MO, NH, NJ, NY, NC, PA, and SC.

22    D.I (AK), L.I (GA), T.I (LA), PP.I (SC), RR.I (TN), G.I (CO) as a class claim seeking damages, X.I (MI), KK.I (OH), II.I (NC), NN.I (PA), JJ.I (ND) as related to injunctive relief, LL.I (OK) as related to injunctive relief), and C.I (AL).

23    The Court would direct Plaintiffs to L.R. 5.3(b)(3) for future such filings—it is unclear why so many different combinations of the documents were submitted.

24    Specifically, the Court said that "I did have some questions and I asked some questions about the duty to disclose ... it would still be helpful to me for the plaintiffs to address what authority they have regarding the law on duty to disclose for these states: Michigan, Nevada, New York, Ohio, New Jersey, Maine and South Carolina ... that was not entirely clear from reviewing the briefs about the law in those states.... The other issue had to do with this question about equitable tolling and statute of limitations regarding the implied warranty of merchantability.... [T]he question is what authority is there that they—those three can satisfy the pre-suit notice so that it would toll the statute when they never brought the vehicles to the dealer? And related to that ... we talked about affirmative concealment and whether that tolls the statute ... how is that different, if it does differ in any way, from fraudulent concealment. I think I'd like you to discuss that as well." Tr. 1/29/21, 81:10-82:11, PageID.7137-38.

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                29