UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLAIR REYNOLDS, ET AL.,

        Plaintiffs,

             v.

FCA US LLC,

        Defendant.

_____/

Case No. 19-11745

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [26, 34]

In this consolidated putative class action, Plaintiffs, eight current and former Jeep Wrangler owners, bring claims under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and several state warranty and consumer fraud statutes, against Defendant, FCA US LLC, the designer and manufacturer of Jeep vehicles. The gravamen of Plaintiffs' complaints is that Defendant failed to warn prospective Jeep purchasers of a defect, and has failed to cure the defect as required by its warranties. Defendant now moves to dismiss. (ECF No. 26; ECF No. 34). For the reasons articulated below, Defendant's Motions [26, 34] will be **GRANTED in part and DENIED in part**. Plaintiffs' claims for breach of express warranty under Tennessee and Georgia law, breach of implied warranty under North

Carolina law, and violation of the Colorado Consumer Protection Act, the Minnesota Uniform Deceptive Trade Practices Act, Georgia's Uniform Deceptive Trade Practices Act, and the North Carolina Unfair and Deceptive Trade Practices Act, will be **DISMISSED without prejudice**. Plaintiffs' MMWA claims will also be **DISMISSED** as to any state for which a named Plaintiff does not assert a valid warranty claim.

## FACTUAL BACKGROUND

The defect of which Plaintiffs complain is commonly referred to as the "Death Wobble."[1] When a vehicle affected by the Death Wobble encounters a bump at highway speeds, its front-end steering components, including its steering wheel, begin to violently shake from side to side. (Reynolds Am. Compl. ("RAC") ¶ 2). Drivers who experience the Death Wobble report feeling as though their vehicles are out of control and coming apart at the seams. (*Id.* ¶¶ 155, 171). The only way to reliably stop the shaking is to bring the vehicle to a complete stop. (*Id.* ¶ 171). Plaintiffs allege that "[t]he 'Death Wobble' makes [affected vehicles] unsafe to operate by impairing the operator's ability to steer and control . . . while presenting a safety risk to the occupants and others on the road." (*Id.* ¶ 3).

---

[1] This label is somewhat of a misnomer, as the defect apparently has not yet been linked to any deaths. Defendant's prefer the less dramatic "steering shimmy." Ultimately, however, because the phrase "Death Wobble" has long been used by media, consumers, and Jeep employees to describe the phenomenon at issue, the Court will use it in its discussion of Plaintiffs' allegations.

According to Plaintiffs, the Death Wobble is caused by "a defectively designed and/or manufactured solid front axle suspension and damping system." (*Id.* ¶ 2). Specifically, Plaintiffs contend that Defendant's four-link front suspension design "increases the number of wear items (including bushings) within the suspension system," requiring Jeep vehicles to have "high quality suspension components," but that the affected "[v]ehicles contain inadequate rubber bushings that experience tearing, premature wear[,] and failure." (*Id.* ¶ 148-49).

Defendant has acknowledged the existence of "such a random issue" in model-year 2018 and 2019 Jeep Wranglers, however, it maintains that any problem is remedied by proper installation of an updated front suspension steering damper. (ECF No. 26, PageID.2601). To that end, in August 2019, Defendant initiated Customer Satisfaction Notification V41 ("CSN V41"), a campaign that offered model-year 2018 and 2019 Jeep Wrangler owners a free updated damper as well as reimbursement for prior related repairs. (ECF No. 22-3, PageID.1601). Plaintiffs contend, however, that "[a] steering damper . . . only serves to temporarily mask the [issue]," and that CSN V41 fails to prevent the Death Wobble from reoccurring. (RAC ¶ 149). Plaintiffs also argue that CSN V41 is but one episode in a saga of failed efforts to address the Death Wobble going back over a decade. (*Id.* ¶ 4). Specifically, Plaintiffs allege that Defendant "consistently provides customers

inadequate warranty repairs designed to temporarily and repeatedly mask the 'Death Wobble' until the warranty coverage expires." (*Id.*).

Defendant provides two warranties that are relevant here: a three-year/36,000-mile Basic Limited Warranty, and a five-year/60,000-mile Powertrain Limited Warranty. (*Id.* ¶ 201). "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on [the] vehicle . . . that is defective in material, workmanship[,] or factory preparation [as of the time it left the manufacturing plant]," while "[t]he Powertrain Limited Warranty covers the cost of all parts and labor needed to repair a powertrain component . . . that is defective in workmanship and materials." (ECF No. 26-4, PageID.2691, 2695). Plaintiffs contend that they presented their vehicles to an authorized dealership for repair pursuant to the above warranties, but that Defendant was unable to prevent the Death Wobble from reoccurring.

Plaintiff Clair Reynolds purchased a 2018 Jeep Wrangler from Johnson Dodge Chrysler Jeep Ram in New Jersey on July 14, 2018. (RAC ¶ 16). It began to exhibit the Death Wobble within five months. (*Id.* ¶ 17). On December 27, 2018, Reynolds brought her vehicle to the dealership, which replaced the steering damper. (*Id.* ¶¶ 18-19). Unfortunately, the Death Wobble returned within a few days. (*Id.* ¶ 19). On February 22, 2019, Reynolds brought her vehicle back to the dealership, which again replaced the steering damper. (*Id.* ¶ 20). When the Death Wobble

returned a few days later, Reynolds wrote to Defendant pursuant to New Jersey's Lemon Law to give notice of the ongoing problems and offer a final opportunity to repair the vehicle. (*Id.* ¶¶ 20-21). At the instruction of Defendant's counsel, Reynolds returned to the dealership on April 8, 2019, where her steering damper was replaced a third time, however, the effort was unsuccessful. (*Id.* ¶¶ 25, 27, 31). After receiving the CSN V41 notice from Defendant, Reynolds attempted to schedule a fourth repair, but was told by the dealership that the CSN V41 service had already been completed when her vehicle was serviced in April. (*Id.* ¶ 30). Because her vehicle continues to be affected by the Death Wobble, Reynolds no longer drives off-road, avoids highway speeds, and ensures roadway irregularities are avoided or struck at low speeds. (*Id.* ¶¶ 31-32).

Plaintiff Monica Martirano leased a 2018 Jeep Wrangler from Manahawkin Chrysler in New Jersey on March 30, 2019. (*Id.* ¶ 40). By May, she had begun to experience the Death Wobble and brought her vehicle to the dealership. (*Id.* ¶ 41). The dealership replaced her vehicle's front track bar and assembly, but the Death Wobble returned less than a week later. (*Id.*). Martirano thereafter brought her vehicle to Global Automall, which replaced the steering damper. (*Id.* ¶ 42). This repair was also ineffective, as were her efforts to contact Defendant. (*Id.* ¶ 43). On June 4, 2019, Martirano returned to Global, but the service technician was unable to replicate the Death Wobble and performed no additional repairs. (*Id.* ¶ 44). Although

Global eventually performed the CSN V41 repair on November 14, 2019, Martirano's vehicle continued to exhibit the Death Wobble. (*Id.* ¶ 46).

Plaintiff Brady Laing purchased a 2018 Jeep Wrangler from Coon Rapids Jeep in Minnesota on October 15, 2018. (*Id.* ¶ 55). After experiencing the Death Wobble in October 2019 and receiving the CSN V41 notice shortly thereafter, Laing brought his vehicle to Ryan Chrysler Dodge Jeep Ram in early December 2019 for the service. (*Id.* ¶¶ 55-57). The CSN V41 repair failed to fully remedy the Death Wobble. (*Id.* ¶ 58).

Plaintiff Thomas Pineda leased a 2018 Jeep Wrangler from Franklin Chrysler Dodge Jeep Ram in Tennessee on April 14, 2018. (*Id.* ¶ 65). He began experiencing the Death Wobble within four months and altered his driving practices in an attempt to avoid it. (*Id.* ¶¶ 66-68). Between October 2018 and April 2019, Pineda brought his vehicle to the dealership on three occasions, but each time he was told that there was nothing wrong with his vehicle. (*Id.* ¶¶ 70-73). Eventually, he brought his vehicle to Bob Frensley Chrysler Jeep Dodge on April 25, 2019, where he received a replacement steering damper. (*Id.* ¶¶ 74-75). Neither this repair, nor a subsequent repair on June 25, 2019, have prevented the Death Wobble from reoccurring. (*Id.* ¶¶ 76-77). Pineda brought his vehicle in for the CSN V41 service in November 2019, but like the prior five repairs, the service did not remedy the issue. (*Id.* ¶ 80).

Plaintiff William Powers purchased a 2018 Jeep Wrangler from AutoNation Chrysler Jeep Broadway in Colorado in February 2018. (*Id.* ¶ 87). He began to experience the Death Wobble in December 2018 and brought his vehicle to the dealership on multiple occasions in February 2019. (*Id.* ¶¶ 88-89). After receiving a replacement steering damper in March 2019, Powers returned to the dealership to report that the Death Wobble had reoccurred. (*Id.* ¶ 91). Powers was eventually told by AutoNation's general manager that parts were not available to fix the issue, at which point he submitted a complaint to Defendant requesting a buyback. (*Id.* ¶¶ 91-95). When this effort proved unsuccessful, Powers left his vehicle at the dealership and sought relief through non-binding arbitration. (*Id.* ¶ 96). On July 18, 2019, Powers's request that Defendant repurchase his vehicle was denied. (*Id.* ¶ 97). His vehicle eventually received the CSN V41 repair on December 18, 2019, as well as another service, but the Death Wobble persisted. (*Id.* ¶¶ 100-02).

Plaintiff Trina Hancock purchased a used 2018 Jeep Wrangler from Mountain Valley Motors in Georgia on October 19, 2018. (*Id.* ¶ 109). She brought her vehicle to the dealership for the CSN V41 service on October 9, 2019. (*Id.* ¶¶ 110-11). About a month later, Hancock experienced the Death Wobble and almost lost control of her vehicle on the highway. (*Id.* ¶¶ 113-14). She immediately drove to Miller's Chrysler Dodge Jeep Ram in West Virginia for repair and was told that her steering damper had been installed incorrectly. (*Id.* ¶¶ 115-16). Mountain Valley Motors denied that

it had performed the CSN V41 service incorrectly and argued that the damper was installed pursuant to Defendant's instructions, which had been subsequently revised approximately six times. (*Id.* ¶ 117). On November 14, 2019, Hancock complained to Defendant, the National Highway Traffic Safety Administration ("NHTSA"), and the Georgia Attorney General's Office. (*Id.* ¶ 119). Upon returning to Georgia, Hancock's husband brought the vehicle back to Mountain Valley Motors for the installation of a new steering damper. (*Id.* ¶ 120). On November 20, 2019, Hancock traded in her vehicle at a loss because she no longer felt safe using it. (*Id.* ¶ 121).

Plaintiff Ken Schafer purchased a 2019 Jeep Wrangler from Leith Honda in North Carolina on February 29, 2019. (*Id.* ¶ 129). He began to experience the Death Wobble shortly thereafter. (*Id.* ¶ 130). On December 3, 2019, he brought his vehicle in for the CSN V41 repair. (*Id.* ¶ 134). The "recurring" Death Wobble has made Schafer hesitant to drive his car, especially long distances. (*Id.* ¶ 135).

Plaintiff Melinda Martinez purchased a 2018 Jeep Wrangler from Ontario Jeep Chrysler Dodge Ram Fiat in California in March 2019. (Martinez Compl. ("MC") ¶ 17). After experiencing the Death Wobble on several occasions, she brought her vehicle to the dealership in late January 2020 for the CSN V41 repair. (*Id.* ¶¶ 18-19). Despite the repair, the Death Wobble persists. (*Id.* ¶ 20).

On November 17, 2018, the NHTSA's Office of Defects Investigation ("ODI") opened a Defect Petition (18-004) to investigate frame weld issues in 2018

Jeep Wranglers. (*Id.* ¶ 51). "On March 8, 2019, ODI wrote Defendant seeking [additional] information . . . , and defined the alleged defect to include: '[c]oncerns related to the steering system such as . . . [v]ibration, oscillation[,] or wobbling while driving, including after encountering . . . irregular roadway surfaces.'" (*Id.* ¶ 52). In response, Defendant identified several thousand steering-related complaints concerning 2018 and 2019 Jeep Wranglers. (*Id.* ¶ 53). In September 2019, ODI concluded that a Preliminary Evaluation was necessary based on its investigation. (RAC ¶ 178). It granted the Defect Petition (18-004) and opened a Preliminary Evaluation (19-012) "to further assess the scope, frequency, and potential safety-related consequences of alleged weld quality deficiencies and steering related concerns on [model-year 2018 and 2019 Jeep Wranglers]." (*Id.* ¶ 179).

## PROCEDURAL BACKGROUND

The two cases in this putative class action, *Reynolds, et al. v. FCA US LLC*, Case No. 2:19-cv-11745, and *Martinez v. FCA US LLC*, Case No. 2:20-cv-11164, were consolidated on October 27, 2020. (ECF No. 30). Prior to consolidation, Defendant moved to dismiss both actions under FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6). (ECF No. 26; ECF No. 34). The Court heard arguments on March 30, 2021. (ECF No. 42).

A motion to dismiss pursuant to Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction. Such motions "generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). While a facial attack merely challenges the sufficiency of the pleading, a factual attack challenges the factual basis upon which subject-matter jurisdiction has been asserted. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

> When reviewing a facial attack, a district court takes the allegations in the complaint as true . . . . If those allegations establish federal claims, jurisdiction exists. Where, on the other hand, there is a factual attack . . . , no presumptive truthfulness applies to the allegations. . . . [Instead,] the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.

*Gentek Bldg. Prods.*, 491 F.3d at 330 (citations omitted) (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). Critically, "a district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Id.* (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). Thus, where "an attack on subject-matter jurisdiction also implicates an element of the cause of action, . . . the district court should '*find that jurisdiction exists* and deal with the

objection as a direct attack on the merits of the plaintiff's [case].'" *Id.* (quoting *Garcia*, 104 F.3d at 1261).

A motion to dismiss pursuant to Rule 12(b)(6) seeks to dismiss a complaint for failure to state a claim. To survive such a motion, the plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Detailed factual allegations" are not strictly necessary, "but the complaint must contain more than conclusions and an unsubstantiated recitation of the necessary elements of a claim." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). The Court "assume[s] the veracity of well-pleaded factual allegations and determine[s] whether the plaintiff is entitled to legal relief as a matter of law." *Id.* (citing *Iqbal*, 556 U.S. at 679). And although "the court primarily considers the allegations in the complaint, . . . matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)).

In addition, where a plaintiff's claims "sound in fraud," the heightened pleading standard of Rule 9(b) will apply. *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2003)); *see* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). At the motion to dismiss stage, Rule 9(b) typically requires "the plaintiff [to] allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)) (citing *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 880-81 (6th Cir. 2017)).

> When it comes to claims of fraud by omission or fraudulent concealment, [however,] the plaintiff faces a slightly more relaxed pleading burden; the claim "can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). This is because a plaintiff alleging an omission-based fraud "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-[99] (N.D. Cal. 2007).

*Beck*, 273 F. Supp. 3d at 751. Thus, for an omission-based claim, the plaintiff "must specify 'the who, what, when, where, and how' of the alleged omission." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)). This means

specifying "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Id.*

Regardless of whether a false representation or omission is at issue, "[t]he adequacy of 9(b) pleadings in the face of a motion to dismiss under 12(b)(6) are analyzed under the *Twombly*/*Iqbal* framework" and only "general allegations about the defendant's knowledge" are required. *Smith v. GM LLC*, 988 F.3d 873, 883 (6th Cir. 2021).

## ANALYSIS

## I.    Fed. R. Civ. P. 12(b)(1)

### A. The Scope of Plaintiffs' Proposed Class Will Be Addressed At Class-Certification

Defendant first argues that Plaintiffs lack standing to sue on behalf of model-year 2020 vehicle owners because Plaintiffs have not purchased any such vehicles. Defendant is correct that Plaintiffs have not purchased any model-year 2020 vehicles, but that is hardly the silver bullet that Defendant contends. Defendant's challenge is, at bottom, not so much an attack on Plaintiffs' standing, but an attack on the scope of Plaintiffs' proposed class. *See Galoski v. Stanley Black & Decker, Inc.*, No. 1:14 CV 553, 2014 U.S. Dist. LEXIS 113945, at *8-9 (N.D. Ohio Aug. 14, 2014).

In *Fallick v. Nationwide Ins. Mut. Co.*, the Sixth Circuit considered whether a plaintiff had standing to represent members of insurance benefit plans to which he did not belong. 162 F.3d 410, 423 (6th Cir. 1998). It held that he could, reasoning that he had established individual standing vis-à-vis the defendants, and that "[o]nce his standing ha[d] been established, [the question of] whether [he] w[ould] be able to represent the putative class, including absent class members, depend[ed] solely on whether he . . . [met] the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *Id.* at 423 (citing *Cooper v. Univ. of Tex.*, 482 F. Supp. 187 (N.D. Tex. 1979); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 2.05 (3d ed. 1992)).

Here, because Plaintiffs have standing with respect to their own vehicles, *see infra* Section I.B, the Court will defer consideration of the scope of the proposed vehicle class until class-certification. *See, e.g.*, *Chapman v. GM LLC*, No. 2:19-CV-12333-TGB-DRG, 2021 U.S. Dist. LEXIS 63015, at *18 (E.D. Mich. Mar. 31, 2021); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 U.S. Dist. LEXIS 80338, at *50 (E.D. Mich. June 6, 2013); *see also, e.g.*, *Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2019 U.S. Dist. LEXIS 58290, at *7 (S.D. Ohio Apr. 4, 2019).

## B. Plaintiffs Have Demonstrated a Case or Controversy in Spite of Defendant's Repair Program

Defendant next argues that because it has agreed to install a new steering damper on all affected vehicles and offered to reimburse vehicle owners for any

costs associated with prior Death Wobble repairs, Plaintiffs' claims are moot. Defendant contends that to rebut this factual attack on jurisdiction, Plaintiff must go beyond the pleadings and adduce evidence that Defendant's repair was ineffective. Defendant is incorrect on both counts.

Defendant's mootness argument is largely based on the Sixth Circuit's approach in *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374 (6th Cir. 2015). In *Hadley*, the panel affirmed the district court's dismissal for mootness because the defendants had initiated a vehicle recall and reimbursement program and the plaintiffs' concerns that it would be ineffective as to their vehicles were only hypothetical. *Id.* at 379-80 ("There was never a dispute between the parties as to whether a safety defect exists in the vehicles or whether New Chrysler would repair that defect."); *see Hadley v. Chrysler Grp. LLC*, No. 13-13665, 2014 U.S. Dist. LEXIS 32547, at *20 (E.D. Mich. Mar. 13, 2014) ("No facts are alleged or otherwise presented . . . to suggest that installation of the repair parts will not cure the airbag module defect."). Here, however, Defendant still contests whether the Death Wobble is a safety issue and all Plaintiffs except Hancock have plausibly alleged that Defendant's repairs failed to fully cure the Death Wobble.[2] (RAC ¶¶ 31, 46-47, 58,

---

[2] Defendant argues that Schafer has not alleged that the Death Wobble survived the CSN V41 service. The pleadings state that "Schafer is now hesitant to drive his Jeep Vehicle, especially for long distances, due to concerns over the *recurring* 'Death Wobble.'" (RAC ¶ 135) (emphasis added). Although borderline, when construed in the light most favorable to Schafer, the use of the word "recurring" is sufficient to plausibly allege that the Death Wobble has persisted in spite of Defendant's repair effort.

78, 102; MC ¶ 18). Hancock, meanwhile, alleges that the Death Wobble caused her to trade in her vehicle at an economic loss. (RAC ¶ 122). Accordingly, all Plaintiffs have "a legally cognizable interest in the outcome" of the case. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 U.S. Dist. LEXIS 22020, at *30 (N.D. Cal. Feb. 22, 2016) (finding claims not moot where the "[p]laintiffs request[ed] relief . . . above and beyond the relief provided . . . under [the defendant's] recall"); *cf. Flores v. FCA US LLC*, No. 19-10417, 2020 U.S. Dist. LEXIS 222810, at *13 (E.D. Mich. Nov. 30, 2020) (relying on *Hadley* to find claims prudentially moot because FCA had *successfully* repaired all class vehicles such that "[p]laintiffs [had] no claim for actual damages" and "there [was] no substantial reason . . . to fear that [FCA would] fail to continue providing relief").

Plaintiffs need not prove the ineffectiveness of Defendant's repair effort at this juncture, because the question of whether Defendant's repair effectively cured the Death Wobble is deeply entwined with the merits of Plaintiffs' federal and state claims. *Gentek Bldg. Prods.*, 491 F.3d at 330; *see Temple v. Fleetwood Enters.*, 133 F. App'x 254, 268 (6th Cir. 2005) (listing elements of claim under MMWA, including whether "the seller failed to cure the defects within a reasonable time or a reasonable number of attempts"); *see also, e.g.*, *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP (DTBx), 2014 U.S. Dist. LEXIS 186281, at *14 (C.D. Cal.

Oct. 7, 2014) (explaining that "[w]hether and when the recall(s) were effective will bear on both liability and damages" and assessing whether jurisdiction was proper "based on the facts pleaded in the [complaint]"). Accordingly the "[C]ourt [will] '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits.'" *Gentek Bldg. Prods.*, 491 F.3d at 330 (quoting *Garcia*, 104 F.3d at 1261). And because there is a genuine dispute of material fact as to the effectiveness of the repair, judgment would be premature. *See* FED. R. CIV. P. 56; *Gentek Bldg. Prods.*, 491 F.3d at 332 (noting that where a factual attack is intertwined with the merits, the "district court ha[s] to comply with Rule 56 when ruling on defendant's motion to dismiss for lack of subject-matter jurisdiction" (citing *Simpson v. Holder*, 184 F. App'x 904 (11th Cir. 2006)).

## II.  Fed. R. Civ. P. 12(b)(6)

### A. General Warranty Arguments

#### 1.  The MMWA Claims

Plaintiffs pleaded a nationwide MMWA claim in addition to warranty claims under the laws of New Jersey, Tennessee, Colorado, Minnesota, Georgia, North Carolina, and California. (RAC ¶ 204; MC ¶ 83). However, in their Notice of Supplemental Authority [41], Plaintiffs conceded that their *nationwide* MMWA claims should be dismissed. (ECF No. 41, PageID.3609-10). Accordingly, Count 1

will be **DISMISSED** as to any state for which a named Plaintiff does not assert a valid warranty claim.

### 2. The Express Warranty Claims

Defendant makes two general arguments regarding Plaintiffs' claims for breach of express warranty. First, Defendant argues that Plaintiffs' claims are based on a design defect and that the relevant warranties only cover defects in materials and workmanship. Second, Defendant argues that Plaintiffs have failed to allege a breach in light of the CSN V41 service effort. Neither of these arguments have merit.

First, even where a warranty is limited to defects in materials or workmanship, "dismissal at the pleading stage is premature" where "'sufficient facts are alleged to assert both' a design and manufacturing defect." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 614 (E.D. Mich. 2017) (quoting *Alin v. Am. Honda Motor Co.*, No. CIV A 08-4825 KSH, 2010 U.S. Dist. LEXIS 32584, at *17 (D.N.J. Mar. 31, 2010)). Here, although many of Plaintiffs' allegations sound in the realm of design defects as opposed to manufacturing defects, Plaintiffs plead both types of defects in the alternative and offer sufficient factual support for a manufacturing defect theory. (RAC ¶¶ 2, 182; MC ¶¶ 2, 61) (pointing to a statement by Mark Chernoby, FCA's Chief Technical Compliance Officer, that the Death Wobble "was [due to] a combination of design and manufacturing process"). Accordingly, Plaintiffs have plausibly asserted claims for breach of express warranty under a manufacturing

theory. Discovery is necessary to fully determine the cause and scope of the alleged defect. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D. Mich. 2017) ("At the pleading stage, . . . where the distinction between a defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." (quoting *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 421 (D.N.J. 2016))).

Second, where a plaintiff plausibly alleges that a defendant "has not adequately repaired [their] vehicle," the fact that the defendant has attempted repair does not absolve it from liability under its warranty. *See In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 631 (E.D. Mich. 2019). Here, Defendant's warranties "cover[] the cost of all parts and labor needed *to repair*" covered parts. (ECF No. 26-3, PageID.2654, 2658) (emphasis added). Implicit therein is a promise that such repairs will actually remedy the problem at issue.

As described above, all Plaintiffs except for Hancock plausibly allege that the Death Wobble was not cured by Defendant's repair effort. (RAC ¶¶ 31, 46-47, 58, 78, 102, 135; MC ¶ 20). Accordingly, those Plaintiffs will be permitted to proceed on their claims for breach of express warranty. *See Gregorio v. Ford Motor Co.*, No. 20-11310, 2021 U.S. Dist. LEXIS 37410, at *50-51 (E.D. Mich. Mar. 1, 2021)

(explaining that "a repair-or-replace warranty fails its essential purpose when the seller is either unwilling or unable to repair the vehicle").

Hancock traded in her vehicle after multiple repair efforts, because she was too afraid to continue driving, however, she does not allege that CSN V41 failed to cure the Death Wobble in her vehicle. (RAC ¶¶ 114-22). Accordingly, at this time, although Hancock has plainly alleged an injury, she has not pleaded sufficient facts to sustain a claim for breach of express warranty. Count 15 will therefore be **DISMISSED without prejudice**.

### 3. The Implied Warranty Claims

Defendant next argues that Plaintiffs' implied warranty claims are all subject to dismissal because their vehicles are still technically operable. This argument fails.

"[T]he decisions on point in implied warranty cases concerning defective cars have recognized that merchantability implies not only that a vehicle can provide transportation, but that it can do so in a reasonably safe and controlled manner." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. at 1015; *see, e.g.*, *O'Connor v. BMW of N. Am., LLC*, Civil Action No. 18-cv-03190-CMA-STV, 2020 U.S. Dist. LEXIS 47565, at *14-15 (D. Colo. Mar. 19, 2020); *Tellinghuisen v. Chrysler Grp., Ltd. Liab. Co.*, No. A13-2194, 2014 Minn. App. Unpub. LEXIS 967, at *6 (Sept. 2, 2014); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012); *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007); *Mills v.*

*Kia Motors Am.*, No. 1:08-CV-115 (WLS), 2011 U.S. Dist. LEXIS 162215, at *13

(M.D. Ga. Sept. 30, 2011); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614,

623 (M.D.N.C. 2005).

Despite the fact that few accidents have been linked to the Death Wobble, its

accident-causing potential is apparent from the face of Plaintiffs' pleadings. As one

article cited by Plaintiffs explains:

> While its dark name by no way indicates what will happen to you after
> the problem starts, [the] [D]eath [W]obble does make the Jeep difficult
> to control, and can make you think the whole front end is about to fall
> apart. . . . The first thing to do when the [W]obble strikes is not to panic.
> That may seem obvious, but it still can be difficult to accomplish when
> your vehicle suddenly hits a bump and starts shaking wildly at higher
> speeds. . . . Often times, the harder you grip the wheel, the more you
> could damage your fingers or hands from violent steering wheel sways.
> As far as resolving the issue, the best way - and really only way - is to
> bring the Jeep to a stop through controlled braking. . . . "People like to
> power through the wobble by increasing speed, but it is very possible it
> would get worse and cause more damage or cause you to lose all control
> of the vehicle."

(ECF No. 22-2, PageID.1567-69).

Courts have found defects far more benign than the Death Wabble to

constitute a safety hazard sufficient to sustain a claim for breach of implied warranty.

*See, e.g.*, *Barakezyan v. BMW of N. Am., Ltd. Liab. Co.*, 715 F. App'x 762, 763 (9th

Cir. 2018) (vehicle brakes that make an "extremely loud, long, high-pitched noise"

are sufficient); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014)

(vehicle sunroof that opened and closed on its own is sufficient).

Additionally, because Plaintiffs allege multiple ineffective repair efforts by Defendant over many months, their implied warranty claims will not be dismissed simply because they did not seek further potentially futile repairs after receiving the CSN V41 service. Nor will their claims be dismissed because some Plaintiffs continued to use their vehicles. Although it is true that courts often dismiss implied warranty claims where a plaintiff continues to drive their vehicle, *see, e.g.*, *Beck*, 273 F. Supp. 3d at 762, that is not a bright-line rule; it is merely a useful proxy for whether a plaintiff has plausibly alleged a defect that renders their vehicle unsafe. Moreover, it fails to account for situations where a plaintiff continues to use their vehicle, but is forced to limit their use to prevent or mitigate the effects of a defect.

Several Plaintiffs here have done just that. Reynolds "no longer uses her Jeep Vehicle off-road, avoids traditional highway speeds, [and] ensures any roadway irregularity is avoided or struck at slow speed." (RAC ¶ 32). Laing drives his vehicle more slowly to avoid triggering the Death Wobble. (*Id.* ¶ 58). Powers avoided driving his car for nearly six months. (*Id.* ¶ 100). Hancock traded in her vehicle because she was too scared to continue driving it. (*Id.* ¶ 121). And Schafer avoids driving his vehicle, especially for long distances. (*Id.* ¶ 135).

Martirano, Pineda, and Martinez do not allege that they changed their driving practices because of the Death Wobble. (*Id.* ¶¶ 46, 80; MC ¶ 20). As described above, however, they do allege that the Death Wobble persists in spite of Defendants' repair

effort. And because they have plausibly alleged the continuing presence of a serious safety defect, the fact that their individual tolerance for risk may be different than that of other Plaintiffs does not warrant dismissal of their implied warranty claims.

## B. State-Specific Warranty Arguments

*1. Privity*

Defendant next argues that the implied warranty claims under California, Georgia, and North Carolina law must be dismissed for lack of privity. Because the privity requirements vary among these states, the Court discusses them one at a time.

### a. California

Typically, "a plaintiff asserting breach of [implied] warranty [under CAL. COM. CODE § 2314] must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

Martinez concedes that she is not in vertical privity with Defendant, because she purchased from a dealership, however, she argues that California courts have recognized an exception to the privity requirement for third-party beneficiaries. *See Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978). "In [*Gilbert*], a California appellate court allowed the owner of a building to bring an implied warranty claim against a subcontractor who installed a leaky roof in the absence of privity because the owner was an intended third-party beneficiary of the contract between the owner's general contractor and the subcontractor." *Zeiger v.*

*WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) (citing *Gilbert Fin. Corp.*, 82 Cal. App. 3d at 67, 69).

Defendant argues, citing *Clemons v. DaimlerChrysler Corp.*, that no such exception applies. In *Clemens*, "the Ninth Circuit considered an implied warranty claim that a vehicle purchaser asserted against [a] manufacturer from which he did not directly purchase the vehicle, [and] ultimately affirm[ed] the district court's dismissal based on the lack of vertical privity." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) (citing *Clemens*, 534 F.3d at 1021, 1023-24).

California district courts have split on how to reconcile this conflict. *Compare, e.g.*, *id.* at 1185 (finding, in spite of *Clemens*, that "the clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim"), *with In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (finding the third-party beneficiary exception barred by *Clemens*).

On balance, the Court finds the reasoning articulated in the decisions allowing the third-party beneficiary exception to be more persuasive. *See, e.g.*, *Zeiger*, 304 F. Supp. 3d at 854 (explaining that because "*Clemens* did not directly address the third-party beneficiary exception, nor . . . *Gilbert*, it need not be read to foreclose the third-party beneficiary exception to privity under California law"); *In re Toyota Motor*

*Corp.*, 754 F. Supp. at 1185 (explaining that the *Clemens* court "specifically "note[d] that the plaintiff did not seek application[] of any of the established [privity] exceptions," but instead "invited the creation of a 'similar exception' for his case, . . . which the court declined [to create]").

Accordingly, because Martinez has plausibly alleged that "she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, . . . she may assert a claim for the implied warranty's breach." *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1185; *see also, e.g.*, *Barakezyan v. BMW of N. Am., LLC*, No. CV 16-00173 SJO (GJSx), 2016 U.S. Dist. LEXIS 68839, at *28-29 (C.D. Cal. Apr. 7, 2016), *rev'd on other grounds*, *Barakezyan v. BMW of N. Am., Ltd. Liab. Co.*, 715 F. App'x 762 (9th Cir. 2018).

### b. Georgia

Privity is also required to sustain an implied warranty claim under Georgia law. *See* GA. CODE ANN. § 11-2-314. Ordinarily, there is no privity between a manufacturer and an ultimate consumer. *See, e.g.*, *Chaffin v. Atlanta Coca Cola Bottling Co.*, 127 Ga. App. 619, 619-20 (1972). Georgia courts have recognized, however, that "where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale[,] a warranty by the manufacturer running to the purchaser, privity exists." *Chrysler Corp. v. Wilson Plumbing Co.*, 132 Ga. App. 435, 437 (1974). Because

Hancock purchased her second-hand vehicle directly from a dealership as opposed to an original purchaser, the fact that her vehicle was used is irrelevant. She is not a "subsequent purchaser" as defined in *Gill v. Blue Bird Body Co.*, 147 Fed. App'x 807, 810 (11th Cir. 2005). Accordingly, Hancock is in privity with Defendant and her implied warranty claim will not be dismissed on this basis. *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1362 n.5 (N.D. Ga. 2013) (plaintiff who purchased a used Mercedes-Benz from authorized dealer was in privity with Mercedes-Benz USA).

### c. North Carolina

"In North Carolina, 'the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss.'" *Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *56 (quoting *Energy Inv'rs Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 338 (2000)). Some courts have recognized a third-party beneficiary exception to this general rule, *see, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984-85 (N.D. Cal. 2014) (citing *Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230 (1991)), however, Schafer does not argue that this exception applies, and it is unclear how it could, given that he purchased his vehicle from a Honda dealership. *Cf. Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *56-59 (allowing exception where plaintiff "was the intended beneficiary of the contract between Ford and its *authorized* dealership" (emphasis

added)). In any case, Schafer abandons this claim by not responding to Defendant's argument. *See PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015). Accordingly, Count 20 will be **DISMISSED without prejudice**.

*2. Notice*

Defendant next argues that the warranty claims under Georgia, North Carolina, Minnesota, and Tennessee law must be dismissed for lack of notice. As it did with privity, the Court addresses these states' notice requirements one by one.

a. <u>Georgia</u>

To recover damages for breach of an implied warranty under Georgia law, a plaintiff must notify the defendant "within a reasonable time after [they] discover[] or should have discovered [the] breach." *Dermatology Specialists of Augusta, Inc. v. Daikin Applied Ams., Inc.*, No. CV 116-058, 2019 U.S. Dist. LEXIS 1133, at *8 (S.D. Ga. Jan. 3, 2019) (quoting GA. CODE ANN. § 11-2-607(3)(a)). At the pleading stage, allegations that the plaintiff brought their vehicle in for repair multiple times is sufficient to satisfy this requirement. *See, e.g.*, *McDonald v. Mazda Motors of Am., Inc.*, 269 Ga. App. 62, 65-66 (2004); *see also, e.g.*, *Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *9 (N.D. Ga. June 6, 2006). Indeed, courts have even held that the act of filing suit provides adequate notice. *See, e.g.*, *Hudson v. Gaines*, 199 Ga. App. 70, 73, 403 S.E.2d 852, 854 (1991); *see also, e.g.*, *Dermatology Specialists of Augusta, Inc.*, 2019 U.S. Dist.

LEXIS 1133, at *12. Accordingly, Hancock's implied warranty claim[3] will not be dismissed for lack of notice.

### b. North Carolina

For a plaintiff to recover for breach of warranty under North Carolina law, the defendant must be provided with reasonable notice of the plaintiff's claim. *Maybank v. S. S. Kresge Co.*, 302 N.C. 129, 133 (1981) (citing N.C. GEN. STAT. ANN. § 25-2-607)). But as was the case under Georgia law, this requirement is not strict. In the automobile context, courts have held that it "is considered satisfied when a plaintiff presents [their] car to an authorized dealer for repair within the warranty period." *Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *41 (citing *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 169 (1993); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 972 (N.D. Cal. 2018)). And it can even be satisfied by the filing of a civil action. *See Francis v. GM, LLC*, No. 19-11044, 2020 U.S. Dist. LEXIS 224356, at *37 (E.D. Mich. Nov. 30, 2020) (citing *Horne v. Novartis Pharms. Corp.*, 541 F. Supp. 2d 768, 786 (W.D.N.C. 2008)). Accordingly, Schafer's warranty claims will not be dismissed for lack of notice.

### c. Minnesota

Pursuant to MINN. STAT. § 336.2-607(3)(a), a plaintiff who seeks "to bring a warranty claim . . . must first provide notice to the seller of the claimed breach."

---

[3] Hancock's express warranty claim has already been dismissed on other grounds.

*George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1070 (D. Minn. 2013) (citing *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1187-88 (D. Minn. 2001)). As is the case under Georgia and North Carolina law, "[t]he bar for sufficiency of pre-suit notice is low." *Kruger v. Lely N. Am., Inc.*, No. 20-CV-629 (NEB/DTS), 2021 U.S. Dist. LEXIS 25514, at *13 (D. Minn. Feb. 10, 2021). In general, "[n]otice suffices if it 'let[s] the seller know that the transaction is still troublesome and must be watched.'" *Id.* at *12 (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009)).

"The notice requirement 'is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.'" *Church of Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992) (quoting MINN. STAT. § 336.2-607 cmt. 4), *partially overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302, 314 n.25 (Minn. 2000). Accordingly, "[w]here the record discloses prior knowledge of similar complaints, the defendant will already have investigated the possible causes and therefore cannot argue that it is prejudiced by any delay in receiving notice of the specific complaint." *Id.* (citing *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 351 (1978)).

Here, because Laing brought his vehicle in for repair several months after Defendant had already been put on notice from other Plaintiffs, including Reynolds's letter and Powers's arbitration, Laing's warranty claims will not be dismissed for

lack of notice. Doing so would "deprive a good faith consumer of his remedy." *Church of Nativity of Our Lord*, 491 N.W.2d at 5 (quoting MINN. STAT. § 336.2-607 cmt. 4).

d. <u>Tennessee</u>

To sustain a breach of warranty claim under Tennessee law, a plaintiff is "required to plead facts giving rise to a plausible inference of notice in compliance with [TENN. CODE ANN.] § 42-2-607(3)." *Bunn v. Navistar, Inc.*, 797 Fed. App'x 247, 253 (6th Cir. 2020). This is a stricter notice requirement than that imposed by courts in Georgia, North Carolina, and Minnesota.

In *Bunn*, the Sixth Circuit explained that a truck owner seeking damages for breach of warranty did not give adequate notice to the defendant by filing suit, nor by notifying the defendant of defects that required repair. *Id.* at 254-55 (citing *Wildman Manufacturing Co. v. Davenport Hosiery Mills*, 147 Tenn. 551, 580 (1923)). Instead, the Sixth Circuit held that the "[p]laintiff was required to plead that he put [the defendant] on notice that the transaction was 'claimed to involve a breach.'" *Id.* (quoting § 42-2-607(3) cmt. 4). Under this strict construction of the notice requirement, even though Pineda sought out repair five or more times, his express warranty claim must be dismissed, because he has not alleged that he notified Defendant that its repeated failures to remedy the Death Wobble amounted to a breach. Accordingly, Count 6 will be **DISMISSED without prejudice**.

## C. General Fraud Arguments

### 1. *All Plaintiffs But Schafer Satisfy FED. R. CIV. P. 9(B)*

Plaintiffs' allegations under the New Jersey Consumer Fraud Act,[4] the Tennessee Consumer Protection Act,[5] the Colorado Consumer Protection Act,[6] the Minnesota Unlawful Trade Practices Act,[7] the Minnesota Prevention of Consumer Fraud Act,[8] the Minnesota Uniform Deceptive Trade Practices Act,[9] Georgia's Fair Business Practices Act,[10] Georgia's Uniform Deceptive Trade Practices Act,[11] the North Carolina Unfair and Deceptive Trade Practices Act,[12] California's Consumers Legal Remedies Act,[13] and California's unfair competition law,[14] all "sound in fraud," and are therefore subject to the heightened pleading requirements of FED. R. CIV. P. 9(b). *See Beck*, 273 F. Supp. 3d at 751.

Because their claims are based on omissions rather than affirmative misrepresentations, however, Plaintiffs need not allege "the same level of specificity required by a normal fraud claim." *Id.* (quoting *Baggett*, 582 F. Supp. 2d at 1267) (internal quotation marks omitted). "Fraudulent acts can be specifically described,

---

[4] N.J. STAT. ANN. § 56:8-1 *et seq.*
[5] TENN. CODE. ANN. § 47-18-101 *et seq.*
[6] COLO. REV. STAT. § 6-1-101 *et seq.*
[7] MINN. STAT. § 325D.09 *et seq.*
[8] MINN. STAT. § 325F.69 *et seq.*
[9] MINN. STAT. § 325D.43 *et seq.*
[10] GA. CODE ANN. § 10-1-390 *et seq.*
[11] GA. CODE ANN. § 10-1-370 *et seq.*
[12] N.C. GEN. STAT. § 75-1.1 *et seq.*
[13] CAL. CIV. CODE § 1750 *et seq.*
[14] CAL. BUS. & PROF. CODE § 17200 *et seq.*

but omissions are, by very definition, more amorphous." *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1055 (E.D. Mich. 2018). Accordingly, Plaintiffs need only "specify 'the who, what, when, where, and how' of the alleged omission[s]." *Republic Bank & Tr. Co.*, 683 F.3d at 256 (quoting *Carroll*, 470 F.3d at 1174).

> A complaint can meet these requirements "if it alleges that a manufacturer knew of a defect before sale, [that] the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect."

*Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *17 (quoting *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 U.S. Dist. LEXIS 1339, at *8 (E.D. Mich. Jan. 4, 2019)).

As to the first element, Defendant argues that Plaintiffs have failed to plausibly allege pre-sale knowledge giving rise to a duty to disclose. But at the hearing, Defendant conceded that "steering shimmy" has been a feature of solid front axle vehicles "since the[y] first . . . came out." (ECF No. 42, PageID.3852). This concession is independently sufficient to demonstrate pre-sale knowledge of the alleged defect. Defendant's attempt to shift the pre-sale knowledge inquiry by reframing the defect as a "random issue" that led it to initiate the CSN V41 campaign, is unavailing. (ECF No. 26, PageID.2601). At the motion to dismiss stage, it is Plaintiffs' framing of the allegations that control. Accordingly, the question is simply whether Defendant knew Plaintiffs' vehicles could be susceptible to the

Death Wobble. Based on Defendant's opening statement at the hearing, it plainly did.[15] (ECF No. 42, PageID.3851).

Plaintiffs, with one exception, have also alleged with sufficient specificity that "the various venues *the manufacturer used* to sell the product failed to disclose the defect." *Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *17 (emphasis added) (quoting *Wozniak*, 2019 U.S. Dist. LEXIS 1339, at *8). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, N.A., 848 F.2d 674, 680 (6th Cir. 1988)). Here, all Plaintiffs but Schafer have alleged with adequate specificity the "who" (Defendant), the "what" (knowing about, but failing to disclose, the possibility of violent shaking in the steering wheel when encountering common road conditions), the "when" (from the time the Class Vehicles were put on the market until the present), the "where" (the various venues through which Defendant sold its vehicles,

---

[15] To the extent that New Jersey and California law impose a heightened standard for pre-sale knowledge, the Court finds Defendant's concession sufficient, at the pleading stage, to satisfy those requirements as well. *See, e.g.*, *Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2016 U.S. Dist. LEXIS 65723, at *11 (E.D. Cal. May 17, 2016) ("A plaintiff can prevail on a CLRA or UCL claim based on a material omission if the defendant had exclusive knowledge of the defect. . . . [C]ourts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge . . . .").

including the dealerships where Plaintiffs obtained their vehicles), and the "how" (Plaintiffs would not have purchased or leased their vehicles or would have paid less for them had they been told of the Class Vehicles' susceptibility to the Death Wobble). *See Republic Bank & Tr. Co.*, 683 F.3d at 256; *Gregorio*, 2021 U.S. Dist. LEXIS 37410, at *17; *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. at 1003; *Beck*, 273 F. Supp. 3d at 751-52. Unlike the other Plaintiffs, Schafer did not purchase from one of Defendant's dealerships, and fails to articulate how Defendant bears responsibility for the alleged omission. Accordingly, Count 21, violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), will be **DISMISSED without prejudice**.

   *2. Statute-Specific Issues*

      a. <u>Class Action Prohibitions</u>

Defendant next argues that Pineda's claim under the Tennessee Consumer Protection Act ("TCPA") and Hancock's claim under the Georgia Fair Business Practices Act ("GFBPA") are subject to dismissal due to those statutes' respective bars on class actions. *See* TENN. CODE. ANN. § 47-18-109(g); GA. CODE ANN. § 10-1-399(a).

> In *Shady Grove v. Allstate*, the Supreme Court considered th[e] question of what to do when a state statute conflicts with Fed. R. Civ. P. 23, which governs class actions. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010); *see* [*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 599-600 (E.D. Mich. 2018)] (summarizing *Shady Grove* decision).

> Our district, like many others, treats Justice Stevens' opinion in *Shady Grove* as controlling, which directs us to ask: is the state law substantive (in which case it will control) or procedural (in which case Fed. R. Civ. P. 23 can supersede)?

*Chapman v. GM LLC*, No. 2:19-CV-12333-TGB-DRG, 2021 U.S. Dist. LEXIS 63015, at *63 (E.D. Mich. Mar. 31, 2021). Courts in the Eastern District have reached different conclusions as to whether class action bars in consumer protection statutes are substantive or procedural. *Compare, e.g.*, *Francis*, 2020 U.S. Dist. LEXIS 224356, at *64 (finding that "Georgia's class action prohibition is a procedural rule that does not affect the viability of class claims brought in a federal forum" and allowing class claims under the GFBPA and TCPA to proceed), *with Matanky v. GM LLC*, 370 F. Supp. 3d 772, 798-99 (E.D. Mich. 2019) ("[T]the class action prohibitions set forth in the GFBPA and TCPA define the scope of the state-created rights and are therefore substantive and not displaced by Rule 23.").

After considering this split in authority, the Court finds more persuasive the decisions holding that class action prohibitions in certain state consumer protection statutes are procedural. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d at 600 (noting that "[t]he handful of federal courts that have confronted the issue have held that . . . statutory class action prohibition[s] for consumer suits fall[] on the 'procedural' side of the line drawn by Justice Stevens and . . . do[] not run afoul of the Rules Enabling Act"). Accordingly, Plaintiffs'

claims under the GFBPA and TCPA will not be dismissed for their respective class action bars.

  b.  <u>Statute of Limitations</u>

Defendant next argues that Pineda's TCPA claim is subject to dismissal on statute of limitations grounds. "[T]he Tennessee legislature has determined that a plaintiff's TCPA claim accrues at time of the 'discovery of the unlawful act or practice,' thereby making applicable the 'discovery rule' first applied in . . . *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974)." *Thompson Power Corp. v. Millennium Tiles*, LLC, Civil Action No. 3:09-cv-564, 2010 U.S. Dist. LEXIS 124420, at *20 (M.D. Tenn. Nov. 23, 2010) (quoting TENN. CODE ANN. § 47-18-110). Pursuant to that rule, "[t]he plaintiff is deemed to have discovered the right of action when [they] become[] aware of facts sufficient to put a reasonable person on notice that [they] ha[ve] suffered an injury as a result of the defendant's wrongful conduct." *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). In other words, the plaintiff must not only be "aware[] of the injury, but also the tortious origin or wrongful nature of that injury." *Shadrick*, 963 S.W.2d at 734. Here, although Pineda alleges that he first experienced the Death Wobble in August 2018, he was told by his local dealership on numerous occasions that there was no issue with his vehicle. (RAC ¶¶ 69-70). Accordingly, dismissal is premature. The particular date on which

he became aware of the tortious nature of the alleged injury is a question of fact for the jury to decide. *See Wyatt v. ACandS, Inc.*, 910 S.W.2d 851, 854 (Tenn. 1995).

       c. <u>Statutory Notice</u>

Defendant next argues that Hancock's GFBPA claim is subject to dismissal because Plaintiff failed to send "a written demand for relief" at least thirty days before filing suit. *See* GA. CODE ANN. § 10-1-399(b). But the notice provision upon which Defendant relies is clear that a plaintiff is not required to provide pre-suit notice "if the prospective respondent does not maintain a place of business or . . . keep assets within the state [of Georgia]." *Id.* Defendant does not argue that the exception is inapplicable but only that Hancock failed to affirmatively plead that the notice requirement does not apply.

The RAC states that Defendant is a Delaware LLC with a principal place of business in Michigan. (RAC ¶ 141). Although these allegations, without more, may be insufficient at the summary judgment stage to prove that pre-suit notice was not required, *see, e.g.*, *Steed v. Fed. Nat'l Mortg. Corp.*, 301 Ga. App. 801, 810 (2009), they satisfy Hancock's burden at the pleading stage. *See, e.g.*, *Beeler v. Ditech Fin., LLC*, No. 5:16-CV-54 (CAR), 2016 U.S. Dist. LEXIS 100066, at *9 (M.D. Ga. Aug. 1, 2016). Accordingly, Hancock's GFBPA claim will not be dismissed for lack of pre-suit notice.

### d. Prohibition on Monetary Relief

Defendant next argues that Powers's claim under the Colorado Consumer Protection Act ("CCPA"), Hancock's claim under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), and Laing's claim under the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") must be dismissed, because Powers, Hancock, and Laing have failed to allege a continuing harm that could be remedied by injunctive relief. As an initial matter, the Court agrees that money damages are unavailable under the GUDTPA and MUDTPA. *See* GA. CODE ANN. § 10-1-373(a); MINN. STAT. § 325D.45(1).

Accordingly, to survive dismissal, Hancock and Laing must allege an ongoing deceptive trade practice that could be remedied by injunctive relief. *See Matanky*, 370 F. Supp. 3d at 801. Where a plaintiff does not allege that they intend to purchase from a defendant manufacturer again, they cannot maintain a claim for injunctive relief as to that defendant's advertising or marketing. *See, e.g.*, *id.* (dismissing claim under GUDTPA where each "[p]laintiff[] ha[d] already bought [the vehicle], [learned] of the alleged defect, and d[id] not allege they [were] likely to buy another"); *Indep. Glass Ass'n v. Safelite Grp.*, No. 05-238 ADM/FLN, 2005 U.S. Dist. LEXIS 28597, at *6 (D. Minn. Nov. 16, 2005) (dismissing MUDTPA claim for failure to show likelihood of future harm because the plaintiff had become aware of the alleged deception and was "even more likely to be vigilant in the future").

Here, Hancock and Laing do not allege that they are likely to be misled by Defendant moving forward. Accordingly, Counts 14 and 18 will be **DISMISSED without prejudice**.

With respect to the CCPA, Powers cites *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich. 2009), for the proposition that actual damages may be available under Colorado law and that the Court should delay ruling on the issue until further briefing is submitted. But this argument was soundly rejected in *Matanky*. There, the court explained that "*OnStar* relied on *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274 (Colo. App. 1993), which construed a previous version of § 6-1-113(2)," and that more recent cases analyzing the current version of the statute have reached the opposite conclusion. 370 F. Supp. 3d at 799; *see also Chapman*, 2021 U.S. Dist. LEXIS 63015, at *64. Thus, Powers's CCPA claim can proceed only if based upon a viable claim for injunctive relief. *See* COLO. REV. STAT. § 6-1-113(2). Like Hancock and Laing, Powers has not made this showing. Accordingly, Count 7 will also be **DISMISSED without prejudice**.[16]

    e.  <u>Ascertainable Loss</u>

Defendant next argues that Reynolds and Martirano's claim under the New Jersey Consumer Fraud Act ("NJCFA") should be dismissed due to their alleged

---

[16] Plaintiffs' failure to plausibly allege a continuing injury under the aforementioned statutes has no bearing on whether Plaintiffs' request for a recall is proper. At this early stage of litigation, the Court declines Defendant's invitation to rule on the propriety of specific forms of injunctive relief.

failure to plead an ascertainable loss. Defendant is correct that under New Jersey law, "[d]efects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate loss that the [NJCFA] expressly requires." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 238 (2005). However, as discussed in Section I.B, both Reynolds and Martirano plausibly allege that Defendant's repair effort has failed to address the Death Wobble. Accordingly, they have adequately pleaded an ascertainable loss under the NJCFA. *See also Schechner*, 237 F. Supp. 3d at 621 (explaining that, at the pleading stage, "all that is required to establish 'ascertainable loss'" under the NJCFA is an allegation that the plaintiff(s) "received something less than, and different from, what [they] reasonably expected in view of [the] defendant's presentations" (quoting *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014))).

### f.  Unlawful or Unfair Business Act or Practice

Lastly, Defendant argues that Martinez's claim under California's unfair competition law ("UCL") must be dismissed because she has failed to allege an "unlawful" or "unfair" business act or practice. *See* CAL. BUS. & PROF. CODE § 17200; *Beck*, 273 F. Supp. 3d at 748 ("[T]o state a claim under § 17200, a plaintiff must establish that the practice is either "(1) unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to

deceive members of the public." (quoting *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016))).

"By proscribing 'any unlawful' business practice, '[the UCL] "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting CAL. BUS. & PROF. CODE § 17200; *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)). Here, as discussed above, Martinez plausibly alleges violations of state warranty laws, the MMWA, and the California Consumer Legal Remedies Act. Accordingly, she may also proceed on her claim under the UCL.

CONCLUSION

**IT IS ORDERED** that Defendant's Motions to Dismiss [26, 34] are **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED without prejudice**: Pineda's claim for breach of express warranty (RAC Count 6), Powers's claim for violation of the CCPA (RAC Count 7), Laing's claim for violation of the MUDTPA (RAC Count 14), Hancock's claims for breach of express warranty and violation of the GUDTPA (RAC Counts 15 and 18), and Schafer's claims for breach of implied warranty and violation of the NCUDTPA (RAC Counts 20 and 21).

**IT IS FURTHER ORDERED** that Plaintiffs' MMWA claims (RAC Count 1 and MC Count 1), are **DISMISSED** as to any state for which a named Plaintiff does not assert a valid warranty claim.

**SO ORDERED.**

s/Arthur J. Tarnow
Arthur J. Tarnow

Dated: June 30, 2021                    Senior United States District Judge