UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAIR REYNOLDS, et al.,

                Plaintiffs,                        Case No. 19-11745

vs.                                       HON. MARK A. GOLDSMITH

FCA US, LLC,

                Defendant.

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER (Dkt. 68)**

      Plaintiffs and Defendant FCA US, LLC dispute how to proceed with depositions for seven Plaintiffs.  Plaintiffs have filed a motion for a protective order that would require those depositions to occur via remote video deposition or, alternatively, at locations near the Plaintiffs' places of residence (Dkt. 68).  For the reasons that follow, the Court grants Plaintiffs' motion.[1]

      FCA takes the position that the seven out-of-state Plaintiffs should travel to Michigan to attend in-person depositions or, alternatively, stipulate that they will not attend trial in-person.  Br. in Supp. Resp. at 1.  Plaintiffs submit that requiring them to travel to and attend in-person depositions in Michigan unnecessarily endangers their health by increasing their potential exposure to COVID.  Br. in Supp. Mot. at 1–10.  They submit that certain Plaintiffs fall into high-risk populations given their age, unvaccinated status, or medical history.  Id. at 6–7.

      "[A] district court enjoys broad discretion in managing discovery."  Chamberlain v. Menard, Inc., No. 19-11758, 2021 WL 5277154, at *2 (E.D. Mich. May 25, 2021) (denying motion

---

[1] The Court held a hearing on Plaintiffs' motion on May 20, 2022.  FCA also filed a response in opposition to Plaintiffs' motion (Dkt. 71).  Plaintiffs' motion and FCA's response each contains a brief in support within that same filing.

for reconsideration of order for remote depositions) (punctation modified) (citing <u>In re Air Crash Disaster</u>, 86 F.3d 498, 516 (6th Cir. 1996) ("Matters of docket control and conduct of discovery are committed to the sound discretion of the district court.") (punctuation modified, citations omitted)).  "When the parties have a dispute over the location of a deposition, courts have wide discretion in resolving the matter."  <u>Milisits v. FCA US LLC</u>, No. 20-CV-11578, 2022 WL 995282, at *1 (E.D. Mich. Apr. 1, 2022) (punctuation modified, citation omitted).  A court may, "for good cause," issue an order to protect a party from "undue burden or expense," including by specifying terms for and prescribing methods of discovery.  Fed. R. Civ. P. 26(c)(1).  The Federal Rules of Civil Procedure envision that a court may order "that a deposition be taken by telephone or other remote means."  Fed. R. Civ. P. 30(b)(4).

As courts in this district and across the country have observed, the substantial health risk posed by the COVID-19 pandemic is a compelling reason to allow depositions to proceed remotely.[2]  Because "it is quite clear that in-person depositions can impose an unreasonable burden

---

[2] <u>See, e.g.</u>, <u>Grundy v. FCA US LLC</u>, No. 20-CV-11231, 2022 WL 909351, at *4 (E.D. Mich. Mar. 28, 2022) (adopting special master's recommendation to grant motion for a protective order "given the scope of this pandemic, how swiftly new variants can emerge and spread, the potentially waning protection of vaccinations and boosters, and the fact that these depositions would require travel, as well as several hours in a confined space for the examination itself"); <u>PC-41 DOE v. Poly Prep Country Day Sch.</u>, No. 20-CV-03628-DG-SJB, 2022 WL 420619, at *1 (E.D.N.Y. Jan. 20, 2022) (granting motion for protective order allowing for remote deposition, noting: "Remote depositions are the 'new normal' and '[t]he more recent court decisions [permitting remote depositions during the pandemic] build on pre-pandemic case law that liberally allowed for and encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time.'") (quoting <u>Rouviere v. DePuy Orthopaedics, Inc.</u>, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020) (punctuation modified); <u>Chamberlain</u>, 2021 WL 5277154, at *2 (ordering continuation of remote depositions based on considerations including "the breadth and scope of the pandemic, the broadly varying policies of businesses and travel companies, . . . the improving but lagging vaccination rates and the space needed for the personal health choices that each individual must make based on their own unique circumstance"); <u>Rouviere</u>, 471 F. Supp. 3d at 574 (denying motion to compel in-person depositions due to the "hardship imposed" on witnesses and their counsel by the "significant health risk" created by the pandemic).

on witnesses, parties, and lawyers during this pandemic[, . . .] depositions by videoconference have emerged as the preferred method of coping with the complications and perils this pandemic has wrought." Faford v. Grand Trunk W. R.R. Co., 335 F.R.D. 503, 505–506 (E.D. Mich. 2020).

FCA suggests that "the widespread availability of effective COVID-19 vaccines and the steady decline (and severity) in cases" render the risk of contracting COVID insufficient to establish good cause for remote depositions. Br. in Supp. Resp. at 9. But COVID cases are not presently declining. While the rates of weekly COVID cases per 100,000 people in Michigan, as a whole, and Wayne County, in particular, fell below 200 in late March and early April, those rates are now increasing and stand at 293.1 and 359.79 for the state and county, respectively.[3] COVID cases have ebbed and flowed, but we are currently facing an uptick. Thus, this Court distinguishes the cases cited by FCA where courts, in their discretion, allowed in-person depositions to proceed based on an optimistic prediction that COVID was in retreat. See, e.g., Milisits, 2022 WL 995282, at *1 (allowing in-person depositions despite asserted risk of COVID in part due to "the current decrease in case counts"); Tijerina-Salazar v. Venegas, No. 19-CV-00074-DC-DF, 2021 WL 6011137, at *4 (W.D. Tex. Dec. 20, 2021) (ordering in-person deposition where "Plaintiff's COVID concerns [were] not nearly as pertinent now, nearing the 2021 Christmas holiday, as they were in July 2021").

Although some courts have required a particularized demonstration of vulnerability to COVID before ordering a remote deposition, no one is impervious to the effects of the virus. Even being fully vaccinated does not entirely protect against the contraction of COVID, which is why the CDC continues to recommend that vaccinated individuals wear masks in public indoor spaces

---

[3] Centers for Disease Control and Prevention (CDC), "COVID Data Tracker": "COVID-19 Integrated County View," https://covid.cdc.gov/covid-data-tracker (last visited May 24, 2022). These statistics correspond to the week ending May 22, 2022. Id.

in communities with high case rates.[4]  A COVID infection can result in serious conditions, including long-term health problems that last for years and possibly death.[5]  FCA's proposed in-person depositions would confine at least four people—the deponent, the court reporter, and one attorney for each party—to an enclosed space on seven separate occasions.  Especially given FCA's expectation that each deposition will last six to seven hours, these conditions undeniably present a risk to the safety of all involved.  Demanding that deponents establish how medically vulnerable they are, or how risk-averse they have been in other contexts, would turn this Court into an epidemiological prognosticator—a role it declines to perform.

Further, the Court is persuaded that remote depositions—by removing the necessity that seven Plaintiffs and counsel on all sides book accommodations for travel and lodging—would significantly reduce the costs of litigation.  This concern for costs is a sufficient basis to allow for remote depositions.[6]  Remote depositions would also allow for depositions to continue at an expeditious pace—a much-needed development for a case in which fact discovery is due to be completed by July 29, 2022, see 8/5/21 Order at 2 (Dkt. 52), and yet the parties remain mired in disagreement about how to conduct depositions.

---

[4] CDC, "The Possibility of COVID-19 after Vaccination: Breakthrough Infections," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited May 24, 2022).

[5] CDC, "Long COVID or Post-COVID Conditions," https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last visited May 24, 2022).

[6] See, e.g., Llewellyn-Jones v. Metro Prop. Grp., LLC, No. 13-11977, 2014 WL 12659589, at *1 (E.D. Mich. Dec. 17, 2014) (allowing plaintiffs to appear virtually for their depositions "to limit the costs of the litigation," noting: "Rule 30(b)(4) serves to allow parties to control costs") (punctuation modified, citation omitted); Schoenherr v. Smith, No. 12-CV-14276, 2013 WL 2239304, at *2 (E.D. Mich. May 21, 2013) (finding that plaintiff had shown "good cause" for a remote deposition under Rule 26, observing: "parties routinely conduct depositions via videoconference, and courts encourage the same because doing so minimizes travel costs . . . .") (punctuation modified, citation omitted).

Against the paramount concern of safety and the benefits of cost and time efficiencies, the Court considers the risk that remote depositions will prejudice FCA.  The Court sees no significant risk of prejudice.  FCA suggests that virtual depositions (i) render it difficult to assess the deponents' credibility, (ii) create a risk of attorneys providing off-camera cues or of deponents improperly accessing materials mid-deposition, and (iii) introduce unnecessary technological difficulties. Br. in Supp. Resp. 11–13.  But a video deposition provides for an adequate assessment of credibility by allowing counsel to view the "deponent's mannerisms and demeanor," Schoenherr, 2013 WL 2239304, at *2, and thus it may "actually [] provide a better opportunity for . . . counsel to observe the demeanor of the witness" than an in-person deposition, at which the deponent may (understandably) prefer to remain masked, Rouviere, 471 F. Supp. 3d at 576. Further, FCA's speculation that opposing counsel or deponents may willfully obstruct or desecrate deposition procedure is not "so likely . . . as to overcome the presumptive validity of remote depositions . . . ." Poly Prep, 2022 WL 420619, at *2 (punctuation modified, citations omitted). And concerns regarding technology are increasingly unsubstantiated as online platforms for remote depositions grow more sophisticated and accessible.[7]

Indeed, this Court conducted a four-day jury trial entirely over Zoom—complete with jury selection, the presentation of voluminous exhibits, and the testimony of six witnesses—and experienced only minimal technological difficulties.  See Jones v. Prudential Security, Inc., Case

---

[7] See Rouviere, 471 F. Supp. 3d at 575 (noting the availability of "training and informational videos" and the accessibility of vendors who can "communicate with [] counsel to ensure that they are comfortable with the process of taking a remote deposition"); Faford, 335 F.R.D. at 505 (ordering depositions to proceed remotely despite claims that deponents were "not technologically literate" and noting that video conferences are accessible on smart phones); Damron v. Liberty Mut. Ins. Co., No. 19-11497, 2020 WL 3071850, at *1 (E.D. Mich. June 10, 2020) (punctuation modified, citation omitted) (observing "the prevalence of Zoom, FaceTime, Skype and other virtual discovery platforms.").

No. 18-cv-11960.  It also conducted a seven-day remote bench trial, over the parties' objections, that included complex expert testimony and voluminous exhibits—a decision the Sixth Circuit affirmed in all respects.  Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n, No. 20-2257, 2022 WL 1467650, at *4 (6th Cir. May 10, 2022) (rejecting due process challenge based on technological difficulties and recognizing that "a sizeable portion of the population has adopted videoconferencing technology for everyday use during the COVID-19 pandemic, including and especially members of the legal profession").  If this Court can successfully conduct remote trials, it expects that counsel can manage remote depositions.

For the reasons stated above, the Court finds that Plaintiffs have established good cause for their request, and it grants Plaintiffs' motion for a protective order (Dkt. 68).  The parties are directed to proceed with remote depositions for the seven Plaintiffs identified in Plaintiffs' motion.

SO ORDERED.

Dated:  May 26, 2022                                          s/Mark A. Goldsmith_____
   Detroit, Michigan                                          MARK A. GOLDSMITH
                                                              United States District Judge

6