## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CLAIR REYNOLDS, *et al.*,

                Plaintiffs,

    v.

FCA US LLC,

                Defendant.

Case No. 2:19-cv-11745-AJT-EAS

Hon. Mark A. Goldsmith

Magistrate Judge Elizabeth A. Stafford

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Clair Reynolds, Monica Martirano, William Martin Powers, Trina Hancock, Melinda Martinez, and Brady Laing (collectively, "Plaintiffs" or "Class Representatives"), by and through their attorneys, respectfully move the Court for an Order:

1.    Granting final approval of the proposed class action Settlement;

2.    Certifying the Settlement Class for purposes of effectuating the Settlement; and

3.    Appointing Class Counsel.

In support thereof, Plaintiffs have contemporaneously filed the below Memorandum of Law as well as the Joint Declaration of E. Powell Miller and Simon Bahne Paris in Support of Plaintiffs' Unopposed Motion for Final Approval of Class

Action Settlement and Motion for Attorneys' Fees, Expenses and Incentive Awards ("Joint Declaration").

In accordance with L.R. 7.1(a), Plaintiffs' counsel sought the concurrence of Defendant's counsel on March 31, 2023. Defendant does not oppose the motion or the relief sought therein.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion.

Dated: April 5, 2023                    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI**
**& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Tel: 215-496-8282
Fax: 215-496-0999
sparis@smbb.com
phoward@smbb.com

*Proposed Co-Lead Counsel for Plaintiffs
and the Settlement Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CLAIR REYNOLDS, *et al.*,

        Plaintiffs,

    v.

FCA US LLC,

        Defendant.

Case No. 2:19-cv-11745-AJT-EAS

Hon. Arthur J. Tarnow

Magistrate Judge Elizabeth A. Stafford

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.     Whether the Court should approve the proposed settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)?

Suggested Answer: Yes.

2.     Whether the Court should finally certify the Action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.?

Suggested Answer: Yes.

3.     Whether the Court should appoint The Miller Law Firm, P.C., and Saltz, Mongeluzzi & Bendesky, P.C. as Co-Lead Class Counsel?

Suggested Answer: Yes.

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ............................................................. ii

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ........................................................................... iv

I.       INTRODUCTION .............................................................. 1

II.      ARGUMENT ...................................................................... 3

   A.     The Settlement Readily Meets the Standard for Final Approval .......... 3

   B.     Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement .................................................. 6

     1.    The Relief Provided to the Settlement Class is Adequate .................... 6

     2.    Plaintiffs and Class Counsel Adequately Represented the Settlement Class ........................................................................................... 8

     3.    The Settlement Was Negotiated at Arm's-Length ................................ 9

     4.    The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal .............................................................................. 11

        a)  The Significant Costs and Delay of Further Litigation ................. 11

        b)  Risks to Continued Litigation ......................................................... 12

     5.    Extent of Discovery Completed and Stage of Proceedings ................. 14

     6.    The Experience and Views of Counsel ................................................ 15

     7.    Reaction of the Settlement Class to the Settlement ............................ 16

        a)  Objections .................................................................................... 17

     8.    Public Interest Favors Approval of the Settlement ............................. 21

     9.    The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement .............................................................................. 21

        a)  The Proposed Method of Processing Class Member Claims is Effective ...................................................................................... 22

        b)  Requested Attorneys' Fees and Expenses are Fair and Reasonable 22

        c)  The Settlement Treats Settlement Class Members Equitably ........ 23

III.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .. 23

IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 . 24

V.     THE COURT SHOULD APPOINT CLASS COUNSEL ................. 25

VI.    CONCLUSION .................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) ...................................................................18
*Arledge v. Domino's Pizza, Inc.*,
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018)....................................11
*Athan v. U.S. Steel Corp.*,
  523 F. Supp. 3d 960 (E.D. Mich. 2021)...................................... *passim*
*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)...................................................................7
*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) ........................... *passim*
*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ................................................................6
*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................25
*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ..............................................................6
*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ...................................6
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir.1998) ...............................................................7
*In re Canadian Superior Sec. Litig.*,
  2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)....................................11
*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ....................................................5, 6
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .....................................................12
*In re Flint Water Cases*,
  571 F. Supp. 3d 746 (E.D. Mich. 2021)..................................... *passim*
*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) ............................................................13
*In re Nationwide Fin. Servs. Litig.*,
  2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) .............................. 5, 16
*In re Netflix Priv. Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................11

iv

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ....................................... 7, 8, 13
*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) .......................................... 5, 24
*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008).............................................5
*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ...............................................15
*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006).......................................................13
*Officers for Just. v. Civil Serv. Comm'n of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................5
*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ......................................... *passim*
*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................ 16, 22
*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..............................................................16

## Rules

Fed. R. Civ. P. 23 ....................................................................... 3, 5, 25
Fed. R. Civ. P. 23(a) ...............................................................................3
Fed. R. Civ. P. 23(b)(3) ...........................................................................3
Fed. R. Civ. P. 23(c)(5)(a) ................................................................ 20, 21
Fed. R. Civ. P. 23(e) ............................................................................3, 4
Fed. R. Civ. P. 23(e)(1)(B) ....................................................................24
Fed. R. Civ. P. 23(e)(2) .........................................................................4, 5
Fed. R. Civ. P. 23(e)(2)(A) ......................................................................9
Fed. R. Civ. P. 23(e)(2)(B) ....................................................................10
Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................11
Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................22
Fed. R. Civ. P. 23(e)(2)(C)(iii) ...............................................................22
Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................ 22, 24
Fed. R. Civ. P. 23(e)(2)(D) ....................................................................22
Fed. R. Civ. P. 23(e)(3).............................................................................4
Fed. R. Civ. P. 23(h) ..............................................................................26
L.R. 7.1(a) ...............................................................................................2

**Constitutional Provisions**

49 U.S.C. 30101 ..........................................................................................20

Plaintiffs, on behalf of themselves and the proposed Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and respectfully move the Court for final approval of the proposed Class Action Settlement entered into with Defendant FCA US LLC ("Defendant" or "FCA US"), as set forth in the Settlement Agreement.[1] The Settlement Class consists of:

> All individuals who purchased or leased in the United States a Model Year 2018-2020 Jeep Wrangler or Model Year 2020 Jeep Gladiator.

*See* Exhibit 1, Settlement Agreement, § 2.6.

## I.  INTRODUCTION

Subject to this Court's final approval, Plaintiffs, through their counsel, have negotiated the Settlement with FCA US, in exchange for the release of all claims brought in this Action. As described below and in the accompanying Joint Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain benefit to Class Vehicle owners nationwide in a case that presented numerous hurdles and risks, including those of continued litigation.

As described below and in the Joint Declaration, Plaintiffs' decision to settle the Action was well-informed by an extensive investigation, substantial discovery, and protracted arm's-length negotiations supervised by an experienced mediator appointed

---

[1] Unless otherwise defined herein, capitalized terms herein have the same meaning as defined in the Settlement Agreement attached hereto as Exhibit 1.

1

by the Court, Christopher Darrow. While Plaintiffs believe that their claims are meritorious, they also recognize that, in the absence of a settlement, they faced substantial risks to obtaining any benefit for the Settlement Class—let alone a benefit greater than that afforded by the Settlement. In reaching the Settlement, Plaintiffs and Class Counsel also carefully considered the risks (and delay) of continued litigation, class certification, and a potential jury trial. Given that there is no guarantee that Plaintiffs' allegations would be certified on behalf of a class or survive a motion for summary judgment, the adequacy of the Settlement here is underscored.

The Court preliminarily approved the Settlement, and provisionally certified the Settlement Class for purposes of effectuating the Settlement, by Order dated October 26, 2022 (the "Preliminary Approval Order"). ECF No. 88. By the same Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit objections or requests for exclusion. The deadlines to submit objections and requests for exclusion from the Settlement Class have passed.[2] Only 412 total requests for exclusion[3] and 10 timely objections have been made to the

---

[2] Pursuant to the Preliminary Approval Order, the deadline for requests for exclusion and objections was March 10, 2022. ECF No. 88 at ¶ 15.

[3] The Settlement Administrator identified 106 requests for exclusion that failed to comply with the Court's procedure as set forth in the Preliminary Approval Order, and 27 requests for exclusion that were untimely. The Parties, however, agree the intention to be excluded has been satisfied by these requests for exclusion and do not object to their failure to comply with the Preliminary Approval Order. Thus, all are included as opt-outs for purposes of the Final Approval Order. *See* Exhibit 2 (Declaration of Settlement Administrator), ¶ 10.

Settlement from over 1.1 million members of the Settlement Class. *See* Exhibit 2. This means that only 0.037% of Settlement Class Members sought exclusion and 0.0009% of Settlement Class Members objected to any term of the Settlement.

Thus, Plaintiffs submit that the Settlement readily meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. Plaintiffs also request that the Court finally certify the Settlement Class for purposes of effectuating the Settlement pursuant to Rules 23(a) and (b)(3), as nothing has changed to alter the propriety of the Court's provisional certification of the Settlement Class in its Preliminary Approval Order.[4]

## II. ARGUMENT

### A.    The Settlement Readily Meets the Standard for Final Approval

Rule 23(e) requires judicial approval for any settlement of class action claims. Where, as here, a settlement is binding on class members, the Court may approve it "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to examine whether:

(A) the class representatives and class counsel have adequately

---

[4] Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 86), and the reasons supporting certification of the Settlement Class set forth therein, are incorporated herein by reference. Neither Defendant nor any Settlement Class Member objected to the certification of the Settlement Class.

represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e), courts in this Circuit consider the following seven factors in determining whether a class action settlement should be approved:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *accord Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021); *Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 769 (E.D. Mich. 2021). In its analysis, the Court "may choose to 'consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case.'" *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008).

The determination of whether a settlement is fair, reasonable, and adequate "is committed to the sound discretion of the district court." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006). In making this determination, the Court must consider "whether the interests of the class as a whole are better served if

the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d at 831 and *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). In determining whether to approve a settlement, courts should also recognize "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632.[5]

As demonstrated herein and in the Joint Declaration, the Settlement readily satisfies each of the factors enumerated in Rule 23(e)(2) and traditionally considered by courts in the Sixth Circuit, furthers the favored public policy goal of resolving class action claims through negotiated settlements, and warrants final approval.

---

[5] *See also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("[T]he law favors the settlement of class action lawsuits."); *Cardizem*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable[.]'").

**B.    Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement**

### 1.  <u>The Relief Provided to the Settlement Class is Adequate</u>

A key factor that courts consider in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits balanced against the relief offered in the settlement. *UAW*, 497 F.3d at 631; *In re Flint*, 571 F. Supp. 3d at 778-79. To that end, the Sixth Circuit has expressly recognized that "nonpecuniary benefits" can confer "substantial benefit" to a settlement class. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (affirming final approval of settlement where it provided for, among other things, "changes in corporate governance"); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) ("When compared against the risks involved in litigating or arbitrating the Dancers' claims, the value of the Settlement Agreement is significant. The injunctive relief mandates extensive changes to Déjà Vu's business practices[.]"); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.").

Moreover, "[t]he possibility 'that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate,' because '[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001

(N.D. Ohio 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998)) (alterations in original).

As outlined in the Preliminary Approval Motion (ECF No. 88, PageID.6902-6906), the benefits included in the Settlement consist of:

(1) An extension of the existing warranty benefits, applicable to the Class Vehicles, to cover the cost of all parts and labor necessary to replace a failed front suspension steering damper for a period of eight (8) years or ninety thousand (90,000) miles (whichever occurs first) from the In-Service Date of the Class Vehicle. Settlement Agreement §§ 3.1-3.5. This Warranty Extension follows the Class Vehicles; thus, it would apply to subsequent purchasers and lessees. *Id.* § 3.2.

(2) The Settlement provides that any replacement steering damper installed pursuant to the Warranty Extension shall include any product improvements to ensure any replacement steering damper is the currently authorized version of the damper over the life of the Warranty Extension. *Id.* § 3.6.

(3) FCA US will also reimburse Class Members the full amount paid for a repair relating to the replacement of a front suspension steering damper after submission of a valid claim for reimbursement to www.fcarecallreimbursement.com ("Repair Reimbursements"). *Id.* § 3.7. Repair Reimbursements to Class Members are not capped. *Id.*

(4) FCA US shall be responsible for all administration expenses, including notice to the Class Members of the proposed Settlement. *Id.* § 3.8.

These are meaningful benefits which directly address and remediate the allegations that the Class Vehicles were designed, manufactured, marketed, sold and leased with a latent, undisclosed defect that caused the sustained shake or shimmy in the steering wheel and front suspension after contact with a bumpy road surface at highway speeds. The Settlement provides the Settlement Class Members with the

ability to get their vehicles fixed at no cost for an additional 5 years and/or 54,000 miles beyond the original terms of the New Vehicle Limited Warranty, which nearly triples the warranty coverage otherwise available for this issue. Further, for any Settlement Class Member who paid to replace the front steering damper, they can submit a claim for a full reimbursement of any such payment without any cap. The result achieved is also significant considering the risks of further litigation and the possibility of obtaining no relief whatsoever. While Plaintiffs are confident in the merits of their claims and believe they could have ultimately prevailed against Defendant, they recognize the numerous risks that would accompany further litigation. As a result, the relief provided to the Settlement Class is more than adequate since "there was a very real risk of complete non-recovery." *Polyurethane Foam*, 168 F. Supp. 3d at 1001.

### 2. <u>Plaintiffs and Class Counsel Adequately Represented the Settlement Class</u>

Final approval of the Settlement is also warranted under Rule 23(e)(2)(A) because Plaintiffs and Class Counsel "have adequately represented the class." Here, Plaintiffs have actively monitored and engaged in the prosecution and resolution of the Action on behalf of the Settlement Class. To this end, Plaintiffs regularly communicated with Class Counsel on case developments, produced documents, appeared for deposition, reviewed Court filings, and conferred with Class Counsel throughout the litigation and finalization of the Settlement.

Further, Plaintiffs—whose vehicles are alleged to suffer from the same defect as all other Class Vehicles, and whose claims arise from the same course of conduct by Defendant—have claims that are typical of other Settlement Class Members and their interests are aligned. *See UAW*, 497 F.3d at 626 (representation adequate where class members' "legal interests parallel the named representatives' interests").

Class Counsel have also adequately represented the Settlement Class. As detailed in the Joint Declaration, Class Counsel actively litigated this Action for over three years, undertaking a substantial investigation with their experts and through review of FCA US's discovery, in conjunction with extensive settlement negotiations. With the knowledge gleaned from these efforts, Class Counsel carefully considered the strengths and weaknesses of the claims asserted and the risks of further litigation when agreeing to resolve the Action. Class Counsel firmly believe the Settlement represents an excellent result in the best interests of the Settlement Class. *See UAW*, 497 F.3d at 626 (finding representation adequate because counsel "was willing to, and indeed did, commit substantial 'resources . . . to representing the class'").

### 3.  <u>The Settlement Was Negotiated at Arm's-Length</u>

Rule 23(e)(2)(B) and the first *UAW* factor—the nature of the negotiations and the risk of fraud or collusion—also support final approval because the Settlement was reached only after arm's-length negotiations facilitated by an experienced and well-respected mediator. Without evidence to the contrary, the Court may presume that

settlement negotiations were conducted in good faith and the resulting agreements were reached without collusion. *Athan*, 523 F. Supp. 3d at 966; *In re Flint Water*, 571 F. Supp. 3d at 780.

Here, the Parties' settlement negotiations were extensive and included the determined assistance of a mediator appointed by the Court. The Parties participated in settlement negotiations, including two formal full-day mediation sessions (on June 16, 2022 and August 16, 2022) with the assistance of the Court-appointed facilitator Christopher Darrow, Esq. The Parties have also engaged in numerous individual discussions with the mediator and countless arm's-length negotiations with each other. These extensive negotiations considered the over 100,000 pages of documents produced by FCA US, Plaintiffs' consultation with multiple experts concerning the steering shimmy and FCA US's proposed replacement steering dampers. As such, the risk that the Settlement was the product of collusion is effectively non-existent. *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion[.]"); *see also Daoust*, 2019 WL 2866490, at *2 ("To help resolve the case, the parties enlisted the services of a retired Federal Judge, Judge Steven Rhodes, in facilitating the Parties' mediation, thereby reinforcing that the Settlement Agreement is non-collusive."); *In re Flint Water*, 571 F. Supp. 3d at 780 ("There appears to be no

better evidence of a truly adversarial bargaining process than the presence of a neutral third party mediator.") (internal citation omitted).[6]

### 4. **The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal**

Rule 23(e)(2)(C)(i) and the second *UAW* factor further support final approval of the Settlement, as "[c]ourts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation."); *Athan*, 523 F. Supp. 3d at 967 ("The complexity, expense, and length of continued litigation militate in favor of this settlement."). If the Action continued, the Settlement Class faced protracted delays, substantial litigation costs, and significant risks.

### a) **The Significant Costs and Delay of Further Litigation**

The Parties engaged in mediation efforts prior to the completion of fact and expert discovery, but after the Parties were substantially informed about the merits of

---

[6] *See also, In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("[A] strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations."); *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("[P]resumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.").

the claims and defenses asserted in the Action. If the Settlement had not been reached, continued litigation of the Action—through fact discovery, expert discovery, class certification, *Daubert* and dispositive motion practice, pre-trial preparation, and post-trial appeals—would have undoubtedly been a long and expensive endeavor. *Daoust*, 2019 WL 2866490, at *2 "If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.").

In contrast, the Settlement has provided an immediate and substantial benefit for the Settlement Class without exposing Settlement Class Members to the risk, expense, and delay of continued litigation. *See id.* ("The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution."); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("Consideration of the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlements."). The Notice promptly advised Settlement Class Members of the Warranty Extension benefits provided by the Settlement, as well as the reimbursement for repairs relating to the replacement of a front suspension steering damper.

### b)  Risks to Continued Litigation

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a

gauge from which the benefits of the settlement must be measured." *Polyurethane Foam*, 168 F. Supp. 3d at 995 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Here, Plaintiffs faced significant risks to both certifying a class and establishing Defendant's liability if the Action continued through summary judgment and trial.

As is the case in any class action, Plaintiffs faced significant risks at the class certification, summary judgment, and trial stages—needing to prevail on all to recover relief for the class. While Plaintiffs believed they could overcome FCA US's specific defenses, they presented serious risks to Plaintiffs' ability to recover for any class after hard-fought litigation, likely over the course of multiple years, to avoid a jury verdict in Plaintiffs' favor. Typically, defendants in automotive defect class actions argue that there is no common defect, that state law bars Plaintiffs' legal claims, that the class cannot be certified for predominance, commonality, typicality, or adequacy reasons, that Plaintiffs did not suffer damages, or that Plaintiffs do not have the necessary evidence to prove their legal claims at trial. This would have resulted in tens or hundreds of thousands of hours and millions of dollars in expenses, on both sides, being dedicated to this case.

However, pursuant to the Settlement, the Settlement Class has received a substantial benefit without having to undertake these risks, and others, which weighs strongly in favor of final approval. *Athan*, 523 F. Supp. 3d at 967-68 ("There are many

unique factual and novel legal issues in this matter that make it difficult for the Parties to gauge their respective likelihood of success, resulting in a considerable risk to each side. Thus, the Court agrees that this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case."); *Daoust*, 2019 WL 2866490, at *2 ("Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses present risk. The settlement eliminates this uncertainty.").

### 5. <u>Extent of Discovery Completed and Stage of Proceedings</u>

"The relevant inquiry with respect to [the third *UAW*] factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016). In this case, Class Counsel spent significant time and resources analyzing the legal and factual issues of this case, including, inter alia: (i) conducting a wide-ranging legal and factual investigation; (ii) drafting a detailed Amended Complaint; (iii) engaging in extensive discovery after completion of the Parties' document production, including the production of over 100,000 pages of documents from FCA US; (iv) presenting each Plaintiff for deposition; (v) commencing the deposition campaign of FCA US's witnesses; (vi) engaging in significant consultation with multiple experts to provide independent analysis of the alleged Defect and FCA US's proposed remedies; and

(vii) engaging in a hard-fought mediation process.

As such, "all aspects of the dispute are well-understood by both sides, and the parties have completed enough discovery to recommend settlement." *Daoust*, 2019 WL 2866490, at *2; *Athan*, 523 F. Supp. 3d at 967 ("The Court is satisfied that the Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation.").

### 6.  <u>The Experience and Views of Counsel</u>

The fifth *UAW* factor also supports the Settlement, as courts recognize that the opinion of experienced and knowledgeable counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Class Counsel, who have extensive experience prosecuting complex class actions (*see* ECF No. 86), are intimately familiar with the facts and legal issues involved in the Action and firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Likewise, Defendant was represented by highly experienced and skilled counsel who vigorously defended their clients.

Class Counsel's opinion that the proposed Settlement is fair "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006); *Daoust*, 2019

WL 2866490, at *3; *Athan*, 523 F. Supp. 3d at 967- 68.

### 7. <u>Reaction of the Settlement Class to the Settlement</u>

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide*, 2009 WL 8747486, at *7. In accordance with the timeline provided in the Preliminary Approval Order, CPT Settlement Administration has disseminated Notice to 1,103,680 potential Settlement Class Members. *See* Exhibit 2 ¶ 3. The deadlines for Settlement Class Members to object to the Settlement, or to request exclusion from the Settlement Class, have both passed. The response to the Settlement has been overwhelmingly favorable. There have only been 412 requests for exclusion. Exhibit 2 at ¶ 10. Also, only 10 objections were received, and all are without substantive merit and the majority failed to procedurally comply with the Court's Preliminary Approval Order and the Notice. Exhibit 2 ¶ 9. This means that only 0.037% of Settlement Class Members sought exclusion and 0.0009% of Settlement Class Members objected. These percentages support final approval of the Settlement. *See Daoust*, 2019 WL 2866490, at *3 ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *In re Flint Water*, 571 F. Supp. 3d at 783-84 (granting final approval of settlement despite "a very small percentage" of class members objecting to its terms). The Settlement also has the full support of all the Plaintiffs.

### a) Objections[7]

The Preliminary Approval Order details the requirements for submitting a proper objection, including submitting it to the Court and providing specific information. ECF No. 88, PageID.7001-7004, ¶ 15. Class Counsel has received 10 objections, only three of which were filed with the Court as required by paragraph 15(a) of the Preliminary Approval Order. *See* ECF Nos. 92-94. Pursuant to Rule 23(c)(5)(a), an "objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Fed. R. Civ. P. 23(c)(5)(a).  The objector bears the burden of proof to state the factual and legal basis for their objection with enough specificity to allow the parties to respond and the court to evaluate the issues at hand. *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 520-21 (4th Cir. 2022). If the objector does so, the proponents of the settlement must show the objection does not demonstrate the proposed settlement is not fair, reasonable, or adequate. *Id*. Class Counsel addresses each objection herein, even those not properly submitted, in the interest of transparency, as follows:

(i)   ECF No. 92 – Greg and Randa Ross filed their objection (dated January 30, 2023) with the Court on February 13, 2023 ("Ross Objection"). *See* ECF No. 92.  Because the Ross's have owned five Jeep Wranglers since 2018, the only objection asserted in the Ross Objection is that the Settlement did not include Model Year 2021-2022 Jeep Wranglers. Model Year 2021-2022 Jeep Wranglers are not Class Vehicles under the Settlement, so the

---

[7] Exhibit 3 consists of the objections received by Class Counsel.

Settlement expressly contemplates no relief as to those vehicles and no release is being provided to FCA US relating to those vehicles. Thus, the objection should be overruled as its basis is without standing and reflects favorably on the Settlement as the Ross Objection seeks to expand the settlement rather than object to its terms.

(ii)  ECF No. 93 – Larry D. Killion filed his objection (dated January 30, 2023) with the Court on February 8, 2023 ("Killion Objection"). *See* ECF No. 93. The Killion Objection relates to the attorney fees to be awarded by the Court, so it is addressed in the Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently filed herewith (the "Fee and Expense Motion") contemporaneously filed with this Final Approval Motion. In short, the objection is generic to class action attorneys' fees generally and merely states the fee award should be reasonable in general.

(iii)  ECF No. 94 – Anthony A. Garcia filed his objection (dated February 9, 2023) with the Court on February 9, 2023 ("Garcia Objection"). *See* ECF No. 94. Mr. Garcia is dissatisfied with the adequacy of the Warranty Extension provided by the Settlement, and instead would prefer FCA US replace the front steering damper for all Class Vehicles in a general recall. This objection does not undermine the fairness, reasonableness, and adequacy of the proposed Settlement, which delivers significant relief to over 1 million Class Members. Class Counsel addresses the objection more specifically below:

a. Pursuant to CSN V41, FCA US replaced the front suspension steering damper on all 2018-2019 Jeep Wranglers after this Action was filed with an improved steering damper that reduced the likelihood of the wobble occurring. The relief sought by the Garcia Objection was already once provided.

b. Further, the only mechanism to diagnose a failed damper is to experience the wobble, which is the manifestation of the alleged defect. The Garcia Objection misunderstands the mechanics of the damper and the alleged defect. Plaintiffs sympathize with the safety concerns raised by the wobble and seek to promptly deliver the relief provided by the Settlement, but NHTSA has previously responded to Congress stating: "NHTSA does not believe this particular condition indicates the likelihood of a safety related defect that would warranty a formal investigation." As to Class Vehicles, neither FCA nor NHTSA have documented accidents attributable to the wobble to invoke a safety

18

related defect investigation. Thus, the evidence does not support the basis of the Garcia Objection (a complete vehicle recall), which further undermines Plaintiffs' likelihood of success at trial.

c. The Garcia Objection also presumes all Class Vehicles experience the wobble, although FCA has no record of Mr. Garcia's seeking service for, or having experienced, the wobble despite having been driven over 70,000 miles. After the CSN V41, the occurrence of the wobble was reduced from the original AD level steering damper. While this Action was pending, FCA US continued to work with its supplier to improve the performance of the steering damper to further reduce any occurrence of the wobble. Ultimately, a new damper design was implemented for the Class Vehicles, the AG level damper that included an internal vent in the rod guide to purge air that impaired the efficacy of the damper. This improvement, and any further improvements, is contemplated by product improvement provisions of the Settlement.

d. The Garcia Objection also contends that if a recall cannot be accomplished through settlement, Class Members would be better served by obtaining a judgment after trial. This obviously undermines all principles of settlement, especially when the Settlement already provides the relief of a recall where the damper fails to prevent the wobble. More importantly, the Garcia Objection fails to recognize the preemption issues for a Court to order a safety recall of Class Vehicles pursuant to the he National Traffic and Motor Safety Act (the "Safety Act"), 49 U.S.C. 30101, *et seq*., and the relief available under the claims asserted in the CAC that the Court sustained.

(iv) Ross Fernandes submitted an objection, dated January 30, 2023 ("Fernandes Objection"), but it was not filed with the Court. While the Fernandes Objection is procedurally deficient for failing to comply with Preliminary Approval Order or Rule 23(c)(5)(a), it substantively relates to the objector's individual issues relating to post traumatic stress claims, which are expressly excluded from the Released Claims. Settlement Agreement, § 2.19.

(v) Eugene T. Dawson submitted an objection, dated February 25, 2023 ("Dawson Objection"), but it was not filed with the Court. The Dawson Objection prefers the settlement relief be a recall after inspection of the damper rather than a Warranty Extension that replaces the damper if the wobble is experienced. For the reasons stated above in response to the

Garcia Objection, the Dawson Objection should likewise be overruled.

(vi) Kristen B. Kelly submitted an objection, dated February 28, 2023 ("Kelly Objection"), but it was not filed with the Court. The Kelly Objection raises an individual matter that does not form the basis of a proper objection pursuant to Fed. R. Civ. P. 23(c)(5)(a). The Kelly Objection states the desire to receive a Service Award, and states she should receive $5,000-$10,000 rather than $4,000. Obviously, the Kelly Objection is not on behalf of a Class Representative to which the Service Award applies, and no basis is provided as to why the $4,000 is in any way improper or inadequate. The Kelly Objection should be overruled.

(vii) Evelyn Adorno Montijo submitted an objection, dated February 28, 2023 ("Montijo Objection"), but it was written in Spanish and not filed with the Court. After translation, the objection raised no specific opposition to any term of the Settlement, and merely stated the presence of the wobble in her Class Vehicle.

(viii) Jim Blan submitted an objection, dated March 8, 2023 ("Blan Objection"), but it was not filed with the Court. The Blan Objection raises an individual matter that does not form the basis of a proper objection pursuant to Fed. R. Civ. P. 23(c)(5)(a). The Blan Objection seeks for the Warranty Extension to be either 8 years or 90,000 miles, but not whichever is sooner, because they do not regularly drive their Class Vehicle and it is 5 years old with only 7,000 miles. This individual consideration does not undermine the reasonableness of the Settlement.

(ix) Isaac Erickson submitted an objection, dated March 10, 2023 ("Erickson Objection"), but it was not filed with the Court. The Erickson Objection raises an individual matter that does not form the basis of a proper objection pursuant to Fed. R. Civ. P. 23(c)(5)(a). The Erickson Objection expresses a desire not to use Jeep parts in his Class Vehicle and he had to replace his tires due to unusual wear from the wobble.

(x) Ruchi Vohra submitted an objection, dated March 10, 2023 ("Vohra Objection"), but it was not filed with the Court. The Erickson Objection raises an individual matter that does not form the basis of a proper objection pursuant to Fed. R. Civ. P. 23(c)(5)(a). The Vohra Objection relates to an individual accident where the insurance did not cover the full value of their Class Vehicle. The Vohra Objection raises no specific challenge to any provision of the Settlement.

(xi)  Gary L. Reynolds submitted an undated objection ("Reynolds Objection"), but it was postmarked March 9, 2023, and was not filed with the Court. The Reynolds Objection raises an individual matter that does not form the basis of a proper objection pursuant to Fed. R. Civ. P. 23(c)(5)(a). Because this objector is 70+ years old, the Reynolds Objector feels the Warranty Extension is unfair to his age group because the objector does not drive as much as someone who is employed and trying to raise a family.

All the objections are procedurally and/or substantively deficient to justify being overruled by the Court. But as demonstrated from the above, no objection raises any credible assertion that any term of the Settlement is not fair, reasonable and adequate under the standards governing this Court's analysis and its approval of the Settlement. Therefore, all objections should be overruled.

### 8.  **Public Interest Favors Approval of the Settlement**

The final *UAW* factor strongly supports this Settlement. "The Sixth Circuit has recognized that 'the law generally favors and encourages the settlement of class actions.'" *Daoust*, 2019 WL 2866490, at *3 (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)); *In re Flint Water*, 571 F. Supp. 3d at 784. The Settlement furthers this policy and promotes judicial efficiency; it resolves at once the claims of the entire Settlement Class and avoids further litigation.

### 9.  **The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement**

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including

21

timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

### a)   The Proposed Method of Processing Class Member Claims is Effective

As explained above and in Exhibit 2, the method of processing Class Members' claims is effective. First, Class Members are automatically entitled to all benefits provided under the Settlement, except for the Repair Reimbursement. While the Warranty Extension is automatically available to each Class Vehicle and follows the Class Vehicle regardless of its owner or lessee, a Class Member who paid for a repair relating to the replacement of a front suspension steering damper may submit a claim for reimbursement directly to www.fcarecallreimbursement.com.

### b)   Requested Attorneys' Fees and Expenses are Fair and Reasonable

Class Counsel are contemporaneously filing a Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently herewith (the "Fee and Expense Motion"), which is incorporated by reference. As detailed therein, Class Counsel is applying to the Court for attorneys' fees and expenses in the amount of $3,950,000. This sum includes all fees, costs, and expenses incurred by Class Counsel in connection with this litigation. Class Counsel is also applying to the

22

Court for Service Awards of $4,000 for each Plaintiff, for a total of $24,000 in Service Awards. Like the relief sought through this Motion, FCA US does not oppose the relief sought in the Fee and Expense Motion.

### c)   The Settlement Treats Settlement Class Members Equitably

Finally, the proposed Settlement treats all Settlement Class Members equitably relative to one another. There is no preferential treatment for any member of the Settlement Class. Plaintiffs will receive the same benefit as all Settlement Class Members, other than any Court-approved Service Awards related to their representation of the Settlement Class.[8]

## III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes. *See* ECF No. 88, ¶¶ 7-9. Nothing has changed to alter the propriety of the Court's provisional certification and, for all the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 86), Plaintiffs respectfully request that the Court finally certify the Settlement Class for purposes of settlement. *See Gen. Motors*, 315 F.R.D. at 235 (approving certification of settlement class where "[n]othing ha[d] changed to alter the Court's" provisional certification in the preliminary approval order).

---

[8] Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. The Settlement (and its related exhibits) is the only agreement made by the Parties in connection with the Settlement.

## IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

Here, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements. In accordance with the Preliminary Approval Order, CPT Group disseminated, via U.S. mail, the Short Form Class Notice to the last known address of each potential member of the Settlement Class. *See* ECF No. 88, ¶¶ 10-11. The Long Form Notice, as well as the Settlement, Preliminary Approval Order, and other relevant documents, were also posted on the Settlement website.

Here, the Notice satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and was written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for

the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice thus allowed Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice set forth the maximum amount of attorneys' fees and expenses and service awards that may be sought.

In sum, the Notice provided sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Rule 23, and due process. Comparable notice programs are routinely approved by courts in this Circuit. *See, e.g., Daoust*, 2019 WL 2866490, at *4.

## V. THE COURT SHOULD APPOINT CLASS COUNSEL

For the reasons outlined in Plaintiffs' Motion for Preliminary Approval (ECF No. 86, PageID.6918-6919), Plaintiffs respectfully request that the Court finally appoint Class Counsel.

## VI. CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class.

25

Dated: April 5, 2023          Respectfully Submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI**
**& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: 215-496-8282
Fax: 215-496-0999
sparis@smbb.com
phoward@smbb.com

*Co-Lead Class Counsel for Plaintiffs and*
*the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 5, 2023, I electronically submitted the foregoing to the Court via the ECF, which automatically served all counsel of record.

<u>*/s/ E. Powell Miller*</u>
E. Powell Miller