## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CLAIR REYNOLDS, MONICA
MARTIRANO, BRADY LAING,
JARED THOMAS PINEDA,
WILLIAM MARTIN POWERS,
TRINA HANCOCK, MELINDA
MARTINEZ, and KEN SCHAFER,
on behalf of themselves and all
others similarly situated,

   Plaintiffs,

v.

FCA US LLC,

   Defendant.

_____/

Case No. 2:19-cv-11745-MAG-EAS

District Judge Mark A. Goldsmith

Magistrate Judge Elizabeth A. Stafford

---

## DEFENDANT FCA US LLC'S OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

---

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ...................................................... ii

ISSUES PRESENTED ................................................................ v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... vi

INDEX OF EXHIBITS ............................................................... vii

I.   INTRODUCTION .............................................................. 1

II.  ARGUMENT .................................................................... 1

    A.   Plaintiffs Do Not Justify Their Requested Fee Award. ........................ 1

        1.   The "Percentage of the Fund" Method Cannot Be Used Here. .................................................................... 2

        2.   The Lodestar Method Also Does Not Justify The Fees Plaintiffs Seek. ........................................................ 4

            a.   Plaintiffs' Counsel's Rates Are Multiples Higher Than The Community Market Rates And Should Be Adjusted Downward .......................................... 4

            b.   Plaintiffs Fail To Justify The Use Of A Multiplier. ............................................................ 11

        3.   The Ramey Factors Do Not Justify The Request. ................... 15

            a.   Value Of The Benefit Rendered. ..................................... 16

            b.   "Society's Stake" And "Contingent Fee." ...................... 17

            c.   The Value Of The Services On An Hourly Basis (The Lodestar Cross-Check). .......................................... 18

            d.   The Complexity Of The Litigation. ................................. 18

    B.   The Cost Award Plaintiffs Request Is Unsupported. ........................... 21

III. CONCLUSION .................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343 (6th Cir. 2000) ...........................12

*Alin v. Honda Motor Co*., 2012 WL 8751045 (D.N.J. 2012) ...................................16

*Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462
  (C.D.Cal. 2015)...................................................................................................14

*Asmar v. Benchmark Literacy Grp., Inc.*, 2007 WL 925623
  (E.D.Mich. 2007)................................................................................................20

*Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D.Ohio 2008) .........................13, 14

*Bell Atl. Corp. v. Bolger,* 2 F.3d 1304 (3d Cir. 1993) ...........................................17

*Cameron v. Comm'r of Soc. Sec.*, 2023 WL 174947 (E.D.Mich. 2023) .....7, 8, 9, 10

*Chirhoclin, Inc. v. Grand River Aseptic Mfg., Inc.*, 2021 WL 5496352
  (W.D.Mich. 2021)..................................................................................................6

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ..................................................13

*Currier v. PDL Recovery Grp., LLC*, 2017 WL 3581181 (E.D.Mich.
  2017) ......................................................................................................................6

*Date v. Sony Elecs. Inc.*, 2009 WL 435289 (E.D.Mich. 2009) ................................4

*Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J. 2010), *rev'd
  and remanded sub nom. Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) ...............................................................................16

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).......................17

*Granillo v. FCA US LLC*, 2019 WL 4052432 (D.N.J. 2019)..................................14

*H.D.V.-Greektown, LLC v. City of Detroit, Michigan*, 774 Fed.Appx.
  968 (6th Cir. 2019)...............................................................................................12

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995) .......................................................4

*In re Cardinal Health Inc. Sec. Litigations*, 528 F.Supp.2d 752 (S.D.Ohio 2007)................................................................13, 14, 16, 19

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D.Mich. 2003)..................18

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 482 (E.D.Mich. 2008) ..................................................................................17, 18

*In re DPL Inc., Sec. Litig.*, 307 F.Supp.2d 947 (S.D.Ohio 2004)............................17

*In re F & M Distrib., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090 (E.D.Mich.1999) ............................................................................................18

*In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D.Ohio 2001) ..........................................................................................................18

*In re Volkswagen & Audi Warranty Ext. Litig.*, 89 F.Supp.3d 155 (D.Mass. 2015)..............................................................................................16

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D.Mich. 2000) ..................14

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020) ............................*passim*

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ..........................................15

*Premier Dealer Servs., Inc. v. Allegiance Admin., LLC*, 2023 WL 2664411 (S.D.Ohio 2023)......................................................................21

*Presidential Facility, LLC v. Debbas*, 2012 WL 2568164 (E.D.Mich. 2012) ..........................................................................................................21

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)..............*passim*

*Ranney v. Am. Airlines*, 2016 WL 471220 (S.D.Ohio 2016)...................................15

*Smith v. Reliant Grp. Debt Mgmt. Sols.*, 2018 WL 6579189 (E.D.Mich. 2018) ............................................................................................6

*Stanley v. U.S. Steel Co.*, 2009 WL 4646647 (E.D.Mich. 2009)............................18

*Stryker Corp. v. Ridgeway*, 2015 WL 3969816 (W.D.Mich. 2015)........................6

*Wise v. Popoff*, 835 F.Supp. 977 (E.D.Mich. 1993) ................................................19

*Wyatt v. Colvin*, 2015 WL 6768950 (E.D.Mich. 2015)..............................................9

## ISSUES PRESENTED

1.    Whether the Court should approve Class Counsel's request for an award of
      attorneys' fees and litigation expenses amounting to $3,950,000.00 for their
      efforts in securing the settlement benefits provided in this matter on behalf of
      the settlement class?

FCA US's Answer:  No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020)

The State Bar of Michigan's Economics of Law Practice in Michigan Report (2020), *available* at https://www.michbar.org/file/pmrc/articles/0000155.pdf

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|:---:|:---|
| A | The State Bar of Michigan's Economics of Law Practice in Michigan Report (2020), *also available* at https://www.michbar.org/file/pmrc/articles/0000155.pdf |
| B | Plaintiffs' Counsel's Total Billing Amounts As Calculated Using The Applicable Median Rates |

# I.    INTRODUCTION

Plaintiffs ask this Court to award them nearly $4 million dollars in attorneys' fees and costs.[1]  Yet, they ignore their obligation to substantiate this request with actual **_evidence_**, offering nothing more than bald assertions about the settlement's value, the reasonableness of their rates, the appropriateness of any multiplier, or the amount of costs (offering only summary charts).  For these reasons, detailed below, the Court should award Plaintiffs' counsel no more than a base lodestar calculated using reasonable rates in the community market, *i.e.*, $1,284,133.65.

# II.    ARGUMENT

## A.    <u>Plaintiffs Do Not Justify Their Requested Fee Award.</u>

The Court may award attorneys' fees using **_either_** a percentage of the fund method or a lodestar method.  *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 624-28 (6th Cir. 2020).[2]  But, what method Plaintiffs request and advocate for is entirely unclear.  *Compare* Pl. Mtn, p. 7 (PageID.7265) (arguing an "award of 20% of the current benefits achieved is more than reasonable"), *with id.* at p. 3 (fee request "amounts to just a 1.34 multiplier over their base lodestar [of $2,800,325.25]").

---

[1] *See, generally*, Plaintiffs' Motion For Attorneys' Fees, Expenses, And Incentive Awards, ECF #96 ("Pl. Mtn").

[2] The Court may also use a "lodestar cross-check" **_within_** a percentage of the fund analysis.  *Id.*

Instead of following any recognized legal framework, Plaintiffs argue their fee request in terms of simple "reasonableness," essentially suggesting that alone is enough to address and satisfy the six factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).[3]  *See*, *e.g.*, Pl. Mtn., p. 5.   But "reasonableness" is, of course, the final check on an award – ***not*** a replacement for the six-factor analysis required.  *See Vita-Mix*, 970 F.3d at 624.  And, in addition to considering the *Ramey* factors, this Court must also find the amount Plaintiffs request is appropriate under the "percentage of the fund" or "lodestar" method of analysis.  *Id.*  For the reasons that follow, Plaintiffs have not justified their requested award under either method, nor is their request "reasonable" under *Ramey* (or any other measure).

### 1.     The "Percentage of the Fund" Method Cannot Be Used Here.

In purporting to ascribe a "value" to the settlement, Plaintiffs point to (1) the warranty extension for the class vehicles[4] and (2) the reimbursement of qualifying

---

[3]Under *Ramey*, the considerations for determining whether a fee award is appropriate include: (1) the value of the benefit that was obtained, (2) society's stake in rewarding attorneys who produce such benefits as an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, *i.e.*, the lodestar cross-check, (5) the litigation's complexity, and (6) the professional skill and standing of counsel involved on both sides.  508 F.2d at 1196.

[4]The warranty extension provides for the repair of a failed steering damper up to the earlier of eight years/90,000 miles, up from three years/36,000 miles.  *See* ECF #95, pp. 7-8 (PageID.7082-83).

repairs under a pre-existing reimbursement program. *See* Pl. Mtn., pp. 6-7 (PageID.7264-65); *see also* ECF #95-2, pp. 12-13 (PageID.7116-17). But Plaintiffs offer no ***evidence*** whatsoever about the ***value of either one***. *See*, *generally*, Pl. Mtn.

For instance, Plaintiffs argue the present value of the settlement benefit could exceed $200 million – a supposition based entirely on the notion that some 200,000 front suspension steering dampers have been replaced at a cost of "over a thousand dollars" each "***since this Action was filed***" (*i.e.*, these are past repairs under current warranties and not the settlement's extended warranty which will be implemented after final approval of the settlement). *Id.* at p 6 (PageID.7264). But Plaintiffs offer no support whatsoever for the notion that the expense of performing a qualifying repair under the settlement's extended warranty is "over a thousand dollars," nor do they attempt to show how many qualifying repairs might occur in the future under the settlement's extended warranty. In sum, Plaintiffs proffer no evidence as to the value of the extended warranty. Similarly, Plaintiffs offer nothing to show the value of the reimbursements the settlement contemplates. In this respect, the question is not how many of the class members are ***entitled*** to reimbursement, but how many class members ***will*** actually receive one. *See*, *e.g.*, *Vita-Mix*, 970 F.3d at 625. And, again, Plaintiffs put forth no ***evidence***, just bald assertions, to address this. *See*, *generally*, Pl. Mtn.

- 3 -

Without a well-grounded and evidence-based assessment of the value of key components of the settlement, this Court is without any reliable basis for evaluating the "value" of the settlement or how it compares to Plaintiffs' request for $3,950,000 in fees. This, by itself, warrants setting aside "percentage of the fund" as a potentially appropriate method to use in this case. *See, e.g.*, *Date v. Sony Elecs. Inc.*, 2009 WL 435289, *12 (E.D.Mich. 2009) (explaining it is "impossible to assess whether the attorney fees and expenses award [] is appropriate, in light of the fact that the actual value of the settlement is unknown").

### 2. *The Lodestar Method Also Does Not Justify The Fees Plaintiffs Seek.*

Plaintiffs are correct to note that the "[l]odestar is determined by multiplying 'the number of hours reasonably expended on the case by a ***reasonable*** hourly rate.'" Pl. Mtn, p. 8 (PageID.7266) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (emphasis added)). The problem is they have proffered no evidence suggesting their hourly rates are anywhere close to reasonable.

### a. Plaintiffs' Counsel's Rates Are Multiples Higher Than The Community Market Rates And Should Be Adjusted Downward.

The hourly rates Plaintiffs propose are patently unreasonable under the Sixth Circuit's "community market" rule. *See*, *e.g.*, *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). "Under that rule, the billing rate should not exceed what is necessary to encourage competent lawyers ***within the relevant communit***y to undertake legal representation." *Vita-Mix*, 970 F.3d at 630 (emphasis added). That is because

- 4 -

"lawyers are entitled only to reasonable fees[], and … **such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region**." *Id.* (emphasis added). "The burden is on the lawyer seeking fees to submit evidence – **in addition to the attorney's own affidavits** – showing that the requested rate is reasonable." *Id.* (emphasis added, citation omitted).

To justify their attorneys' respective rates, each of Plaintiffs' five firms – (1) The Miller Law Firm; (2) Saltz Mongeluzzi & Bendesky, PC ("SMB"); (3) Gustafson Gluek PLLC; (4) Moon Law APC; and (5) Sauder Schelkopf – submit the declaration of a representative partner. *See* ECF #97-2 (E. Powell Miller); #97-3 (Simon B. Paris); #97-4 (Daniel E. Gustafson); #97-5 (Christopher D. Moon); #97-6 (Matthew D. Schelkopf). As a preliminary matter, the Miller Law Firm, SMB, and Sauder Schelkopf submit **only** these declarations, which immediately runs afoul of the *Vita-Mix* requirement that they submit evidence "**in addition to** the attorney's own affidavit[]," dooming their fee application.[5] 970 F.3d at 630 (emphasis added).

---

[5]Contrary to Plaintiffs' assertion that "[t]he firm resumes and attorney profiles of Co-Lead Counsel are found at ECF #86, PageID.6919" (*see* ECF #97, p. 3 (PageID.7281)), the referenced materials do not appear in the record. Even if they did (as those of **Minneapolis-based** Gustafson Gluek and **San Diego-based** Moon APC do (*see* ECF #97-3, 97-4), nothing in their marketing publications warrants an exception to the **community market** rate. Plaintiffs do not even attempt to argue any exception applies. *See, generally*, Pl. Mtn.

And, as it relates to Gustafson Gluek and Moon APC, they needed to, but did not, "make a specific showing of necessity and reasonableness in order to recover fees **as 'out-of-town specialist[s].'**" *Vita-Mix*, 970 F.3d at 630 (emphasis added)

And it is the State Bar of Michigan's most recent Economics of Law Practice Report that is "[t]he accepted benchmark for determining reasonable hourly rates in this district." *Smith v. Reliant Grp. Debt Mgmt. Sols.*, 2018 WL 6579189, *2 (E.D.Mich. 2018) (subsequent proceedings omitted). Accordingly, "Michigan federal courts routinely use this publication as evidence of reasonableness." *Currier v. PDL Recovery Grp., LLC*, 2017 WL 3581181, *3 (E.D.Mich. 2017); *see also Chirhoclin, Inc. v. Grand River Aseptic Mfg., Inc.*, 2021 WL 5496352, *2 (W.D.Mich. 2021) (examining Michigan Economics of Law Practice Report "to determine reasonableness of rates"). Based on this established benchmark, the rates Plaintiffs propose for a lodestar calculation are wildly out of line with the community market rates in Michigan.

<u>The Miller Law Firm</u>: Partner E. Powell Miller claims an hourly rate of $975. ECF #97-2, p. 3 (PageID.7294). This is nearly ***triple*** the median billing rate for an equity partner ($330), and ***50% higher*** than the rate of an equity partner who bills at the 95th percentile ($620). *See* Ex. A, p. 4; *see also id.* at p. 6 (the same is true in the consumer law practice area), *id.* at p. 7 (same, in Wayne County). And, while partners Sharon Almonrode's ($925), Emily Hughes's ($750), and Dennis

---

(citing *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016)); *see also Stryker Corp. v. Ridgeway*, 2015 WL 3969816, *4 (W.D.Mich. 2015) (listing factors to assess reasonableness of hourly rate in determining whether an "exception to the community market rule" is warranted).

Lienhardt's ($600) rates are marginally lower, all but Lienhardt's still exceed the 95th percentile billing rate, and even Lienhardt's is still nearly double the median rate. *Compare* ECF #97-2, p. 3 (PageID.7294), *with* Ex. A, p. 4.

The firm's ***associates'*** billing rates are shocking as well. Jack Tubbs's ($500), William Kalas's ($465), Dana Fraser's ($425), Cody Saules's ($385), Dena Asmar's ($385), Julie Wryembelski's ($385), Kristen Guralczyk's ($385), Lawrence McNair's ($385), Matt Hnri's ($385), and Monica Smith's ($385) respective rates all greatly exceed the median associate billing rate ($250) and, often, even the 95th percentile billing rate ($388). *Compare* ECF #97-2, p. 4 (PageID.7295), *with* Ex. A, p. 4.

And the proposed $250 rate for paralegals Amy Long, Danelle Vanderbeke, and Licia Bates is just as out of line at more than ***four times*** the "[$]80 per hour [that is] considered a reasonable rate for paralegal work by other courts in this district." *Compare* ECF #97-2, p. 4 (PageID.7295), *with Cameron v. Comm'r of Soc. Sec.*, 2023 WL 174947, *1 & n.1 (E.D.Mich. 2023).

*SMB*:  Partners Simon B. Paris's ($775) and Patrick Howard's ($725) rates are likewise more than ***double*** the Report's median billing rate for equity partners ($330), and roughly ***20% to 30% higher*** than the 95th percentile billing rate ($620). *Compare* ECF #97-3, p. 3 (PageID.7300), *with* Ex. A, p. 4.

Associate Charles Kocher's rate ($575) is also more than ***double*** the median associate rate ($250) and more than ***50% higher*** than the 95th percentile billing rate ($388).  *Compare* ECF #97-3, p. 3 (PageID.7300), *with* Ex. A, p. 4.  Counsel Daniel Cedron's and Nancy Newman's hourly rate ($500) is almost ***50% greater*** than the median counsel billing rate ($350), and ***20% greater*** than the 95th percentile rate ($600).  *Compare* ECF #97-3, p. 3, *with* Ex. A, p. 4.

Paralegals Nancy Newman ($340) and Briege Hartman's ($235) rates are approximately ***three and four times higher*** than this district's reasonable paralegal rate ($80).  *Compare* ECF #97-3, pp. 3-4 (PageID.7300-01), *with Cameron*, 2023 WL 174947 at *1 & n.1.

*Gustafson Gluek*:  Partners Daniel E. Gustafson's ($1,200), Karla M. Gluek's ($1,050), Jason S. Kilene's ($950), Daniel C. Hedlund's ($1,025), David A. Goodwin's ($850), Daniel J. Nordin's ($775), and Raina C. Borrelli's ($700) rates are all more than ***double*** the Report's median billing rate for equity partners ($330), and in Gustafson's case, almost ***four times as high*** – in fact, all partners' rates greatly exceed even the 95th percentile billing rate ($620).  *Compare* ECF #97-4, pp. 3-4 (PageID.7306-07), *with* Ex. A, p. 4.

Associates Kaitlyn L. Dennis's ($650), Mary M. Nikolai's ($550), Frances Mahoney-Mosedale's ($425), and Shashi K Gowda's ($450) rates all exceed the median associate billing rate ($250), sometimes more than ***doubling*** it, and all

associate rates are considerably higher than even the 95th percentile rate ($388). *Compare* ECF #97-5, p. 4 (PageID.7307), *with* Ex. A, p. 4.

Paralegals Sarah A. Moen's ($350), Diana Jakubauskiene's ($325), Melanie L. Morgan's ($300), and Chelsea M. Nobel's ($250) rates are all ***three, four, or more times*** the reasonable $80 paralegal rate in this district. *Compare* ECF #97-4, p. 4 (PageID.7307) *with Cameron*, 2023 WL 174947 at *1 & n.1. And, while there is no established reasonable rate for an "Admin," surely it is not higher than a paralegal, yet Tracey D. Grill's rate ($200) is ***two and a half times*** that of the median paralegal's rate. *Compare* ECF #97-4, p. 4 (PageID.7307), *with Cameron*, 2023 WL 174947 at *1 & n.1.

<u>*Moon Law APC*</u>: Partners Christopher Moon's ($850) and Kevin Moon's ($850) billing rates are more than ***double*** the median equity partner billing rate ($330) and more than ***33% higher*** than the 95th percentile rate ($620). *Compare* ECF #97-5, p. 3 (PageID.7390), *with* Ex. A, p. 4.

Paralegal Sonja Gray's rate ($200) is ***two-and-a-half times*** the reasonable paralegal rate in this district ($80). *Compare* ECF #97-5, p. 3 (PageID.7390), *with Cameron*, 2023 WL 174947, *1 & n.1. And law clerk Tanner Kenin's rate ($200) is nearly double the reasonable rate for a law clerk in this district ($100 to $125). *Compare* ECF #97-5, p. 3 (PageID.7390), *with Wyatt v. Colvin*, 2015 WL 6768950, *5 (E.D.Mich. 2015).

*Sauder Schelkopf*: Partners Joseph G. Sauder's ($875), Matthew D. Schelkopf's ($825), and Joseph B. Kenney's ($625) rates all more than ***double*** the median equity partner billing rate ($330). *Compare* ECF #97-6, p. 3 (PageID.7397), *with* Ex. A, p. 4.

Of Counsel Lori Kier's rate ($600) is ***almost double*** the median Of Counsel billing rate ($350), and Associates Alice Elmer's ($350) and Megan Mason's ($300) rates are ***20% to 40% higher*** than the median associate billing rate ($250). *Compare* ECF #97-6, p. 3 (PageID.7397), *with* Ex. A, p. 4.[6]

Paralegal Paula Lyon's rate ($150) is nearly double the reasonable paralegal rate in this district ($80). *Compare* ECF #97-6, p. 3 (PageID.7397), *with Cameron*, 2023 WL 174947 at *1 & n.1.

It is also worth noting that "class counsel's own affidavits undercut the reasonableness of their requested rates … because attorneys with similar levels of experience often reported vastly differently billing rates, and sometimes attorneys with ***fewer*** years of experience reported significantly ***higher*** billing rates than those with more experience." *See Vita-Mix*, 970 F.3d at 630-31 (emphasis in original); *see also* ECF #97-2, p. 3 (PageID.7294), ECF #97-4, pp. 3, 46, 57 (PageID.7306,

---

[6]Assuming "Attorney" Kevin LaCorte is an associate, his $350 rate also well exceeds the median associate billing rate ($250). *Compare* ECF #97-6, p. 3 (PageID.7397), *with* Ex. A, p. 4.

7356, 7367).   Plaintiffs do not "explain[] these discrepancies—*i.e.*, by unique expertise or the like[.]" *Vita-Mix*, 970 F.3d at 631; *see also, generally*, Pl. Mtn.

Obviously, the rates at which Plaintiffs' Counsel propose they be compensated greatly exceed those of comparable, qualified attorneys in the community.   Yet, Plaintiffs nowhere "explain why the lower billing rates wouldn't have been 'sufficient to encourage competent representation' in this case." *Vita-Mix*, 970 F.3d at 631.   For this reason, the proposed rates should be assessed at the applicable median rates detailed above and as set forth in the Report.   *See* Ex. A.   To assist the Court in this effort, FCA US has prepared a table applying the Report's applicable median rates to the hours billed by Plaintiffs' respective counsel.   *See* Ex. B; *see also* ECF ##97-2, 97-3, 97-4, 97-5, 97-6.   This yields a lodestar of ***$1,284,133.65***.[7]

> b.   Plaintiffs Fail To Justify The Use Of A Multiplier.

Plaintiffs request a 1.34 multiplier, which would increase their windfall ***by nearly a million dollars*** ($947,791.91) over the lodestar.   *See* Pl. Mtn, pp. 3, 9-10 (PageID.7261, 7267-68).   But, this ignores the rule that district courts may use a

---

[7]To show how FCA US reached this figure, it includes an explanatory exhibit: "Plaintiffs' Class Counsel's Total Billing Amounts As Calculated Using The Applicable Median Rates From The State Bar of Michigan's Economics of Law Practice in Michigan Report."   *See* Ex. B.   This exhibit uses all of the information from Plaintiffs' Joint Declaration (*see* ECF ##97-2, 97-3, 97-4, 97-5, 97-6), but substitutes the applicable median billing rates the Report provides (*see* Ex. A).

multiplier "*only in* rare and exceptional circumstances and *only when* the lawyer seeking fees has provided specific *evidence* that the lodestar fee would not have been adequate to attract competent counsel." *Vita-Mix*, 970 F.3d at 632 (emphasis added, citations and quotation marks omitted).

Put another way, lodestar modifications are "proper only in certain rare and exceptional cases, supported *by both specific evidence on the record and detailed findings by the lower courts*." *Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (emphasis added, reversing for lack of specific evidence); *see also H.D.V.-Greektown, LLC v. City of Detroit, Michigan*, 774 Fed.Appx. 968, 973 (6th Cir. 2019) ("Appellants contend that failing to award a fee enhancement would result in no capable attorney undertaking the representation of a meritorious civil rights claim involving a financially distressed municipality *but they fail to substantiate this claim with specific evidence*." (emphasis added)).

Here, Plaintiffs present absolutely no "specific evidence" that would justify a multiplier. *See, generally,* Pl. Mtn.  Instead, they offer only the conclusory assertion that "[f]ee awards in class actions with substantial contingency risks such as here often range from one to four times the lodestar or even higher." *See* Pl. Mtn, pp. 9-

10 (PageID.7267-68).[8]  The lack of support for this figure warrants denying the request for a multiplier.

In any event, Plaintiffs' comparator cases differ from this case in two critical respects.  *First*, the courts there awarded multipliers because the attorneys billed at a steep discount.  In *Bailey v. AK Steel Corp.*, the court awarded a 3.04 multiplier only because "class counsel charged hourly fees throughout [the] case at the deeply discounted rate ***of $180 per hour for all attorney time*."  2008 WL 553764, **2, 3 (S.D.Ohio 2008) (emphasis added).[9]  In comparison, some of the attorneys here are billing at ***nearly seven times that rate***, and all are billing multiples over the "community market" rate for a comparable lawyer, which is to say: ***no discount at all***.  *See* § II.A.2.a, *supra*.  Thus, Plaintiffs' Counsel already propose inappropriate multipliers via their exorbitant proposed rates, to say nothing of the "substantial duplication" of another multiplier on top of that.

---

[8]Clearly, "enhancements should not be awarded based on factors already 'subsumed in the lodestar.'" *Vita-Mix*, 970 F.3d at 632 (citations omitted).  Here, the only factor Plaintiffs point to is a conclusory claim of "substantial contingency risk[]."  *See* Pl. Mtn, pp. 9-10.  But, enhancing "for contingency would likely ***duplicate in substantial part*** factors already subsumed in the lodestar" and is thus inappropriate grounds for awarding a multiplier.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (emphasis added).

[9]*See also In re Cardinal Health Inc. Sec. Litigations*, 528 F.Supp.2d 752, 767 (S.D.Ohio 2007) ("counsel … bill[ed] hours at a reasonable average hourly billing rate of approximately ***$353.63*"** (emphasis added)).

*Second*, the cases Plaintiffs rely on involved multipliers because they were **common fund cases**.  *See, e.g., Bailey*, 2008 WL 553764 at *2 (noting courts use multipliers "in common fund cases"); *see also Cardinal Health*, 528 F.Supp.2d at 762 (common fund case); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D.Mich. 2000) (multiplier for "award of attorney's fees in [this] common-fund case").

This, however, is **not** a common-fund case.  *See* Pl. Mtn, p. 9 (PageID.7267) ("lodestar cross-check can be appropriate here because the benefits … are not derived from a common fund").  But even setting that aside, courts explicitly declined to award multipliers in even the **non-common** fund cases Plaintiffs cite. *See, e.g., Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, **7-8 (C.D.Cal. 2015) (*see* Pl. Mtn, p. 9 (PageID.7267)) (court "[did] **not** believe … factors or the circumstances of the litigation warrant[ed] a departure from the lodestar" where settlement involved (1) full reimbursement for costs upon application; (2) "free service adjustment" for those who had not yet received it; and (3) warranty extension (emphasis added)).[10]

---

[10]While Plaintiffs' other case, *Granillo v. FCA US LLC*, 2019 WL 4052432 (D.N.J. 2019), awarded a 1.11 multiplier, it involved "***a cash payment*** from FCA US" to plaintiffs upon application.  *Id.* at *1 (emphasis added).

Thus, because "there is a strong presumption that the lodestar is sufficient," and because Plaintiffs have proffered no evidence justifying a departure, this Court should also decline to use any multiplier. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).

### 3.     *The Ramey Factors Do Not Justify The Request.*[11]

As discussed above, Plaintiffs have not presented ***evidence*** justifying their requested fees under the percentage of fund method, and they fail to establish their proposed rates are reasonable under the "community market" standard – or justify a multiplier – under the lodestar method. *See* §§ II.A.1-2, *supra*. This alone warrants rejecting their fees application and awarding them a lodestar amount based on the median rates set forth in the Report: $1,284,133.65.

Furthermore, and in any event, even if Plaintiffs had satisfied these burdens, they would still have an ***additional*** obligation to show the reasonableness of their $3,950,000.00 fee request under the *Ramey* factors. But these factors too weigh heavily ***against*** it.

---

[11]FCA US makes no argument as to "the professional skill and standing of counsel involved on both sides." In any event, "[t]here is no formula for weighing these factors" and "different factors could predominate depending on the case." *Ranney v. Am. Airlines*, 2016 WL 471220, *2 (S.D.Ohio 2016).

a.   <u>Value Of The Benefit Rendered.</u>

In all of the cases Plaintiffs rely on to justify their exorbitant fees, the plaintiffs proffered ***evidence*** regarding the value of their proposed settlement.  *See Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 563, 594 (D.N.J. 2010), *rev'd and remanded sub nom. Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ("In support of their valuation figure, ***the plaintiffs have submitted … expert reports***," which the court considered and ultimately concluded "that [plaintiff's expert]'s settlement valuation and the value that class counsel advocated are both inflated" (emphasis added)); *In re Volkswagen & Audi Warranty Ext. Litig.*, 89 F.Supp.3d 155, 168 (D.Mass. 2015) (plaintiffs offered ***declaration of expert*** with "CPA, MBA, ABV, ASA, CFF" credentials supporting "proposed method of valuation" (emphasis added)); *Alin v. Honda Motor Co.*, 2012 WL 8751045, *19 (D.N.J. 2012) (awarding fees in non-fund case where plaintiffs' counsel offered detailed evidence valuing settlement in declaration); *see also* ECF #100-9, ¶¶ 23-32.

Here, in sharp contrast, Plaintiffs do not even go that far, offering no more than their *ipse dixit* and leaving this Court thoroughly unable to (1) consider the value of the benefit the settlement renders, and thus (2) satisfy its burden under *Ramey*.[12]  Therefore, this factor counsels against Plaintiffs' requested fee.

---

[12]Plaintiffs also cite various ***securities*** class actions involving a ***common fund***, which are inapposite since the value of the settlement in such cases was plainly clear.  *See Cardinal Health Inc*, 528 F.Supp.2d at 764 (finding "value of the benefit"

b.      "Society's Stake" And "Contingent Fee."

While "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others" and "whether the services were undertaken on a contingent fee basis" are independent factors under *Ramey*, Plaintiffs' argument under both factors is essentially the same.  *See* Pl. Mtn, p. 10-12 (PageID.7268-70).

The sole justification for Plaintiffs' fee request is the notion that attorneys who take class actions on a contingency basis are automatically entitled to "a generous fee."  *See*, *e.g.*, *id.* at p. 10 (PageID.7268).  But this ignores binding Sixth Circuit precedent that a class action attorney taking a case on a contingency basis must still either (1) proffer ***evidence*** of a settlement's value if he seeks a percentage of the fund award, or (2) explain why the underlying case presents the sort of "rare and

---

factor justified requested fees because fund constituted "largest securities settlement ever reached in the Sixth Circuit, and one of the fifteen largest settlements ever reached in the country," securing "20% of [the class's] alleged loss, outstripping the typical recovery in most securities class actions, which is usually between three and six cents on the dollar").

Plaintiffs' remaining cases, in addition to being inapposite common fund cases, also failed to actually examine the value of the benefit ***under Ramey***.  *See*, *e.g.*, *In re DPL Inc., Sec. Litig.*, 307 F.Supp.2d 947, 951 (S.D.Ohio 2004) ("[E]very bit of ***evidence*** before the Court leads it to conclude that, from the perspective of the class, this was an outstanding settlement of a securities fraud class action based on "***the monetary relief*** obtained.")  And, while *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) and *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) involved non-fund settlements, the courts there analyzed whether a settlement (not attorneys' fees) was appropriate, and did so in the context of a ***derivative*** lawsuit. *See Bell*, 2 F.3d at 1311-12; *Granada*, 962 F.2d at 1204, 1207.

- 17 -

exceptional circumstances" warranting use of multiplier.  Plaintiffs do neither, and the authority they rely on consists of, again, different circumstances in which the settlement was premised on a ***common fund***.[13]   *See Vita-Mix*, 970 F.3d at 632 (declining to award multiplier in non-common fund class action case).   Thus, this factor also counsels against Plaintiffs' requested fee.

        c.      <u>The Value Of The Services On An Hourly Basis (The Lodestar Cross-Check).</u>

The problems with Plaintiffs' requested lodestar and multiplier are detailed at length above.  *See* § II.A.2, *supra*.  This factor weighs against the fee Plaintiffs' request.

        d.      <u>The Complexity Of The Litigation.</u>

*First*, the risk that a case may not be successful does not make litigation complex.  Plaintiffs argue that "this case involved a number of complex and disputed questions of law" but identify none, focusing instead on the normally occurring litigation process and events that never even came to pass – ***so no risk ever manifested there either***.  *See* Pl. Mtn, pp. 5, 13 (PageID.7264, 7271) (referring to

---

[13]*See Stanley v. U.S. Steel Co*., 2009 WL 4646647 (E.D.Mich. 2009); *In re F & M Distrib., Inc. Sec. Litig*., 1999 U.S. Dist. LEXIS 11090 (E.D.Mich.1999); *Stanley v. U.S. Steel Co*., 2009 WL 4646647 (E.D.Mich. 2009); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig*., 248 F.R.D. 482 (E.D.Mich. 2008); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D.Mich. 2003); *In re Telectronics Pacing Sys., Inc*., 137 F.Supp.2d 1029, 1043 (S.D.Ohio 2001).

burden of proof at trial and motions that were never filed). Indeed, this District has "specifically reject[ed] any contention that [a] case should be adjudged 'difficult' simply because the basis of the claim itself was highly speculative and resulted in a settlement." *Wise v. Popoff*, 835 F.Supp. 977, 982 (E.D.Mich. 1993).

*Second*, class size does not make a litigation complex. Plaintiffs argue "over one million vehicles [are] at issue, but they point to no authority suggesting that equates to complex litigation. *See* Pl. Mtn, p. 14 (PageID.7272). In fact, the authority Plaintiffs do cite actually shows the opposite: "It is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." *Cardinal Health*, 528 F.Supp. at 763 (citations, quotation marks, and brackets omitted).

*Third,* the number of issues does not make a litigation complex. Plaintiffs cite no authority to suggest that their boilerplate, conclusory assertion that this case "involve[d] numerous issues of fact and law to be resolved" makes the case complex under *Ramey,* nor do they demonstrate how these unspecified "numerous issues" are any different from those that arise in any other contested litigation. *See* Pl. Mtn, p. 14 (PageID.7272).

*Fourth*, the availability of "defenses" to the claims does not make a litigation complex. Contrary to Plaintiffs' claim otherwise, the fact that a case is defensible does not make a litigation complex. *See* Pl. Mtn., p. 13 (PageID.7271); *see also*

*Asmar v. Benchmark Literacy Grp., Inc.*, 2007 WL 925623, *3 (E.D.Mich. 2007) (fact that "case[] involved recalcitrant Defendants, which increased the amount of effort and diligence required of Plaintiffs' counsel," did not change fact that "overall issues were not that novel or complex to take this case outside of the bounds of the fees typically charged for standard civil litigation services").

*Fifth*, nothing about what Plaintiffs' counsel say they ***actually*** did warrants a finding of complexity either.  *See* Pl. Mtn, p. 2 (PageID.7260)  To start, ***every litigation***, class action or otherwise, involves pre-suit investigation, drafting a complaint, and issuing written discovery.  And, ***every class action litigation*** that is ultimately settled involves negotiations, mediations, settlement administrators, and motions seeking the court's approval of the settlement.

Nothing unique occurred here, nor did the most critical aspects of any class action ever occur – ***neither side's experts ever served reports*** (***or sat for deposition***), and ***class certification and summary judgment were never briefed*** (***let alone decided***).  And, given the number of vehicle defect class actions pending in this district alone, it can hardly be said that there is anything unique or complex about vehicle defect class actions in general.  Thus, this factor also weighs against granting Plaintiffs' motion.

**B.**     **The Cost Award Plaintiffs Request Is Unsupported.**

Plaintiffs ask for "$201,882.84 in costs and expenses litigating this matter" on grounds that expense awards "are customary in common fund cases." *See* Pl. Mtn, p. 15 (PageID.7273) (internal marks, citation omitted).   But, again, this is ***not*** a common fund case, as even Plaintiffs admit. *See* § II.A.1, *supra.*   Further, as with attorneys' fees, "[t]he party requesting an award of costs must produce evidence to justify [the request's] reasonableness." *Presidential Facility, LLC v. Debbas*, 2012 WL 2568164, *2 (E.D.Mich. 2012).

Giving Plaintiffs every benefit of the doubt, the closest they come to even attempting to support their request for costs are the conclusory charts in the partner declarations they submit.  *See* ECF #97-2 p. 5, ¶ 7 (PageID.7296); #97-3, p. 5, ¶ 7 (PageID.7301), #97-4, p. 5, ¶ 8 (PageID.7308), #97-5, p. 4, ¶ 8 (PageID.7391); #97-6, p. 4, ¶ 8 (PageID.7398) (listing only "Miscellaneous" expenses).  In situations like these, where the party has "simply attache[d] a chart to [an attorney]'s declaration stating its fees incurred" without providing "invoices for these fees or any evidence substantiating the amount of these costs or that they were actually paid to third parties," courts consistently decline to award those costs because the party "has not sufficiently documented the expenses it seeks to recover."  *See Premier Dealer Servs., Inc. v. Allegiance Admin., LLC*, 2023 WL 2664411, *11 (S.D.Ohio 2023)

(declining requested costs award because court "does not serve as a rubber stamp").

Because that is all Plaintiffs have done here, the Court should deny their cost request.

### III.   CONCLUSION

For the reasons discussed herein, Defendant FCA US LLC (1) objects to Plaintiffs' Motion For Attorneys' Fees, Expenses, And Incentive Award and (2) respectfully requests the Court award only the lodestar amount derived from this District's median billing rates: $1,284,133.65.

Dated:  April 13, 2023                         Respectfully submitted,

**THOMPSON COBURN LLP**

By:  _/s/ Stephen A. D'Aunoy_
Stephen A. D'Aunoy (MO/54961)
Thomas L. Azar, Jr. (MO/56634)
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com

**BUSH SEYFERTH PLLC**
Patrick G. Seyferth (P47575)
Susan McKeever (P73533)
Alison H. Rodney (P53333)
100 W. Big Beaver Rd., Suite 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
mckeever@bsplaw.com
rodney@bsplaw.com

*Attorneys for Defendant FCA US LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 13, 2023 the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

<u>   /s/ Stephen A. D'Aunoy        </u>